**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civ. A. No. 1:24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

ROCKET MORTGAGE, LLC,
SOLIDIFI U.S. INC.,
MAKSYM MYKHAILYNA, and
MAVERICK APPRAISAL GROUP INC.,

      Defendants.

---

**DEFENDANT ROCKET MORTGAGE'S MOTION TO DISMISS THE COMPLAINT**

---

**TABLE OF CONTENTS**

<u>Page</u>

BACKGROUND.................................................................................................................4

STANDARD OF LAW ......................................................................................................6

ARGUMENT ....................................................................................................................7

I.     The entire premise of the government's claims against Rocket Mortgage is
       false as a matter of law. ......................................................................................7

II.    The Complaint does not plead any act of discrimination by Rocket
       Mortgage...............................................................................................................9

III.   The Complaint does not plead any act of retaliation by Rocket Mortgage. .........13

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Arnal v. Aspen View Condo. Ass'n, Inc.*,
226 F. Supp. 3d 1177 (D. Colo. 2016) ........................................................................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................6-7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................6, 11, 15

*Bloch v. Frischholz*,
587 F.3d 771 (7th Cir. 2009) ..............................................................................13, 14

*Canatella v. Reverse Mortg. Sols., Inc.*,
2016 WL 6070508 (N.D. Cal. Oct. 17, 2016)........................................... 11, 12-13, 15

*Conlin v. Law Offices of Kirk A. Cullimore, LLC*,
2020 WL 4015731 (D. Utah July 16, 2020) .........................................................14-15

*Davis v. Fenton*,
2016 WL 1529899 (N.D. Ill. Apr. 13, 2016)........................................................13, 14

*FHFA v. Nomura Holding Am., Inc.*,
104 F. Supp. 3d 441 (S.D.N.Y. 2015) ........................................................................ 8

*Gourlay v. Forest Lake Ests. Civic Ass'n of Port Richey, Inc.*,
276 F. Supp. 2d 1222 (M.D. Fla. 2003) ................................................................... 14

*Harris v. Itzhaki*,
183 F.3d 1043 (9th Cir. 1999) ................................................................................ 13

*Hatfield v. Cottages on 78th Cmty. Ass'n*,
2022 WL 2452379 (10th Cir. July 6, 2022) ............................................................. 13

*Hood v. Midwest Sav. Bank*,
95 F. App'x 768 (6th Cir. 2004) .............................................................................. 11

*Humood v. City of Aurora*,
2014 WL 4345410 (D. Colo. Aug. 28, 2014)............................................................. 9

*Johnson v. CMC Prop. Leasing Inc.*,
2012 WL 6025601 (D. Kan. Dec. 4, 2012)............................................................... 11

*Lawrence v. Courtyards at Deerwood Ass'n, Inc.*,
   318 F. Supp. 2d 1133 (S.D. Fla. 2004) ....................................................... 15

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
   558 F.2d 1283 (7th Cir. 1977) ................................................................. 14

*Mich. Prot. & Advoc. Serv., Inc. v. Babin*,
   799 F. Supp. 695 (E.D. Mich. 1992)........................................................... 14

*Morgan v. Carrington Mortg. Servs.*,
   719 F. App'x 735 (10th Cir. 2017) ............................................................ 12

*Morris v. W. Hayden Ests. First Addition Homeowners Ass'n*,
   104 F.4th 1128 (9th Cir. 2024) ................................................................ 12

*Myers v. Koopman*,
   2010 WL 3843300 (D. Colo. Sept. 27, 2010) ................................................. 9

*Scherer v. Mission Bank*,
   34 F. App'x 656 (10th Cir. 2002) ..........................................................3, 10

*Smith v. City of Jackson*,
   544 U.S. 228 (2005) ............................................................................ 10

*Sofarelli v. Pinellas Cnty.*,
   931 F.2d 718 (11th Cir. 1991) ................................................................ 12

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ............................................................................ 10

*Waldrup v. Countrywide Fin. Corp.*,
   2018 WL 799156 (C.D. Cal. Feb. 6, 2018) ................................................8, 9

*Wilson v. Warren Cnty.*,
   830 F.3d 464 (7th Cir. 2016) .................................................................. 12

*Wood v. Briarwinds Condo. Ass'n Bd. of Dirs.*,
   369 F. App'x 1 (11th Cir. 2010) .............................................................. 14

**Statutes and Regulations**

15 U.S.C. § 1639e ....................................................................................... 8

42 U.S.C. § 3605 ...................................................................................3, 6

42 U.S.C. § 3617 ........................................................................................ 3

12 C.F.R. § 1026.42 ...............................................................................2, 6, 8

24 C.F.R. § 100.400 .......................................................................................................... 13

**Other Authorities**

Drew Ketterer, "Feds May Have Overstepped in Suit Against Mortgage Lender,"
    Law360 (Nov. 19, 2024), available at https://*www.law360.com/articles/
    2261191/feds-may-have-overstepped-in-suit-against-mortgage-lender* ................... 2

In an obvious attempt to generate headlines and score political points at the ex-
pense of Rocket Mortgage's reputation and good name, the government has labeled the
company the lead defendant in this lawsuit and its statements to the press, despite its
grievances having nothing to do with Rocket Mortgage.[1] The government's own complaint
confirms that the label does not fit, and Rocket Mortgage should not even be a defendant.
The complaint is based on alleged discrimination by an independent, third-party ap-
praiser—Defendant Maksym Mykhailyna—in an appraisal he (and he alone) conducted
on residential property belonging to Francesa Cheroutes. There are no allegations that
Rocket Mortgage hired Mykhailyna or ever met him—it did neither. Nor are there any
allegations that Rocket Mortgage directed or participated in any of Mykhailyna's conduct.
Again, it did neither. And there are no allegations that Rocket Mortgage itself took any
action with respect to Cheroutes on account of her race. This is because it did not.

Undeterred, the government falsely asserts that Rocket Mortgage violated the Fair
Housing Act (FHA) because it did not "correct" Mykhailyna's appraisal. Compl. (ECF No.
1) ¶ 149. Specifically, the government alleges:

> The appraisal of Ms. Cheroutes's property by Defendants Mykhailyna, Maverick,
> and Solidfi was completed for and at the request of Defendant Rocket [Mortgage].
> Defendant Rocket [Mortgage] was reliably informed that the appraisal undervalued
> Ms. Cheroutes's property because of race or color. **Defendant Rocket [Mortgage]
> had the authority to correct the discriminatory appraisal, or cause it to be
> corrected, but failed to do so.**

*Id.* (emphasis added). This is ***the entire defective foundation*** for naming Rocket Mort-
gage in this lawsuit. But the assertion that Rocket Mortgage had the "authority to correct"

---

[1] *See* Press Release, "Justice Department Sues Rocket Mortgage, Appraisal Manage-
ment Company and Appraiser for Race Discrimination in Mortgage Refinance Applica-
tion," Oct. 21, 2024, available at *https://www.justice.gov/opa/pr/justice-department-sues-
rocket-mortgage-appraisal-management-company-and-appraiser-race.*

-1-

Mykhailyna's appraisal is contrary to law and not factually supported in the complaint. Rocket Mortgage had *no* right or authority to "correct" or change the value in the appraisal. The government's own appraisal-related requirements—requirements the government cites but conveniently ignores—*prohibit* any such conduct. Those requirements expressly (i) mandate that an appraisal be "based on" the appraiser's "independent judgment," and (ii) prohibit "direct and indirect attempts" by lenders to cause that value to be "based on any factor other than [that] independent judgment." 12 C.F.R. § 1026.42(c)(1).[2] The government's claim against Rocket Mortgage thus fails at its inception as a matter of law.

Indeed, the government's overreach here has already earned it a rebuke from a former state Attorney General, who cited this case's claims against Rocket Mortgage as "a bridge too far—badly missing the mark on enforcing U.S. law and showing a lack of understanding of the mortgage market at the same time." Drew Ketterer, "Feds May Have Overstepped in Suit Against Mortgage Lender," Law360 (Nov. 19, 2024), available at *https://www.law360.com/articles/2261191/feds-may-have-overstepped-in-suit-against-mortgage-lender*. Former Maine AG Ketterer wrote (*id.*):

> [A] suit filed in the U.S. District Court for the District of Colorado against Rocket Mortgage last month appears to fail on a fatal flaw: Mortgage lenders are to be at arm's length from appraisers.

---

[2] The government is well aware of the appraisal-independence requirements it conveniently ignores. In fact, the government previously sued Rocket Mortgage (f/k/a Quicken Loans Inc.)—*unsuccessfully*—on the theory that it was unlawful for the company to maintain an appraisal "value appeal" process that "led to appraisers increasing the appraised value of a property" to help get loans approved. *United States v. Quicken Loans Inc.*, No. 15-0613, ECF No. 1 ¶¶ 58, 111 (D.D.C. filed Apr. 23, 2015). But that allegedly illegal conduct is precisely what the government alleges Rocket Mortgage should have done here—*i.e.*, "correct" Mykhailyna's appraisal to a higher amount to facilitate Cheroutes's mortgage-loan refinancing. *See* Compl. ¶ 149. The inconsistency of the government's positions should not be lost on this Court. It cannot be the case that Rocket Mortgage is both legally prohibited from correcting appraisal values and legally required to do so.

By naming the mortgage lender, Rocket, as a codefendant in the appraisal bias suit, the DOJ is signaling to all mortgage lenders that they are responsible for the actions of independent appraisers. This erosion of independence between the two industries raises critical questions over potential conflicts of interest.

The DOJ lawsuit seeks to hold Rocket accountable for the actions of an independent appraiser and the appraisal management company that contracted with him, Solidifi US. That could set a dangerous new precedent in the mortgage industry that runs directly contrary to a central tenet of the Dodd-Frank Wall Street Reform and Consumer Protection Act — appraiser independence.

Unsurprisingly, the complaint is devoid of the factual allegations necessary to state a cognizable claim against Rocket Mortgage for a violation of the FHA. First, the government asserts that Rocket Mortgage violated 42 U.S.C. § 3605(a) by failing to "correct" the subject appraisal and depriving Cheroutes of a mortgage loan in the process. But to plead a cognizable Section 3605 violation, the government must plead plausible factual allegations of discriminatory intent by Rocket Mortgage to deprive Cheroutes of a loan because of her race. *Id*. There are no such allegations whatsoever in the government's 47-page, 152-paragraph Complaint. The complaint does not contain any allegation of any discriminatory intent or discriminatory animus by Rocket Mortgage at all. Of course, Rocket Mortgage had no such intent or animus. Nor are there any factual allegations even indirectly and circumstantially capable of supporting any inference of discriminatory intent or animus—*e.g.*, allegations that other non-minority mortgage applicants with the "same qualifications" as Cheroutes were treated differently by Rocket Mortgage. *Scherer v. Mission Bank*, 34 F. App'x 656, 658 (10th Cir. 2002). The government thus fails to state a cognizable Section 3605 claim against Rocket Mortgage.

Second, the government baldly asserts that Rocket Mortgage violated Section 3617 of the FHA purportedly by retaliating against Cheroutes by means of unspecified "coerc[ion], intimidat[ion], threat[s], or interfer[ence]." Compl. ¶ 150; 42 U.S.C. § 3617.

This assertion fares no better. To plead a cognizable Section 3617 violation, the govern-ment must (again) plead plausible factual allegations of discriminatory animus by Rocket Mortgage. And it must plead factual allegations of conduct Rocket Mortgage directed to Cheroutes amounting to the requisite coercion, intimidation, threats, or interference. Again, the complaint fails to plead any such factual allegations. The government's formu-laic recitation of Section 3617's elements thus cannot save this misdirected lawsuit.

For these and other reasons, this Court should dismiss Rocket Mortgage from this lawsuit. Rocket Mortgage took no part in the alleged discrimination by the independent, third-party appraiser, and the government does not allege otherwise. Rocket Mortgage proudly and fairly serves mortgage-loan customers of all backgrounds and is a multiple J.D. Power award winner for customer satisfaction in loan origination and servicing. Rocket Mortgage and its thousands of team members take pride in their honest and rep-utable lending practices and the company's highly acclaimed customer service. The Com-plaint's threadbare allegations state no claim against Rocket Mortgage at all.

## BACKGROUND

Cheroutes allegedly purchased her two-family home at 74951 Ash Street in Denver for $270,000 in 2011. Compl. ¶¶ 24, 26.[3] She lives in one unit and has a tenant renting out the second. *Id*. ¶ 26. In January 2021, she sought a refinancing from her loan servicer Rocket Mortgage to take advantage of declining interest rates. *Id*. ¶ 2. Rocket Mortgage engaged a third-party appraisal-management company, Defendant Solidifi U.S., Inc., to find an independent third-party appraiser to appraise the property. *Id*. ¶ 3.

---

[3] As required for purposes of this Rule 12(b)(6) motion, Rocket Mortgage treats the well-pleaded factual allegations in the complaint as true, reserving its right to contest all such allegations in the event this matter proceeds beyond the pleadings (which it should not).

Rocket Mortgage did so because lenders rely on independent valuations by li-
censed, third-party appraisers to ensure loans are adequately secured in the event of
default—and that the appraisal is not influenced by the borrower's or the lender's desire
to close the loan. Appraisal-management companies like Solidifi maintain "panels" of ap-
praisers they ensure are licensed, trained, experienced, qualified, and, of course, inde-
pendent. *Id*. In this instance, Solidifi engaged Mykhailyna for the job. *Id*.

Mykhailyna visited the property and reported a final appraised value of $640,000
on January 20, 2021. *Id*. ¶ 69. The government complains that this was lower than an
$860,000 valuation done the previous May, and claims Mykhailyna deliberately used in-
appropriate properties as "comparables" to deflate the valuation. *Id*. *et seq*. The govern-
ment further claims that Mykhailyna's alleged errors must be because "his view of the
Subject Property was affected by the race of its owner." *Id*. ¶ 75.

Rocket Mortgage had nothing whatsoever to do with any of this (nor could it, due
to appraisal-independence requirements), and the government does not allege otherwise.
Mykhailyna did the appraisal and submitted it to Solidifi; Solidifi reviewed the appraisal
and sent it to Cheroutes and Rocket Mortgage. *Id*. ¶¶ 107–12. Cheroutes then contacted
Rocket Mortgage (*not* Mykhailyna or Solidifi), asserting Mykhailyna "had been hostile and
unfriendly" and saying "she believed the low appraisal was due to racial discrimination."
*Id*. ¶ 117. Rocket Mortgage's team member agreed the low valuation "did not make sense"
and told Cheroutes how she could challenge it, including by providing alternative compa-
rable properties for consideration. *Id*. ¶¶ 115, 125. The complaint contains no allegations
that Cheroutes ever provided any such comparables to the appraiser or Rocket Mortgage.

The allegation that Rocket Mortgage "had the authority to correct the discriminatory

appraisal, or cause it to be corrected, but failed to do so," is the sole basis for including Rocket Mortgage in this case. Compl. ¶ 149. But it is contrary to law. Rocket Mortgage had no "authority" whatsoever to "correct" the appraisal, "cause" it to be corrected, or "cause the value to be based on any factor other than the [appraiser's] independent judgment." 12 C.F.R. § 1026.42(c)(1). Despite this legal reality, the government names Rocket Mortgage alongside Mykhailyna, his company Maverick Appraisal Group, and Solidifi, and asserts a single cause of action against all Defendants collectively, for purported violations of Sections 3605 and 3617 of the FHA. *Id.* ¶¶ 144 *et seq.*

As to Section 3605, the government accuses "Defendants"—as one lumped, undifferentiated group—of "discriminat[ing] against [Cheroutes] in making available" a loan "because of race." Compl. ¶ 146; 42 U.S.C. § 3605(a). As to Section 3617, the government offers the conclusory assertion that Rocket Mortgage "coerced, intimidated, threatened, or interfered with Ms. Cheroutes in the exercise or enjoyment of . . . rights granted or protected by 42 U.S.C. § 3605." Compl. ¶ 150. But there are no facts alleged to support the conclusion that Rocket Mortgage did anything amounting to coercion, intimidation, threats, or interference. As relief, the complaint seeks damages for Cheroutes's alleged "emotional harm," and also claims "financial" injury for losing out on the low interest rate available at the time. *Id.* ¶¶ 132–33.

## STANDARD OF LAW

To survive dismissal, a complaint must plead "[f]actual allegations . . . rais[ing] a right to relief above the speculative level," taking into account any "obvious alternative explanation" for the conduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 567 (2007). The factual allegations must "plausibly suggest[] (not merely [be] consistent with)" a valid claim. *Id.* at 557. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). Applied to a complaint alleging "purposeful discrimination" like this one, this

means the plaintiff must plead facts (not conclusory assertions) that plausibly suggest "a

decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' the

action's adverse effects upon an identifiable group." *Id*. at 676–77.

## ARGUMENT

The complaint confirms that this lawsuit is about Mykhailyna and the appraisal he

(and he alone) conducted of Cheroutes's property. There are (and can be) no allegations

that Rocket Mortgage hired Mykhailyna or directed or participated in his appraisal. Given

this, it is not surprising that, while the government has chosen (misleadingly) to portray

Rocket Mortgage as the lead defendant, the factual allegations specific to Rocket Mort-

gage in the complaint are sparse, threadbare, and conclusory. They are thus insufficient

to state a cognizable claim against Rocket Mortgage for any violation of the FHA. The

government's grievances are with Mykhailyna and have nothing to do with Rocket Mort-

gage. Rocket Mortgage should therefore be dismissed from this case.

**I.    The entire premise of the government's claims against Rocket Mortgage is
       false as a matter of law.**

The government's case against Rocket Mortgage is based on the premise that

"Rocket had the authority to correct the [purportedly] discriminatory appraisal, or cause it

to be corrected, but failed to do so." Compl. ¶ 149. That premise is legally defective and

the government tellingly pleads no factual allegations to support its conclusory assertion

about Rocket Mortgage's purported "authority." Not only did Rocket Mortgage have *no*

such authority, attempting to do so would have violated multiple laws and regulations. The

government cannot premise an FHA claim on Rocket Mortgage's failure to engage in

conduct that its own laws and regulations prohibit.

It is "unlawful" for a mortgage lender "to engage in any act or practice that violates appraisal independence." 15 U.S.C. § 1639e(a). That includes any actions that can be construed as attempts to (i) "instruct" or "induce" an appraiser to "caus[e] the appraised value assigned . . . to be based on any factor other than the independent judgment of the appraiser," or (ii) "seek[] to influence an appraiser or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction." 15 U.S.C. § 1639e(b)(1), (3); *see also* 12 C.F.R. § 1026.42(c)(1) ("[N]o covered person shall or shall attempt to directly or indirectly cause the value assigned to the consumer's principal dwelling to be based on any factor other than the independent judgment of a person that prepares valuations. . . ."). Appraisers, in turn, are not allowed to render opinions contingent on "a direction in assignment results that favors the cause of the client," "the amount of a value opinion," or "the attainment of a stipulated result." *Waldrup v. Countrywide Fin. Corp.*, 2018 WL 799156 , at *2 (C.D. Cal. Feb. 6, 2018) (cleaned up).

Leading to these requirements was a 2007 petition sent to Congress by 11,000 appraisers complaining that lenders "have individuals within their ranks, who . . . apply pressure on appraisers to hit or exceed a predetermined value." *FHFA v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 462 (S.D.N.Y. 2015). They claimed homeowners were "adversely affected" by owing more than their "over-valued" home equity. *Id.* "It was against this backdrop that in 2008 FHFA announced the Home Valuation Code of Conduct ('HVCC'). Under the HVCC, the lender . . . was not permitted to have direct, substantive contact with the appraiser." *Id.* (citation omitted). The HVCC was supplanted by 15 U.S.C. § 1639e and its implementing regulations, but their guiding purposes are the same.

Lenders are well aware of the risk of transgressing appraiser-independence re-
quirements. They have faced lawsuits alleging they "pressured [appraisers] to inflate val-
ues" and used "quality control measure[s]" that "allowed for rewriting and inflating of any
appraisal valuations that, if left undisturbed, would prevent the associated loan from clos-
ing." *Waldrup*, 2018 WL 799156, at *3 (cleaned up). The government itself asserted such
claims against Rocket Mortgage. *See supra* n.2. So it is simply false as a matter of law
that "Defendant Rocket [Mortgage] had the authority to correct the [] appraisal, or cause
it to be corrected, but failed to do so." Compl. ¶ 149. The government's claims against
Rocket Mortgage can and should be dismissed on this basis alone.[4]

## II.  The Complaint does not plead any act of discrimination by Rocket Mortgage.

Even if this Court were willing to overlook that the government's claim rests upon
a complaint that Rocket Mortgage *refrained* from engaging in legally prohibited conduct,
the government's conclusory assertions cannot sustain its FHA claims.

The primary claim is that "Defendants discriminated in making available a residen-
tial real estate–related transaction . . . because of race" in violation of Section 3605.
Compl. ¶ 146. It is black-letter law that an allegation that lumps defendants together with-
out specifying what each defendant did is insufficient to state a cognizable claim.[5]

---

[4] The government claims the other Defendants are all liable for each other's actions based
on agency relationships. *See id*. ¶¶ 12–13, 147–48. But no such allegations are made as
to Rocket Mortgage, nor could they be. The other Defendants are not agents of Rocket
Mortgage, and whatever authority they may have had to "correct" their own appraisal is
not an authority Rocket Mortgage had.

[5] *See*, *e.g.*, *Myers v. Koopman*, 2010 WL 3843300, at *5 (D. Colo. Sept. 27, 2010) (plead-
ing defective where "plaintiffs lump the defendants together as a generalized group");
*Humood v. City of Aurora*, 2014 WL 4345410 , at *8 (D. Colo. Aug. 28, 2014) (plaintiff
"cannot make the requisite showing of unreasonable conduct simply by lumping the De-
fendant[s] into an undifferentiated group").

Beyond this, the government fails to plead any facts to support a claim that Rocket Mortgage "discriminated" against Cheroutes "because of [her] race." The "*because of race*" statutory language "plainly requires discriminatory intent." *Smith v. City of Jackson*, 544 U.S. 228, 249 (2005) (O'Connor, J., concurring). This is not a disparate-impact case where discrimination claims are based on aggregate statistics. *E.g.*, *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015). This case is about one appraisal for one consumer, and the only allegation about discriminatory intent is the claim that Mykhailyna mistreated Cheroutes and her daughter because he "knew that they were Black." Compl. ¶ 64. That, of course, does not plead any facts at all about Rocket Mortgage. The government alleges no facts even remotely (much less plausibly) suggesting any discriminatory intent on Rocket Mortgage's part.

Nor does the government plead any facts suggesting discriminatory intent even circumstantially, which would require it to plead that:

> (1) [Cheroutes] was part of a protected class; (2) [s]he attempted to enter into a "real estate-related transaction" with defendant and met all relevant qualifications for doing so; (3) defendant refused to transact business with h[er] despite h[er] qualifications; and (4) defendant continued to do business with other parties with the same qualifications.

*Scherer*, 34 F. App'x at 658. But the government does not and cannot allege that Cheroutes "met all relevant qualifications" for the loan, when the entire basis for the complaint is that the low appraisal value *dis*qualified her for the loan. It follows that Rocket Mortgage's cancellation of the loan application was not "despite [her] qualifications." *Id*. And the government's implicit theory that Rocket Mortgage "should have modified its policies" to proceed with Cheroutes's loan application is not a colorable basis for a Section 3605 claim as a matter of law. *Scherer*, *Id*.

Likewise, there are zero allegations that Rocket Mortgage treated other customers

with the "same qualifications" (or the lack thereof) any differently. *Id*.[6] The government is not entitled to go on a fishing expedition to support such a theory when it isn't even pled in the complaint in the first place, much less pled with enough facts to "nudge[]" the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The only inference the complaint permits—indeed, a contention the complaint *affirmatively pleads*—is that Rocket Mortgage canceled the loan application because the appraisal was too low, not "because of" Cheroutes's race. "This is a problem that could arise regardless of the race of the applicant." *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 777 (6th Cir. 2004). In *Hood*, the plaintiff sued a lender alleging that it "relied on an appraisal report in denying his application that it had reason to believe was based at least in part on the racial composition of the community surrounding the property." *Id*. The problem with the appraisal at issue in that case was the appraiser's opinion that there was a *lack* of suitable comparables—somewhat different from Cheroutes's complaint that the appraiser used the *wrong* comparables, but not distinguishable in any way material to the case's outcome. *See id*. The Court observed, "Nowhere does Hood allege that Midwest overtly denied his application based on either his race or the location of his property in a predominantly African-American neighborhood." *Id*. Rather, Hood merely "allege[d] that, in deciding to deny his first loan application, Midwest relied on an appraisal report, or

---

[6] *Accord, e.g., Johnson v. CMC Prop. Leasing Inc.*, 2012 WL 6025601, at *4 (D. Kan. Dec. 4, 2012) (dismissing FHA claim for failure to "put forth facts showing that [plaintiff] was treated differently than others because of" a protected characteristic); *Canatella v. Reverse Mortg. Sols., Inc.*, 2016 WL 6070508, at *3 (N.D. Cal. Oct. 17, 2016) ("Plaintiff's allegation of FHA discrimination on the basis of sex is entirely implausible and conclusory, and cannot withstand a motion to dismiss," where "Plaintiff pleads no facts giving rise to a plausible inference that a woman in his circumstances would have been treated differently, or even that his sex had anything to do with the denial of his loan").

rather the lack thereof." *Id*. Since that "could arise regardless of the race of the applicant," the Court ruled that "there is no direct evidence of racial discrimination in Midwest's denial of the first loan application." *Id*. at 777–78; *see also*, *e.g.*, *Morgan v. Carrington Mortg. Servs.*, 719 F. App'x 735, 743–44 (10th Cir. 2017) (noting that "[t]o state a plausible claim under the FHA, a plaintiff must allege a causal connection between her [protected trait] and the alleged adverse action," and dismissing FHA claim because the allegations "suggested defendants 'would have behaved the same regardless of the'" protected trait) (quoting *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016)). The same reasoning and conclusion apply here.

To survive this motion, the government needs well-pleaded facts supporting an inference that Rocket Mortgage was "*actually motivated*" by a "discriminatory purpose." *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n*, 104 F.4th 1128, 1144 (9th Cir. 2024) (emphasis in original); *accord*, *e.g.*, *Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 723 (11th Cir. 1991) (plaintiff "fails to state a claim under the Fair Housing Act" due to failure to allege "that race played some role in the actions of the [defendant]"). The complaint furnishes none. Its most inflammatory allegation—that "Defendants" had an "apparent belief that [Cheroutes's] house was worth less because it was owned by a Black person"—is defective on at least three fronts. Compl. ¶ 135. It is (i) bereft of any factual content suggesting Rocket Mortgage had any such "belief," (ii) negated by the complaint's earlier allegation that Rocket Mortgage's team member *agreed* with Cheroutes that the appraisal "did not make sense" (*id*. ¶ 115), and (iii) an improper allegation lumping Defendants together with no facts about Rocket Mortgage specifically. *See* supra n.5.

The Section 3605 claim also fails because it does not allege "a distinct and

palpable injury" "*as a result of* the defendant's discriminatory conduct." *Canatella*, 2016 WL 607050, at *3 (quoting *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (emphasis added)). *None* of Cheroutes's alleged injuries are alleged to be "a result" of Rocket Mortgage's acts. The appraisal was entirely the result of Mykhailyna's conduct, Cheroutes's failure to qualify for the loan's original terms was entirely the result of legal requirements around appraising and loan underwriting, and the alleged injury of missing out on 2021 interest rates was entirely the result of *Cheroutes's* decision not to make a reconsideration-of-value request or to reapply with Rocket Mortgage or another lender. Compl. ¶ 134. Thus, as a matter of law and pleaded fact, Rocket Mortgage is not the cause of any injuries the government may wish to attribute to the other Defendants' alleged conduct.

### III. The Complaint does not plead any act of retaliation by Rocket Mortgage.

Just like the government's primary Section 3605 claim, a claim under Section 3617 also requires facts plausibly evidencing discriminatory intent—that the alleged retaliation was "*because of* race." 24 C.F.R. § 100.400(c)(1) (emphasis added); *accord*, *e.g.*, *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2022 WL 2452379, at *8 (10th Cir. July 6, 2022) ("a [Section 3617] plaintiff must show that . . . the defendants were motivated by an intent to discriminate") (citing *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)). The government's failure to plead a single fact plausibly suggesting Rocket Mortgage had any discriminatory animus whatsoever, or did *anything* to Cheroutes "because of" race, is fatal here for the same reason it is fatal on the Section 3605 claim. *See also*, *e.g.*, *Davis v. Fenton*, 2016 WL 1529899 , at *8 (N.D. Ill. Apr. 13, 2016) ("the retaliatory conduct itself must be motivated by a discriminatory intent") (citing *Bloch*).

The claim is also defective because there are zero factual allegations that Rocket Mortgage did anything rising to the level of coercion, intimidation, threats, or interference.

Presumably the government thinks the retaliatory act is canceling the loan application, but that is the same thing the government challenges under Section 3605. It does not make logical sense to say that the *same act* constitutes both the alleged discrimination *and* the retaliation for complaining about the alleged discrimination.[7]

In any event, canceling a loan application because of a low appraisal is not coercion, intimidation, threats, or interference. "[M]ost litigation based on Section 3617 centers on direct, extralegal acts of interference or retaliation for the exercise of FHA rights." *Davis*, 2016 WL 1529899, at *7. What is needed is conduct that is "either violent . . . or threatening," or "so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights." *Gourlay v. Forest Lake Ests. Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1235 (M.D. Fla. 2003); *see also, e.g.*, *Bloch*, 587 F.3d at 783 ("interference" must be a "pattern of harassment, invidiously motivated," not an "isolated act").[8] Enforcement of generally applicable rules "does not rise to the level of intimidation or threats." *Wood v. Briarwinds Condo. Ass'n Bd. of Dirs.*, 369 F. App'x 1, 3 (11th Cir. 2010). Likewise, allegations that the defendant "generally frustrated the process" are "not enough." *Conlin v. Law Offices of Kirk A. Cullimore, LLC*, 2020

---

[7] At the very least, it cannot support a Section 3617 independently of a Section 3605 claim. *See Mich. Prot. & Advoc. Serv., Inc. v. Babin*, 799 F. Supp. 695, 723 (E.D. Mich. 1992) ("when the violation of § 3617 involves the same conduct and the same party responsible for a violation of § 3604, and the court finds the underlying § 3604 claim meritless, then the court must also find the § 3617 meritless") (citing *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1288 n.5 (7th Cir. 1977)).

[8] That is because "[t]he plain meaning of the first three words, coerce, intimidate, and threaten, requires either violent conduct or threatening conduct. The fourth word of this phrase, interfere, is more general and could conceivably extend broadly to any conduct that limits a protected person's use or enjoyment of a dwelling. Under the canons of statutory construction, however, the general word *interfere* should be interpreted in reference to and in context with the first three words of this provision." *Gourlay*, 276 F. Supp. 2d at 1235 (footnote omitted).

WL 4015731, at *16 (D. Utah July 16, 2020). Nor does a mere "failure to act [] rise to the level of the egregious overt conduct that has been held sufficient to state a claim under section 3617." *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1144–45 (S.D. Fla. 2004). But since the government's sole theory of liability as to Rocket Mortgage is that it "had the authority to correct" Mykhailyna's appraisal but "failed to do so" (Compl. ¶ 149), a mere "failure to act" is the only thing alleged. It is not enough.

The government also fails to plead other essential elements of the claim. A Section 3617 plaintiff "must show that (1) [s]he was engaged in protected activity; (2) [s]he suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two." *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1187–88 (D. Colo. 2016). Once again, the government's claim breaks down after the basic element of Cheroutes's membership in a protected class. No facts to support a claim for "coercion, intimidation, threats, or interference" are alleged. The entire reference to the § 3617 claim in the Complaint is a pure threadbare recital of the elements, with no supporting facts at all:

> Defendant Rocket coerced, intimidated, threatened, or interfered with Ms. Cheroutes in the exercise or enjoyment of, or on account of her having exercised or enjoyed, rights granted or protected by 42 U.S.C. § 3605, in violation of 42 U.S.C. § 3617.

Compl. ¶ 150. Such "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And that formulaic restatement of the elements is all the government offers here. *Accord*, *e.g.*, *Canatella*, 2016 WL 6070508, at *4 (dismissing complaint because plaintiff "simply lists the elements of a section 3617 claim").

Respectfully submitted this 4th day of December, 2024, by Defendant Rocket Mortgage LLC, through its attorneys,

Jacob Hollars
SPENCER FANE LLP
1700 Lincoln St., Ste. 2000
Denver, Colo. 80203
(303) 839-3707
JHollars@spencerfane.com

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH
344 N. Old Woodward Ave., Ste. 200
Birmingham, Mich. 48009
(248) 864-4000
jmorganroth@morganrothlaw.com

/s/ *Brooks R. Brown*
Brooks R. Brown
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, Mass. 02210
(617) 570-1000
bbrown@goodwinlaw.com

Keith Levenberg
Angelica Rankins
GOODWIN PROCTER LLP
1900 N. St., N.W.
Washington, D.C. 20036
(202) 346-4000
klevenberg@goodwinlaw.com
arankins@goodwinlaw.com

**CERTIFICATE OF COMPLIANCE: D.C.COLO.LCivR 7.1(a)**
**AND GPG CIV. PRACTICE STANDARD 7.1B(b)**

Undersigned counsel certifies that Rocket Mortgage's counsel conferred with Plaintiff's counsel, in good faith, by telephone, about the relief sought herein, and Plaintiff's counsel indicated non-consent to such relief.

/s/ *Brooks R. Brown*
Brooks R. Brown

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of December, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Brooks R. Brown*
Brooks R. Brown