# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| |
|---|
| UNITED STATES OF AMERICA, |
|         *Plaintiff,* |
| and |
| FRANCESCA CHEROUTES, |
|         *Intervening Plaintiff,* |
| v. |
| ROCKET MORTGAGE, LLC, <br> SOLIDIFI U.S. INC., <br> MAKSYM MYKHAILYNA, and <br> MAVERICK APPRAISAL GROUP INC., |
|         *Defendants.* |

Civil Action No. 1:24-cv-02915-GPG-TPO

## DEFENDANT SOLIDIFI U.S. INC.'S MOTION TO DISMISS

**TABLE OF CONTENTS**

FACTS ALLEGED IN THE COMPLAINT ........................................................................ 2

STANDARD OF REVIEW .............................................................................................. 3

ARGUMENT.................................................................................................................. 3

I.    The Pleading Requirements for a Claim under 42 U.S.C. § 3605 ........................ 3

II.   Plaintiff Has Not Alleged Facts Sufficient to State a Claim that Solidifi
Discriminated Against Ms. Cheroutes ........................................................................ 6

III.  Plaintiff Has Not Alleged Facts Sufficient to State a Claim that Solidifi Is Liable for
the Actions of Mr. Mykhailyna or Maverick.................................................................. 7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................... 3, 4

*Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Off.*,
  859 P.2d 278 (Colo. App. 1993) .................................................... 10, 14, 15

*Cont'l Bus Sys., Inc. v. NLRB*,
  325 F.2d 267 (10th Cir. 1963)........................................................................ 9

*County of Santa Fe v. Pub. Serv. Co. of N.M.*,
  311 F.3d 1031 (10th Cir. 2002)...................................................................... 9

*Courtney v. Class Transp., Inc.*,
  No. 18-cv-02335-RBJ, 2021 U.S. Dist. LEXIS 6347 (D. Colo. Jan 13, 2021) ... 10, 13,
  14, 15

*Daly v. Aspen Ctr. for Women's Health, Inc.*,
  134 P.3d 450 (Colo. App. 2005) .................................................................... 6

*Dole v. Snell*,
  875 F.2d 802 (10th Cir. 1989)...................................................................... 10

*Gallinger v. R. Martinez Trucking*,
  No. 2019CV034727, 2020 Colo. Dist. LEXIS 4613 (D. Colo. Dec. 14, 2020) ........... 6

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir. 1997)...................................................................... 9

*Griffith v. City of Des Moines*,
  387 F.3d 733 (8th Cir. 2004).......................................................................... 4

*Gross v. FBL Fin. Servs.*,
  557 U.S. 167 (2009)........................................................................................ 4

*Lambertsen v. Utah Dep't of Corr.*,
  79 F.3d 1024 (10th Cir. 1996)...................................................................... 10

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)........................................................................................ 4

*Meyer v. Holley*,
  537 U.S. 280 (2003)................................................................................ 6

*Nationwide Mut. Ins. Co. v. Darden*,
  503 U.S. 318 (1992)............................................................................. 10

*Perkins v. Reg'l Transp. Dist.*,
  907 P.2d 672 (Colo. App. 1995) ............................................................ 6

*Powell v. City & County of Denver*,
  973 F. Supp. 1198 (D. Colo. 1997) ........................................... 11, 12, 14

*Smith v. City of Jackson*,
  544 U.S. 228 (2005) (O'Connor, J., concurring) ................................. 4, 7

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010)................................................................ 4, 6

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015)................................................................................ 4

*United States v. Quicken Loans Inc.*,
  No. 15-0613 (D.D.C. filed Apr. 23, 2015), ECF No. 1 ............................ 12

*Utah Gospel Mission v. Salt Lake City Corp.*,
  425 F.3d 1249 (10th Cir. 2005)............................................................... 8

*Warmington v. Bd. of Regents of Univ. of Minn.*,
  998 F.3d 789 (8th Cir. 2021)................................................................... 5

*Weed v. Pueblo*,
  591 P.2d 80 (Colo. 1979)................................................................ 10, 15

**RULES**

Rule 12(b)(6) .............................................................................................. 3

**STATUTES**

12 U.S.C. § 3353(a)(4) .............................................................................. 11

42 U.S.C. § 3605..............................................................................passim

42 U.S.C. § 3605(a) .................................................................................... 4

Colo. Rev. Stat. § 12-10-602(8)(a) ............................................................. 8

Colo. Rev. Stat. § 12-10-614(1)(c) ................................................................. 12, 13, 14

Fair Housing Act ................................................................................................ 5

**OTHER AUTHORITIES**

12 C.F.R. § 1026.42(c)(1) .............................................................................. 11, 13, 14

24 C.F.R. ¶ 100.7 ................................................................................................ 7

24 C.F.R. § 100.7 ................................................................................................ 3

24 C.F.R. § 100.7(a), (b) ................................................................................. 5

24 C.F.R. § 100.20 ............................................................................................. 5

4 Colo. Code Regs. § 725-2.18.1 ..................................................................... 15

Restatement (Second) of Agency § 12 ........................................................... 10

This action arises from a complaint initially filed in October 2021 with the U.S. Department of Housing and Urban Development ("HUD") by Francesca Cheroutes ("Cheroutes"), who alleged that her lender, the appraisal management company, appraisal company and appraiser all collectively subjected her to a discriminatory appraisal because of her race since the appraiser's estimated value of her property was lower than she anticipated. Three years later, the Complaint filed by the government similarly alleges that "Defendants discriminated in making available a residential real estate-related transaction…because of race or color, in violation of 42 U.S.C. § 3605."

The Complaint fails to include any factual allegations for this conclusory claim of discrimination **as to Defendant Solidifi U.S. Inc.** ("Solidifi"), the appraisal management company ("AMC"). As an AMC, Solidifi fulfills a purely administrative function in the real estate process by managing the appraisal management procurement process and acting as an intermediary between the lender and the appraiser. More importantly, the government's claim is based on the allegation that "Solidifi did not request any changes or take any corrective action based on its review [of the appraisal]." Compl. ¶ 111. Yet, pursuant to federal and state appraiser independence requirements, Solidifi is **prohibited** from influencing the appraisal value arrived at by the independent, third-party appraiser. Thus, the government seeks to hold Solidifi liable for not taking actions that the federal and state appraiser independence requirements prohibit Solidifi from taking.

Given Solidifi's limited role in the transaction, the government articulates not a single plausible allegation of discrimination or discriminatory intent by Solidifi. Indeed, the Complaint fails to allege that Solidifi even knew Ms. Cheroutes' race, much less

intended to discriminate against her because of her race.  Rather, the relevant factual allegations giving rise to the government's claims focus squarely on the third-party appraiser, Mr. Mykhailyna, and his company, Maverick Appraisal Group ("Maverick")— independent parties for which Solidifi cannot be held liable.  For these reasons, the Complaint against Solidifi should be dismissed.

## FACTS ALLEGED IN THE COMPLAINT

On January 14, 2021, Defendant Rocket Mortgage LLC's ("Rocket Mortgage") contacted Solidifi to order an appraisal of residential real property located at 749–751 N. Ash Street, Denver, Colorado 80220 (the "Property").  Compl. ¶ 3.  That same day, Solidifi assigned appraiser Maksym Mykhailyna ("Mykhailyna"), owner and CEO of Denver-based Maverick, to perform the appraisal of the Property.  Compl. ¶¶ 3,12, 44.  Mr. Mykhailyna conducted the inspection of the Property (Compl. ¶ 59) and submitted a copy of the appraisal report to Solidifi on January 21, 2021.  Compl. ¶ 107.  "Solidifi conducted a review" of the appraisal report, and "did not request any changes or take any corrective action based on its review."  Compl. ¶ 111.  Solidifi then submitted the appraisal report to Rocket Mortgage.  Compl. ¶ 112.

Plaintiff does not allege that the appraisal report prepared by Mr. Mykhailyna, which was provided to Solidifi and forwarded to Rocket Mortgage, contained any information regarding Ms. Cheroutes' race or ethnicity.  Indeed, Plaintiff does not allege that Solidifi had any knowledge of Ms. Cheroutes' race or ethnicity.  Similarly, Plaintiff does not allege that Ms. Cheroutes ever attempted to contact Solidifi, much less that Solidifi ever communicated with her.

2

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must establish "factual plausibility" by pleading "factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a complaint alleging "purposeful discrimination" like this one, the plaintiff must plead facts that plausibly suggest "a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' the actions adverse effects upon an identifiable group." *Id.* at 676-77.

## ARGUMENT

The Complaint fails to state a claim against Solidifi under 42 U.S.C. § 3605 because the government fails to plausibly allege that Solidifi discriminated against Ms. Cheroutes because of her race—nor even that Solidifi was aware of her race—in connection with a residential real estate related transaction. Nor has the government plausibly alleged any basis for Solidifi's liability for the allegedly discriminatory actions of any other Defendant. As Plaintiff has not alleged any discriminatory housing practice by Solidifi, or any resulting liability under the provisions of 24 C.F.R. § 100.7, the Complaint should be dismissed as to Solidifi.

## I.      The Pleading Requirements for a Claim under 42 U.S.C. § 3605

The Complaint attempts to allege a violation of 42 U.S.C. § 3605, which provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because

of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). To state a claim under Section 3605, a plaintiff must proceed under a theory of either disparate treatment or disparate impact. *See generally Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015). In lending, disparate treatment occurs when a loan applicant is treated differently based on a prohibited basis such as race or national origin. *See, e.g., id.* at 559; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Thus, a claim that a person discriminated against a loan applicant because of their race is a claim of disparate treatment discrimination. Here, the government alleges that Solidifi and the other Defendants treated Ms. Cheroutes unfavorably "based on her race and color," and thus, this is a disparate treatment case. *See, e.g., Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176–77 (2009); *Smith v. City of Jackson*, 544 U.S. 228, 249 (2005) (O'Connor, J., concurring).

To state a claim for disparate treatment discrimination, the complaint must show that the defendant's actions resulted from a discriminatory motive, such that his or her protected characteristic was the "but for" cause of the defendant's actions. *See, e.g., Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Gross*, 557 U.S. at 176–77. To survive a motion to dismiss, disparate treatment discrimination claims require, at the very least, an allegation that (1) the defendant knew about the race or other protected characteristic of the plaintiff; and (2) discriminated because of that characteristic. *See Swanson*, 614 F.3d at 403–06. Such allegations must nonetheless satisfy the factual plausibility standard of *Iqbal* and be more than just a recitation of the elements as required by *Twombly*. *See,*

*e.g., Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 798 (8th Cir. 2021) (affirming the district court's dismissal because "the complaint, read as a whole, does not plausibly give rise to the inference of discrimination on the basis of sex as the reason for [plaintiff's] termination").

If ultimately established, a violation of 42 U.S.C. § 3605 is deemed a "discriminatory housing practice" under the regulations implementing the Fair Housing Act. *See* 24 C.F.R. § 100.20. These regulations provide that a person may be held liable for a discriminatory housing practice only on the following grounds: (1) direct liability for (a) the person's own conduct that results in a discriminatory housing practice; (b) failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct; or (c) failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it; and/or (2) vicarious liability for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law. 24 C.F.R. § 100.7(a), (b). As a preliminary matter, the Fair Housing Act imposes liability for the discriminatory acts of a third party only in limited circumstances, where the relationship between the parties satisfies traditional principles of vicarious liability.

For purposes of imposing liability on Solidifi for acts of a third party, the Supreme Court has held that the Fair Housing Act does not impose some nondelegable duty on a

person to ensure that third parties with whom it conducts business do not discriminate. *See Meyer v. Holley*, 537 U.S. 280, 289-91 (2003).  Rather, the Supreme Court has held that courts should apply traditional principles of vicarious liability to determine whether a party is liable under the FHA for the discriminatory conduct of third parties with whom it does business.  *Id.*  In particular, the Supreme Court clarified that "traditional vicarious liability rules" are those that "ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."  *Id.* at 285.  Although these rules may permit an employer to be held liable "for the torts committed by an employee or agent while acting within the scope of his employment or agency," vicarious liability does not arise when negligent work is performed by an independent contractor."  *Gallinger v. R. Martinez Trucking*, No. 2019CV034727, 2020 Colo. Dist. LEXIS 4613, at *8–9 (D. Colo. Dec. 14, 2020) (citing *Perkins v. Reg'l Transp. Dist.*, 907 P.2d 672, 674 (Colo. App. 1995)); *Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005).

## II. Plaintiff Has Not Alleged Facts Sufficient to State a Claim that Solidifi Discriminated Against Ms. Cheroutes

The Complaint includes no factual allegations whatsoever that Solidifi discriminated against, or took any action at all, with respect to Ms. Cheroutes **because of her race**.  As stated previously, a claim of disparate treatment discrimination against Solidifi requires, at a minimum, an allegation that the defendant (1) **knew about the race** or other protected characteristic of Ms. Cheroutes and (2) discriminated against her **because of** that characteristic.  *See Swanson*, 614 F.3d at 403–06.

Here, Plaintiff does not (and cannot) allege that Solidifi had any knowledge of Ms. Cheroutes' race.  Without knowledge of her race, Solidifi could not have taken any action against Ms. Cheroutes **because of** her race.  *See Smith*, 544 U.S. at 249 (O'Connor, J., concurring) (noting that the "because of" statutory language "plainly requires discriminatory intent").  On this basis alone, the Complaint should be dismissed.

Indeed, the factual allegations against Solidifi regarding Ms. Cheroutes' appraisal are limited to assertions that the appraisal report "did not comply with Solidifi's standards and requirements for its appraisers" and "Solidifi did not request any changes or take any corrective action based on its review [of the appraisal report]."  Compl. ¶ 111.  But the Complaint provides not a single allegation that Solidifi even knew Ms. Cheroutes' race, much less that Solidifi took any action **because of** her race.  Therefore, the Complaint does not contain any facts to support a claim that Solidifi engaged in any discriminatory housing practice in violation of 42 U.S.C. § 3605, and the Complaint should be dismissed.

**III.  Plaintiff Has Not Alleged Facts Sufficient to State a Claim that Solidifi Is Liable for the Actions of Mr. Mykhailyna or Maverick**

Recognizing that it cannot show discrimination by Solidifi, the government then attempts to base its claim against Solidifi on the actions of Mr. Mykhailyna and Maverick, his appraisal company.  The Complaint, however, fails to allege facts sufficient to establish that Solidifi had sufficient control or legal responsibility over the appraiser as its actual or effective agent.  *See* 24 C.F.R. ¶ 100.7.  Therefore, as with the claim based on a direct theory of direct discrimination, Plaintiff's attempt to state a claim for third-party liability fails.

Specifically, the government alleges that "[t]he discriminatory housing practices of Defendants Mykhailyna and Maverick . . . taken while they were acting as agents of Solidifi, were within the scope of that agency, and were taken with Solidifi's actual or apparent authority."  Compl. ¶ 148.  As discussed below, Mr. Mykhailyna and Maverick are not agents of Solidifi.

First, Colorado law dictates that the appraiser is not an agent of Solidifi, but is instead an independent contractor.  As an AMC, Solidifi does not have any staff appraisers completing appraisal assignments, but instead "maintains a panel of appraisers it uses to enable Solidifi to carry out appraisals with lenders."  Compl. ¶ 45.  Solidifi maintains only a panel of independent appraisers that are licensed and regulated by the relevant state agency.  Compl. ¶ 13 (alleging that Mr. Mykhailyna "is a licensed appraiser").  The Colorado real estate code defines an "appraiser panel" as a "network, list, or roster of licensed or certified appraisers approved by an AMC to perform appraisals **as independent contractors for the AMC**."  Colo. Rev. Stat. § 12-10-602(8)(a) (emphasis added).  Therefore, under Colorado law, Mr. Mykhailyna is an independent contractor.

Second, the Complaint's allegations are insufficient to infer an agency relationship between Solidifi and the appraiser.  "Solidifi entered into an agreement with Maverick to carry out the appraisal."  Compl. ¶ 44.  A copy of Solidifi's Appraiser's Terms of Use ("Terms of Use") with Maverick and Mr. Mykhailyna is attached hereto as Exhibit A.[1]  The

---

[1] The Court may consider the Terms of Use on a motion to dismiss because the document is central to the government's claim and referred to in the complaint.  *See Utah Gospel*

Terms of Use demonstrate that Solidifi does not have sufficient control over the appraiser or appraisal company to state a claim that Solidifi is liable for the actions of Mr. Mykhailyna or Maverick.   Indeed, the language of the agreement demonstrates that an agency relationship was explicitly disclaimed between the parties.

> It is understood and agreed that **User is an independent contractor and not an employee of Solidifi for any purpose**, including without limitation, benefits eligibility, overtime eligibility and federal or state tax purposes…. **It is also understood that User shall not be considered an agent or employee of Solidifi. User shall have no authority whatsoever to act on behalf of Solidifi or bind Solidifi by contract or otherwise without express written authorization from Solidifi**. User shall provide Solidifi with a W-9 concurrently with execution of this Agreement.

*See* Exhibit A, Terms of Use, § 5(e) (emphasis added).   As set forth in the contract, Solidifi, as an AMC, does not employ appraisers to complete appraisal assignments, but instead engages independent appraisers on an individual order basis once a request for an appraisal is received from a lender.   Hence, appraisers are independent contractors who are assigned orders by Solidifi (and then paid only for the appraisals they complete).

An independent contractor is "one who engages to perform services for another, according to his own methods and manner, free from direction and control of the employer in all manners relating to the performance of the work, and accountable to him only for the result to be accomplished."   *Cont'l Bus Sys., Inc. v. NLRB*, 325 F.2d 267, 271 (10th Cir. 1963).   While independent contractors may be subject to some level of control by the

---

*Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) (citing *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1045 (10th Cir. 2002); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

hiring party, the purpose of the control is merely "to ensure that the end result contracted

for is reached, even though they are not subject to control over the means and methods

of accomplishing that result."  *Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Off.*,

859 P.2d 278, 281 (Colo. App. 1993).  In contrast, an employee "is subject to control over

the means and methods of work as well as the ends and results."  *Id.*  Moreover, "an

essential characteristic of an agency/principal relationship is the agent's power to bind

the principal to a third party."  *Weed v. Pueblo*, 591 P.2d 80, 82 (Colo. 1979) (citing

Restatement (Second) of Agency § 12).

        In considering whether an individual is an independent contractor or an agent,

courts consider various factors, often including (1) the degree of control exercised by the

employer over the work; (2) the financial arrangement of the parties; (3) the worker's

investment in the business; (4) the permanence of the business relationship; (5) the

degree of skill the work calls for; and (6) the extent to which the work is integral to the

employer's business. *See, e.g., Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989).  No

one factor is decisive, but under the common law approach, the primary focus is whether

the hiring party controls the means and manner by which the work is accomplished."

*Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996) (citing *Nationwide

Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)).

        While a contract labeling a party as an independent contractor is not dispositive,

other factors surrounding the relationship also support this conclusion.  *See Courtney v.

Class Transp., Inc*., No. 18-cv-02335-RBJ, 2021 U.S. Dist. LEXIS 6347, at *36 (D. Colo.

Jan 13, 2021).  For instance, it is undisputed that Mr. Mykhailyna is not an employee of

10

Solidifi.  Compl. ¶ 13.  Rather, he is the owner and CEO of his own business, Maverick, and he was free to perform appraisals for anyone he chose.  Compl. ¶ 13; Exhibit A, Terms of Use.  These factors further demonstrate Solidifi's lack of agency or control over the appraiser as a matter of law.  *See Powell v. City & County of Denver*, 973 F. Supp. 1198, 1200–03 (D. Colo. 1997) (holding that a security consultant was an independent contractor, and not an agent, because he owned his own company, had multiple clients, consulted throughout the United States, and billed the clinic for his services rather than taking a salary, even though the hiring party "had final authority as to what strategies or techniques were to be carried out concerning the security of the facility").

Next, federal and state law limit the degree of control that an AMC such as Solidifi has over the valuation work performed by the independent appraiser.  Plaintiff seeks to hold Solidifi liable for the actions of Mr. Mykhailyna and Maverick because "Solidifi did not request any changes or take any corrective action based on its review" of the appraisal performed by Mr. Mykhailyna.  Compl. ¶ 111.  Federal and state requirements, however, mandate strict separation between, on the one hand, the lender and the AMC, and, on the other hand, the appraiser conducting the property valuation.  The federal requirements[2] expressly (i) mandate that an appraisal be "based on" the appraiser's "independent judgment;" and (ii) prohibit "direct and indirect attempts" by lenders to cause that value to be "based on any factor other than [that] independent judgment."  12 C.F.R. § 1026.42(c)(1).[3]  The Colorado requirements expressly prohibit an AMC from

[2] These federal requirements specifically apply to AMCs.  12 U.S.C. § 3353(a)(4).
[3] The government is well aware of the appraiser independence requirements and

"[i]nfluencing or attempting to influence the development, reporting, result, or review of a real estate appraisal or the engagement of an appraiser through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner." Colo. Rev. Stat. § 12-10-614(1)(c). Therefore, the federal and state governments' own appraisal-related requirements prohibit an AMC such as Solidifi from exercising control or attempting to influence the valuation opinions of appraisers like Mr. Mykhailyna. The federal and state governments' own appraisal-related requirements prohibited Solidifi from "request[ing] any changes or tak[ing] any corrective action" with respect to the value of the Property arrived at by Mr. Mykhailyna. Compl. ¶ 111. This inability to change the value of an appraisal similarly demonstrates that Solidifi lacked the control necessary to conclude that Mr. Mykhailyna or Maverick were an agent of Solidifi.

The financial circumstances of the relationship between Solidifi and the appraiser also preclude classifying Mr. Mykhailyna as an agent of Solidifi. Like the security consultant in *Powell* who billed the clinic for his services, Mr. Mykhailyna is paid per appraisal at a rate set by Mr. Mykhailyna. The Terms of Use state that "[i]f User agrees to provide an appraisal to a Purchaser through the use of the Service, User hereby agrees that User's fees will be based on the then fee schedule that User has previously posted on the Website. . . . Solidifi shall remit User's fees . . . for those appraisals submitted by User to Purchasers within thirty (30) days of . . . the appraisal." Terms of Use § 5(c). Mr.

---

previously sued Rocket Mortgage on the theory that it was unlawful to maintain an appraisal "value appeal" process that "led to appraisers increasing the appraised value of a property" to help get loans approved. Dkt. No. 28 at p. 2 n.2 (citing *United States v. Quicken Loans Inc.*, No. 15-0613 (D.D.C. filed Apr. 23, 2015), ECF No. 1 ¶¶ 58, 111).

Mykhailyna receives no salary or regular wage for the services he renders, nor does Plaintiff allege such a compensation arrangement in the Complaint. Further, Solidifi's panel appraisers are responsible for all costs incurred in performing the appraisal and are subject to their own recordkeeping requirements. Exhibit A, Terms of Use §§ 5(b); 4(a)(vii). Additionally, Solidifi's panel appraisers are responsible for "procuring, installing, operating, supporting and maintaining" their own systems, "including computer hardware and software" necessary to work with Solidifi—a requirement that further highlights the arms-length relationship between the Solidifi and Mr. Mykhailyna. Exhibit A, Terms of Use § 4(a)(i); *see Courtney*, 2021 U.S. Dist. LEXIS 6347, at *36 (finding a trucking company was not an agent of a shipping broker where the trucking company was responsible for providing its own equipment).

Third, regardless of how the relationship between Solidifi and the appraiser is contractually characterized, Solidifi exercised no control over the manner and means by which Mr. Mykhailyna and Maverick conducted appraisals. In other words, the Complaint is devoid of allegations showing that Mr. Mykhailyna and Maverick are subject to Solidifi's control with regard to the "methods and manner" with which they perform appraisals to arrive at the value of the Property. As stated previously, Solidifi is prohibited by federal and state appraiser independence requirements from influencing or controlling the appraiser. 12 C.F.R. § 1026.42(c)(1); Colo. Rev. Stat. § 12-10-614(1)(c).[4]

---

[4] The Terms of Use do provide that "[s]ubject to applicable law, Solidifi may review any appraisal and require changes to be made "in order to meet applicable professional and industry standards and/or other Governmental Authority requirements and/or bring the appraisal(s) into compliance with the Appraisal Standards, if any." Exhibit A, Terms of

Nevertheless, Plaintiff points to Solidifi's quality assurance policies that relate to selecting appraisers and submitting appraisals.  Compl. ¶¶ 44, 46–58.  Even if taken as true, these policies underscore that any control Solidifi exercised over Mr. Mykhailyna was merely "sufficient to ensure that the end result contracted for [was] reached," *Carpet Exch. of Denver, Inc.*, 859 P.2d at 281, and constitutes "no more authority than anyone might have over an independent contractor.  *Powell*, 973 F. Supp. at 1203.  The Complaint further posits the legal conclusion that Solidifi "takes steps to control its appraisers," by reviewing "licensing and insurance information" and conducting background checks.  Compl. ¶ 44.  In *Courtney*, the court noted that "when acting as a broker, [the defendant] takes numerous steps to confirm a carrier's safety rating prior to contracting with it."  *Courtney*, 2021 U.S. Dist. LEXIS 6347, at *5.  Nonetheless, the court weighed the circumstances to determine that "as a broker, [the defendant] did not have the 'right to direct or control the method and manner' in which the trucking company completed the work[.]"  *Id.* at *38 (citations omitted).  Similarly, Solidifi effectively brokers the appraisal process and does not establish a principal-agent relationship with one of the parties merely by interviewing and monitoring appraisers.  *See id.*  The Complaint contains related allegations that Solidifi requires certain explanations and formatting requirements to be included in their appraisals.  Compl. ¶¶ 55–58.  Any such procedural guidelines may serve as parameters for the "end result," *Carpet Exch. of Denver, Inc.*, 859 P.2d at 281,

---

Use § 3(f).  This right, however, does not permit Solidifi to influence or control the appraiser or influence the valuation arrived at by the appraiser given the federal and state appraiser independence requirements.  12 C.F.R. § 1026.42(c)(1); Colo. Rev. Stat. § 12-10-614(1)(c).

but in no way direct or control the manner and methods with which the appraiser carried out the appraisal itself or the work product produced by the appraiser.  *See id.*  Notably, while regulations issued by the federal banking regulators authorize states to establish their own standards for AMCs, Colorado's standards do not permit or expect AMCs to control the "methods and manner" with which an appraiser conducts each appraisal. Instead, Colorado requires AMCs to only conduct quality control audits on a randomly selected sample of 2% of an appraiser's reports completed during the preceding 12 months.  *See* 4 Colo. Code Regs. § 725-2.18.1.  This demonstrates, as a matter of law, the lack of control that AMCs like Solidifi have over appraisers.

Finally, Plaintiff does not even attempt to allege that Mr. Mykhailyna or Maverick was authorized to bind Solidifi to third parties.  The court in *Courtney* emphasized that a trucking company could not be an agent of a shipping broker where the parties' agreement prohibited the trucking company from contracting on behalf of the broker and the trucking company "had no authority to make [the broker] a party to a transaction." 2021 U.S. Dist. LEXIS 6347, at *38–39 (citations omitted).  Here the Terms of Use specifically provides that "[Mykhailyna or Maverick] shall have no authority whatsoever to act on behalf of Solidifi or bind Solidifi by contract or otherwise without express written authorization from Solidifi."  Terms of Use § 5(e).  Plaintiff alleges no such specific authorization.  Lacking this authority, Plaintiff cannot show that Mr. Mykhailyna or Maverick served as an agent of Solidifi.  *See, e.g.*, *Weed*, 591 P.2d at 82.  As such, Solidifi is not liable for the appraiser's actions and Solidifi cannot be held vicariously liable for the actions of Mr. Mykhailyna or Maverick and the Complaint should be dismissed.

15

Respectfully submitted this 20th day of December, 2024.


/s/ Christopher A. Riley
Christopher A. Riley
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
404-881-7000 (telephone)
404-881-7777 (facsimile)
chris.riley@alston.com

Michael J. Carrigan
Alexandria E. Pierce
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
mcarrigan@hollandhart.com
aepierce@hollandhart.com

*Attorneys for Defendant Solidifi
U.S. Inc.*

**CERTIFICATE OF COMPLIANCE WITH D.C. COLO. LCivR 7.1(a)**
**AND GPG CIV. PRACTICE STANDARD 7.1B(b)**

Undersigned counsel certifies that Solidifi U.S. Inc.'s counsel conferred with Plaintiff's counsel, in good faith, by telephone, about the relief sought herein, and Plaintiff's counsel indicated non-consent to such relief.

*/s/ Christopher A. Riley*
Christopher A. Riley

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This 20th day of December, 2024.

*/s/ Christopher A. Riley*
Christopher A. Riley