**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROCKET MORTGAGE, LLC;
SOLIDIFI U.S. INC.;
MAKSYM MYKHAILYNA; and
MAVERICK APPRAISAL GROUP INC.,

      Defendants.

---

**PLAINTIFF UNITED STATES' RESPONSE TO DEFENDANT
ROCKET MORTGAGE, LLC'S MOTION TO DISMISS
THE COMPLAINT (ECF No. 28)**

---

**TABLE OF CONTENTS**

INTRODUCTION...........................................................................................................1

SUMMARY OF FACTS ALLEGED.............................................................................2

LEGAL STANDARD....................................................................................................6

ARGUMENT.................................................................................................................7

    1.  The Complaint Plausibly Alleges That Rocket Violated § 3605 by Relying on a Discriminatory Appraisal When It Canceled Ms. Cheroutes's Application. ...........7

    2.  Rocket Was Not Obligated by Law to Use the Discriminatory Appraisal. ...........11

    3.  The Complaint Plausibly Alleges That Rocket Violated § 3617 by Canceling Ms. Cheroutes's Application in Response to Her Discrimination Complaint..............13

CONCLUSION ...........................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Ahsan v. Homebridge Fin. Servs., Inc.*, 405 F. Supp. 3d 208 (D. Mass. 2019) ............. 12

*Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177 (D. Colo. 2016)..... 13, 14

*Barkley v. Olympia Mortg. Co.*, No. 04 CV 875, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007)....................................................................................................................... 8

*Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) ........................................................ 15

*Brown v. Interbay Funding, LLC*, No. Civ. 04-617-SLR, 2004 WL 2579596 (D. Del. Nov. 8, 2004)....................................................................................................................... 8

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).................................... 14

*C1.G v. Siegfried*, 38 F.4th 1270 (10th Cir. 2022) .......................................................... 6

*Conlin v. L. Offs. of Kirk A. Cullimore*, No. 2:17-cv-1213, 2020 WL 4015731 (D. Utah July 16, 2020) ........................................................................................................... 14

*Connolly v. Lanham*, 685 F. Supp. 3d 312 (D. Md. 2023) ..................................... 7, 8, 14

*Dailey v. City of Lawton*, 425 F.2d 1037 (10th Cir. 1970).................................................. 9

*Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379 (10th Cir. July 6, 2022) .......................................................................................................... 15

*Haws v. Norman*, No. 2:15-cv-00422-EJF, 2017 WL 4221064 (D. Utah Sept. 20, 2017) .................................................................................................................... 14, 15

*Hood v. Midwest Savings* Bank, 95 F. App'x 768 (6th Cir. 2004) .................................. 11

*Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998)............................................. 9

*McDaniel v. Dominium Mgmt. Servs., LLC*, Civil Action No. 21-cv-01997-RMR-NYW, 2022 WL 1316384 (D. Colo. May 3, 2022)......................................................... 10, 14

*McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122 (10th Cir. 2024) ........................ 10

*Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016)................. 9

*Morgan v. Carrington Mort. Servs.*, 719 F. App'x 735 (10th Cir. 2017). .................. 10, 15

*Ngiendo v. Univ. Partners, LLC*, Case No. 2:20-cv-02393-HLT-TJJ, 2021 WL 5038780
(D. Kan. Oct. 27, 2021) ......................................................................................... 15

*Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991)............................................ 11

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)................................................. 8

*Turnbull v. Topeka State Hospital*, 255 F.3d 1238 (10th Cir. 2001) ................................ 9

*Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990)........................................... 10

*Warren v. JPMorgan Chase Bank, N.A.*, No. CV-14-02329-PHX-SPL, 2015 WL
11120693 (D. Ariz. June 4, 2015) ...................................................................... 12

*Washington v. Wells Fargo Bank*, 1:22-CV-764, 2023 WL 415483 (M.D.N.C. Jan. 25,
2023)........................................................................................................................ 8

*Watson v. Vici Cmty. Dev. Corp.*, No. CIV-20-1011-F, 2021 WL 1394477 (W.D. Okla.
Apr. 12, 2021) ......................................................................................................... 13

**Statutes**

15 U.S.C. § 1639e.......................................................................................................... 11, 12

42 U.S.C. § 3605......................................................................................................... passim

42 U.S.C. § 3617............................................................................................................ 2, 13

**Regulations**

12 C.F.R. § 1026.42(c)(3)(iv) ........................................................................................... 12

24 C.F.R. § 100.135......................................................................................................... 2, 7

**Other Authorities**

Interagency Appraisal and Evaluation Guidelines, 75 Fed. Reg. 77,450 (Dec. 10, 2010)
.................................................................................................................................. 13

Robert G. Schwemm, Hous. Discrimination Law and Litig. §§ 20:3, 20:5 ..................... 15

## INTRODUCTION

As alleged, when Francesca Cheroutes applied to refinance her home with
Rocket Mortgage, LLC, the appraiser significantly undervalued her home because she
was Black, appraising her home for *$220,000* less than it had been appraised for in
connection with another loan from Rocket eight months before, a decrease of over *25
percent* at a time when home prices were rising in the area. *Infra* at 2-4.

After seeing the appraisal, Ms. Cheroutes promptly contacted Rocket, described
why she believed it was discriminatory, and asked Rocket to order a second appraisal
or otherwise correct the situation. *Id*. at 4-5. Although Rocket acknowledged that the
sharp decrease from the prior appraisal made no sense, it refused to take any actions to
remedy the discrimination. *Id*. at 5-6. Not only did Rocket not order a second appraisal,
it never even passed on Ms. Cheroutes's concerns to the appraisal management
company it had retained to complete the appraisal. *Id*. In addition, Rocket's
representative told Ms. Cheroutes that because she had alleged discrimination, he
could not talk to her anymore and that her only options were to move forward with the
erroneous appraisal (on less favorable terms) or to cancel the application. *Id*. at 4-6.
Although the representative told Ms. Cheroutes that he would refer her concerns to
another office, Rocket canceled her application immediately after their call. *Id*. at 6.

The Fair Housing Act ("FHA") makes it unlawful to discriminate because of race
in the terms and conditions of residential real estate-related transactions. 42 U.S.C.
§ 3605(a). The FHA's implementing regulations make clear that a lender violates this
provision by using an appraisal it "knows or reasonably should know" is discriminatory

1

to set the terms of or deny a loan. 24 C.F.R. § 100.135(d). The Complaint alleges that

Rocket did just that by relying on an appraisal it knew was likely discriminatory.

Numerous courts have held that such conduct violates the FHA. *Infra* at 7-8.

Rocket does not cite this case law or the regulation. Instead, it argues that a

statute and regulation concerning appraisal independence stripped Rocket of the power

to do anything about the discriminatory appraisal. The plain language of the statute and

regulation, however, refute Rocket's assertion. In fact, these authorities state that a

lender does not violate independence requirements by asking an appraiser to consider

additional information or correct errors, or by ordering a second appraisal, exactly what

Ms. Cheroutes asked Rocket to do. As explained in more detail below, under the plain

language of the statute, as well as the regulations and applicable case law, the

Complaint adequately alleges that Rocket violated 42 U.S.C. §§ 3605 and 3617 by

relying on the discriminatory appraisal and cancelling her loan application in response to

her complaint of discrimination. Rocket's Motion to Dismiss should be denied in full.

## SUMMARY OF FACTS ALLEGED

Francesca Cheroutes, who is Black, owns a duplex in Denver, Colorado, in a

predominantly White neighborhood. ECF No. 1 ¶¶ 16, 23-26, 30. In January 2021, she

applied to refinance her mortgage with Rocket. *Id.* ¶¶ 2, 31. A Rocket representative

provided a loan estimate based on an estimated property value of $860,000, the same

value for which it had been appraised in May 2020 in connection with her existing

mortgage, which was also from Rocket. *Id.* ¶¶ 33, 69. Compared with her existing

mortgage, the loan would have provided a lower interest rate and other more favorable

2

terms. *Id.* ¶ 33. Rocket contracted with Defendant Solidifi U.S. Inc. to conduct an

appraisal of the property ("Subject Appraisal"). *Id.* ¶ 43. Solidifi entered into an

agreement with Defendants Maverick Appraisal Group Inc. and Maksym Mykhailyna,

Maverick's owner, to carry out the appraisal. *Id.* ¶¶ 13, 44.

On January 20, 2021, Mr. Mykhailyna conducted a site inspection. *Id.* ¶ 59. He

seemed surprised that Ms. Cheroutes was the owner and ignored her explanation of

improvements she had made since the last appraisal. *Id.* ¶¶ 63, 65. After the visit, Ms.

Cheroutes told her daughter that Mr. Mykhailyna's conduct troubled her and that she

was concerned that the appraisal would not fairly represent the value of her home. *Id.*

¶ 67. Her concerns proved well founded.

The next day, Mr. Mykhailyna submitted his appraisal to Solidifi, valuing the

home at only $640,000, which is $220,000 lower than the $860,000 appraisal in May

2020. *Id.* ¶¶ 68-69, 107. This approximately 25 percent decrease in value in the span of

eight months was inexplicable given that Ms. Cheroutes had made improvements and

home prices had been rapidly increasing in the area. *Id.* ¶¶ 65, 69-74.

Multiple errors and irregularities in the appraisal signaled that it was tainted by

racial considerations. Although Mr. Mykhailyna's contract with Solidifi required him to

base his appraisal on comparable sales within a one-mile radius of the property, all but

one of the sales he chose were outside this zone. *Id.* ¶ 81. He based his appraisal

exclusively on duplex sales in areas with significantly higher percentages of Black

residents than Ms. Cheroutes's duplex, and he ignored higher-priced sales of duplexes

that were closer to the property and in predominantly White areas. *Id.* ¶¶ 82-92. He
erroneously identified the elementary school that served the property, listing a school
with a significantly higher percentage of Black students than the school that actually
served the neighborhood. *Id.* ¶ 104. And he made numerous other errors or deviations
from the standards required by Solidifi, including under-counting the property's gross
living area; incorrectly stating that the property lacked a fence, attic, and energy-efficient
appliances; and exceeding the standards for downward adjustments to sales
comparisons. *Id.* ¶¶ 95-96, 98-103, 105-106.

Notwithstanding the above errors and irregularities, Solidifi reviewed and
adopted the appraisal and sent it to Rocket that same day. *Id.* ¶¶ 111-112. Rocket then
used the appraisal to generate a new loan estimate consistent with the $640,000
evaluation. *Id.* ¶ 120. These terms were less favorable than the estimate Rocket had
originally provided. *Id.*

After viewing the appraisal, Ms. Cheroutes contacted Rocket, told five different
representatives that she believed the Subject Appraisal was discriminatory, and gave
information in support. *Id.* ¶¶ 113-17, 124-127. She stated that Mr. Mykhailyna met her
and therefore knew she was Black and that she had a Black Lives Matter yard sign at
the time of the inspection. *Id.* ¶ 115. She explained that he had been hostile and did not
listen to her statements about improvements to the property. *Id.* ¶ 117. She described
errors in the Subject Appraisal and noted that it was 25 percent lower than a recent
appraisal. *Id.* ¶¶ 115, 117. Multiple times, she requested that Rocket obtain a new

appraisal. *Id*. ¶¶ 115, 121.

Rocket representatives repeatedly assured Ms. Cheroutes that they would review and look into her concerns. The loan officer told Ms. Cheroutes that Rocket would review the appraisal and referred her to a Solutions Consultant. *Id*. ¶ 115. That person referred her to Client Relations. *Id*. ¶ 121. And an employee from Client Relations told Ms. Cheroutes her complaint would be referred to the legal department, which investigated discrimination complaints. *Id*. ¶¶ 124-126. Based on its review and the information Ms. Cheroutes provided, Rocket knew that there were facts showing the appraisal had undervalued the property because of Ms. Cheroutes's race. *Id*. ¶ 130. In fact, Rocket's loan officer for the transaction acknowledged to Ms. Cheroutes that the decrease in value from the previous appraisal made no sense. *Id*. ¶ 115.

Despite this knowledge and its representations that it would review the matter, Rocket did not investigate the complaint or even forward Ms. Cheroutes's concerns to Solidifi. *Id.* ¶ 128. Rocket could have ordered a second appraisal from a different appraiser or asked Solidifi to correct the numerous errors related to her complaint, but it only asked for an unrelated error to be corrected. *Id*. ¶¶ 44, 131.

Instead of taking actions that would address the issue, Rocket relied on the appraisal it knew was likely discriminatory. On January 25, 2021, Matthew Watson, a Rocket Solution Consultant, told Ms. Cheroutes that if she did not agree to proceed with a loan based on the $640,000 appraisal (on less favorable terms), he would cancel the application. *Id*. ¶¶ 117, 119-120. He also said that because she had raised the issue of

5

discrimination, he could not talk to her or help her. *Id.* ¶ 118. When she again requested a second appraisal, Mr. Watson referred her to Client Relations. *Id.* ¶ 121. After the call, and before she could speak with Client Relations, Rocket canceled the application. *Id.* ¶ 123. A letter dated January 26, 2021, from Rocket to Ms. Cheroutes, stated that Rocket was "unable to offer . . . financing" due to the "[l]ow appraised value." *Id.*

On January 28, 2021, after Rocket had canceled the application, a Client Relations representative told Ms. Cheroutes that Rocket's underwriting team would be concerned by the gross adjustments in an appraisal only if they exceeded 25 percent, and that the gross adjustments in the Subject Appraisal fell below that threshold. *Id.* ¶¶ 124-125. In fact, the gross adjustments for one of the comparable sales in the appraisal did exceed that threshold. *Id.* ¶¶ 125.

Due to Defendants' discrimination, Ms. Cheroutes did not obtain the refinance loan and thus suffered economic harm. *Id.* ¶ 133. Additionally, Ms. Cheroutes suffered emotional distress due to Defendants' apparent belief that her house was worth less because it was owned by a Black person and because of Rocket's retaliation. *Id.* ¶ 135.

## LEGAL STANDARD

When reviewing a motion to dismiss for failure to state a claim, the Court "accept[s] a complaint's well-pleaded factual allegations as true, view[s] all reasonable inferences in favor of the nonmoving party, and liberally construe[s] the pleadings." *C1.G v. Siegfried*, 38 F.4th 1270, 1276 (10th Cir. 2022) (quotation omitted). A complaint survives if it "state[s] a claim to relief that is plausible on its face." *Id.* (quotation omitted).

## ARGUMENT

**1. The Complaint Plausibly Alleges That Rocket Violated § 3605 by Relying on a Discriminatory Appraisal When It Canceled Ms. Cheroutes's Application.**

Section 3605(a) of the FHA provides that it is unlawful for any "entity whose

business includes engaging in residential real estate-related transactions"—including

refinance loans[1]—"to discriminate against any person in making available such a

transaction, or in the terms or conditions of such a transaction, because of race." 42

U.S.C. § 3605(a). And implementing regulations from the U.S. Department of Housing

and Urban Development ("HUD") make clear that it is unlawful for a lender to "[use] an

appraisal of residential real property in connection with the . . . financing of any dwelling

where the [lender] knows or reasonably should know that the appraisal improperly takes

into consideration race." 24 C.F.R. § 100.135(d)(1).

HUD's conclusion as reflected in this regulation is hardly surprising. When a

lender relies on an appraisal it knows is likely based on racial discrimination to set terms

for or refuse to extend a loan, the lender is itself discriminating on the basis of race.

Consistent with this principle, numerous courts have held that lenders violate the FHA

when they rely on an appraisal they know is likely discriminatory in connection with a

home loan. *See Connolly v. Lanham*, 685 F. Supp. 3d 312, 325 (D. Md. 2023) (denying

motion to dismiss where plaintiffs plausibly alleged lender knew or should have known

---

[1] "Residential real estate-related transaction" includes (1) "making or purchasing of loans or providing other financial assistance . . . for purchasing, constructing, improving, repairing, or maintaining a dwelling; or **. . .** secured by residential real estate[,]" and (2) "selling, brokering, or appraising of residential real property." 42 U.S.C. § 3605(b).

7

appraisal was discriminatory); *Washington v. Wells Fargo Bank*, 1:22-CV-764, 2023 WL
415483, at *1-2 (M.D.N.C. Jan. 25, 2023) (denying lender's motion to dismiss); *Barkley
v. Olympia Mortg. Co.*, No. 04 CV 875, 2007 WL 2437810, at *1-2, 15 (E.D.N.Y. Aug.
22, 2007) (denying lender's motion to dismiss where plaintiffs alleged mortgages were
based on discriminatory appraisal); *Brown v. Interbay Funding, LLC*, No. Civ. 04-617-
SLR, 2004 WL 2579596, at *3 (D. Del. Nov. 8, 2004) (denying summary judgment due
to evidence that lender "knew or should have known that the appraisal was
discriminatory"); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)
(holding plaintiff stated claim against lender in connection with discriminatory appraisal).

In *Connolly*, for example, the court held that the plaintiffs stated a claim by
alleging that the lender "was aware of the discriminatory appraisal, had the power to
order a second appraisal or conduct a formal appeal and review, and failed to take
action to remedy the discrimination." 685 F. Supp. 3d at 325. Similarly, in *Washington*,
the plaintiffs stated FHA claims against a lender by alleging that the appraisal indicated
discrimination, the lender worsened the terms of the loan based on the appraisal, the
lender "did not provide any substantive response" to the report of discrimination, and the
lender refused to "reconsider or get another appraisal." 2023 WL 415483, at *1-2.

Here, the allegations mirror those found sufficient in *Connolly* and *Washington*.
Ms. Cheroutes brought the discriminatory appraisal to the attention of five Rocket
employees and described evidence of discrimination. ECF No. 1 ¶¶ 114-130. She
requested a second appraisal, but Rocket provided no substantive response and took

8

no remedial action. *Id.* Instead, Rocket informed her she had to use the appraisal if she wanted to proceed; when she declined, it canceled her application and stated the application had been denied due to the valuation. *Id.* ¶¶ 119-23. The claim against Rocket is based on the actions of Rocket's own employees and agents, who chose to proceed with a discriminatory appraisal rather than taking any steps to address it. Reading these allegations in the light most favorable to the United States, the Complaint plausibly alleges that Rocket acted with discriminatory intent and violated the FHA.

Contrary to Rocket's contention, it cannot escape liability merely because another party was the one who initially acted with discriminatory intent. *See* ECF No. 28 at 9-13. It is well established, in the Tenth Circuit and elsewhere, that a defendant can also be liable when, through its deliberate action or inaction, it effectuates or enables the discriminatory acts or designs of others. *See, e.g.*, *Dailey v. City of Lawton*, 425 F.2d 1037, 1039 (10th Cir. 1970) (holding that a defendant acts with discriminatory intent by "effectuating the discriminatory designs" of others); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074-75 (10th Cir. 1998) (holding franchise liable for sexual assault of an employee by customers where, prior to assault, employee reported customers' improper conduct and asked that someone else serve them); *Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1244 (10th Cir. 2001) ("[A]n employer may be responsible for sexual harassment based upon the acts of nonemployees."); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 589-597, 612 (2d Cir. 2016) (holding village liable under FHA for blocking housing development based on community opposition with "knowledge of

9

[its] constituents' discriminatory animus"); *Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1530-31 (7th Cir. 1990) ("A person who serves as a conduit for another person's discrimination can . . . be guilty of intentional discrimination [under FHA] . . . notwithstanding the [person]'s own freedom from racial animus."); *McDaniel v. Dominium Mgmt. Servs., LLC*, Civil Action No. 21-cv-01997-RMR-NYW, 2022 WL 1316384, at *6 (D. Colo. May 3, 2022) ("[I]ndividuals may be held liable . . . so long as the individual participated in, authorized, or ratified the commission of a fair-housing violation."), *report and recommendation adopted,* 2022 WL 20440201 (June 15, 2022).

Ignoring the relevant case law, Rocket argues that the United States must allege facts meeting a four-part test. *See* ECF No. 28 at 10. But this is not the only set of circumstances where a plaintiff can set forth a plausible claim of discrimination. As the Tenth Circuit has explained in the employment discrimination context, "we do not mandate the pleading of any specific facts in particular to survive a motion to dismiss," and the "critical" inquiry is whether the adverse action "occurred under circumstances which give rise to an inference of unlawful discrimination." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1141 (10th Cir. 2024) (quotations omitted).

The cases cited by Rocket do not show that the allegations here are lacking. *See* ECF No. 28 at 11-12. In *Morgan v. Carrington Mortgage Services*, the court held it was implausible that the lender discriminated based on disability by ignoring the plaintiff's request to modify her loan, as the loan had ceased to exist prior to the request. *See* 719 F. App'x 735, 743-44 (10th Cir. 2017). In contrast, Rocket was aware of facts showing

discrimination prior to the cancellation. In *Hood v. Midwest Savings Bank*, the court concluded that the lender could not have relied on a discriminatory appraisal because the appraiser, for non-discriminatory reasons, never completed the appraisal. *See* 95 F. App'x 768, 777 (6th Cir. 2004). Here, the Complaint alleges that Rocket was informed the appraisal was discriminatory. And in *Sofarelli v. Pinellas County*, the plaintiff *conceded* there was no discriminatory intent. *See* 931 F.2d 718, 723 (11th Cir. 1991).

The Complaint alleges that Rocket, through the actions of its own employees, chose to rely on the Subject Appraisal after learning that it reflected discrimination based on race. This is sufficient to state a claim under § 3605.[2]

### 2. Rocket Was Not Obligated by Law to Use the Discriminatory Appraisal.

Rocket does not acknowledge, much less try to distinguish, the HUD regulation and the case law making clear lenders can be liable for relying on discriminatory appraisals. Instead, Rocket asserts that it was prohibited by 15 U.S.C. § 1639e, a statute concerning appraisal independence, from taking any action to avoid relying on the discriminatory appraisal. *See* ECF No. 28 at 7-9. But the appraisal independence statute and its implementing regulation do not require lenders to use unlawful appraisals that violate the FHA; rather, they allow lenders to take remedial actions.

The provision on which Rocket relies, 15 U.S.C. § 1639e, prohibits lenders from

---

[2] Rocket argues that Ms. Cheroutes's injuries were not a "result" of its acts, speculating that she could have taken some action—reapplying for a loan or making a different request to Rocket—that might have had a different result. *See* ECF No. 28 at 12-13. But at this stage, the Court cannot speculate. The Complaint sufficiently alleges that Rocket caused economic and emotional harm. ECF No. 1 ¶¶ 122-123, 130-35.

taking certain actions to influence appraisers' valuations. It prohibits lenders from engaging in any act that "compensates, coerces, extorts, colludes, instructs, induces, bribes, or intimidates" an appraiser "for the purpose of causing the appraised value . . . to be based on any factor other than the independent judgment of the appraiser." *Id.* § 1639e(b)(1). It also prohibits acts that "seek[] to influence an appraiser or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction." *Id.* § 1639e(b)(3). These provisions "deter[] [persons] from incentivizing or coercing an appraiser to misrepresent property value." *Warren v. JPMorgan Chase Bank, N.A.*, No. CV-14-02329, 2015 WL 11120693, at *2 (D. Ariz. June 4, 2015).

But contrary to Rocket's assertion, the provision explicitly allows a lender to communicate with the appraiser and take corrective actions when the appraisal may be faulty. The statute states that a lender does not violate appraisal independence by "asking an appraiser to . . . [c]onsider additional, appropriate property information, including the consideration of additional comparable properties to make or support an appraisal[;] [p]rovide further detail, substantiation, or explanation for the appraiser's value conclusion[;] [or] *correct errors* in the appraisal report." 15 U.S.C. § 1639e(c) (emphasis added). The extent of the prohibition is further defined in "regulations prescribed under this section." *Id.* § 1639e(a). Those regulations clarify that a lender may "[o]btain[] multiple valuations for the consumer's principal dwelling to select the most reliable valuation." 12 C.F.R. § 1026.42(c)(3)(iv). This provision allows lenders to "obtain another appraisal" when the existing appraisal may be deficient so long as the

lender "adhere[s] to a policy of selecting the most credible appraisal." Interagency Appraisal and Evaluation Guidelines, 75 Fed. Reg. 77,450, 77,457-58 (Dec. 10, 2010).

The appraisal independence statute did not require Rocket to use a discriminatory appraisal. As alleged, Rocket could have avoided relying on the discriminatory appraisal by ordering another appraisal from a different appraiser, or by requesting that Mr. Mykhailyna consider more appropriate comparable sales and fix other errors in the Subject Appraisal. ECF No. 1 ¶ 131. Rocket refused to do any of these things. *Id*. ¶¶ 130-31. Rocket itself chose to rely on the discriminatory appraisal, and it should be held accountable for the consequences of that choice.

### 3. The Complaint Plausibly Alleges That Rocket Violated § 3617 by Canceling Ms. Cheroutes's Application in Response to Her Discrimination Complaint.

42 U.S.C. § 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by" § 3605. "To state a claim of retaliation under the FHA, the plaintiff must show that (1) [the individual] was engaged in protected activity; (2) [she] suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal connection between the two." *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1187-88 (D. Colo. 2016).

The Complaint alleges facts showing these elements. Ms. Cheroutes exercised her right to be free from discrimination by reporting to Rocket that the appraisal was discriminatory. *See Watson v. Vici Cmty. Dev. Corp.*, No. CIV-20-1011-F, 2021 WL 1394477, at *9 (W.D. Okla. Apr. 12, 2021) ("Protected activities include . . . complaining

13

about discriminatory housing practices . . . .") (citing *Arnal*, 226 F. Supp. 3d at 1188). In response, Rocket interfered with her right under § 3605 to engage in a residential real-estate transaction by canceling her loan application. ECF No. 1 ¶¶ 119, 122.[3]

Rocket argues that canceling a loan application cannot meet the standard of coercion, intimidation, threats, or interference. ECF No. 28 at 13-15. However, any action that "'could well dissuade a reasonable [person]' from engaging in protected activity" is sufficient. *McDaniel*, 2022 WL 1316384, at *10 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Cancellation would dissuade a reasonable person because it causes economic harm. *Cf. Haws v. Norman*, No. 2:15-cv-00422-EJF, 2017 WL 4221064, at *11 (D. Utah Sept. 20, 2017) (fees and small claims suit sufficient for adverse action); *Arnal*, 226 F. Supp. 3d at 1188 (similar). In fact, allegations that a lender insufficiently responded to a complaint of appraisal discrimination have been held sufficient. *See Connolly*, 685 F. Supp. 3d at 330.

The cases cited by Rocket either support the United States' argument or are distinguishable. In one, the court concluded that the defendant may have engaged in unlawful retaliation by distributing misleading reasonable accommodation forms (a less severe action than loan cancelation). *See Conlin v. L. Offs. of Kirk A. Cullimore*, No. 2:17-cv-1213, 2020 WL 4015731, at *13-15 (D. Utah July 16, 2020). The remainder of

---

[3] Rocket misconstrues the facts when it states that it canceled the loan because of the low appraised value. *See* ECF No. 28 at 11. Mr. Watson urged Ms. Cheroutes to move forward with the loan application on the basis of the appraisal, and Rocket issued revised loan terms after the appraisal was submitted. ECF No. 1 ¶¶ 119-20. The United States alleges that retaliation was the true motive for canceling the application.

the cases Rocket cites do not involve retaliation or are factually dissimilar to this matter.

Rocket also argues that the Complaint fails to allege Rocket retaliated because of Ms. Cheroutes's race. ECF No. 28 at 13. But the plain language of the statute only requires that the retaliation, interference, or other adverse action be taken because the person exercised their FHA rights. *See* 42 U.S.C. § 3617. There is no additional requirement that the action also have been taken because of the person's race. *See Morgan*, 719 F. App'x at 743-44; *Ngiendo v. Univ. Partners, LLC*, Case No. 2:20-cv-02393-HLT-TJJ, 2021 WL 5038780, at *7 (D. Kan. Oct. 27, 2021); *Haws*, 2017 WL 4221064, at *9-10.[4] As explained above, the Complaint sufficiently alleges that Rocket's conduct interfered with Ms. Cheroutes's FHA right to report discrimination and to obtain a loan transaction unaffected by a discriminatory appraisal.

## CONCLUSION

For the reasons given above, the United States respectfully requests that the Court deny Rocket's Motion to Dismiss, ECF No. 28.

---

[4] Rocket relies on dicta from the unreported decision in *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379, at *8 & n.5 (10th Cir. July 6, 2022), to support its argument that an additional showing of discriminatory intent, beyond what is stated in the statute, is required. Relying on an out-of-circuit case that did not involve retaliation, *Hatfield* did list discriminatory intent as an element. *Id.* (citing *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)); *see also* Robert G. Schwemm, Hous. Discrimination Law and Litig. §§ 20:3, 20:5 (distinguishing elements of retaliation and non-retaliation claims). But *Hatfield* never explained what was required by that element, and it disposed of the case on other grounds. Even if discriminatory intent were required, dismissal would be improper. By relying upon the Subject Appraisal despite the well-founded complaint of discrimination, Rocket acted with discriminatory intent. That intent also infected Rocket's retaliatory decision to cancel the loan application.

15

Dated January 9, 2025.


MATTHEW T. KIRSCH                    KRISTEN CLARKE
United States Attorney               Assistant Attorney General
                                     Civil Rights Division


s/ Zeyen J. Wu                       s/ Nathan Shulock
**Alicia Alvero Koski**              CARRIE PAGNUCCO
**Zeyen J. Wu**                      Chief
Assistant United States Attorneys    TIMOTHY J. MORAN
United States Attorney's Office      Deputy Chief
1801 California Street, Suite 1600   **Nathan Shulock**
Denver, CO 80202                     Trial Attorney
Telephone: (303) 454-0100            Housing and Civil Enforcement Section
Email: zeyen.wu@usdoj.gov            Civil Rights Division
                                     U.S. Department of Justice
                                     150 M Street, NE
                                     Washington, DC 20530
                                     Telephone: (202) 598-3254
                                     Email: nathan.shulock@usdoj.gov

                                     Attorneys for Plaintiff
                                     United States of America

16

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2025, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system. I further certify that on January 9,

2025, I sent the foregoing document via email to the following non-CM/ECF participant:

Maria Temkin
Temkin & Associates, LLC
1700 Market Street, Suite 1005
Philadelphia, PA 19103
maria@temkinlegal.com
Counsel for Maksym Mykhailyna and Maverick Appraisal Group Inc.

s/ Nathan Shulock
**Nathan Shulock**
Attorney for Plaintiff