-i-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civ. A. No. 1:24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ROCKET MORTGAGE, LLC,
SOLIDIFI U.S. INC.,
MAKSYM MYKHAILYNA, and
MAVERICK APPRAISAL GROUP INC.,

    Defendants.

**DEFENDANT ROCKET MORTGAGE'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................... 2

I.  The government admits it cannot allege discriminatory intent on Rocket Mortgage's part and is wrong to argue that it does not have to do so. ................. 2

II. HUD's regulation does not relieve the government of the obligation to plead discriminatory intent, and the government pleads no violation of it, anyway. ........................................................................................................... 4

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barkley v. Olympia Mortg. Co.*,
   2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007) .............................................................. 8

*Barwick v. Broadway Lofts, LLC*,
   2022 WL 4295336 (D. Colo. May 23, 2022) ............................................................. 10

*Boyer v. Bd. of Cnty. Comm'rs of Cnty. of Johnson Cnty.*,
   922 F. Supp. 476 (D. Kan. 1996) ................................................................................ 4

*Brown v. Interbay Funding, LLC*,
   2004 WL 2579596 (D. De. Nov. 8, 2004) ............................................................ 6–7, 8

*Carrillo v. Hickenlooper*,
   2013 U.S. Dist. LEXIS 187616 (D. Colo. Mar. 11, 2013) .................................... 3, 10

*Connolly v. Lanham*,
   685 F. Supp. 3d 312 (D. Md. 2023) ............................................................................ 6

*Hatfield v. Cottages on 78th Cmty. Ass'n*,
   2022 WL 2452379 (10th Cir. July 6, 2022) .......................................................... 2, 10

*Hood v. Midwest Sav. Bank*,
   95 F. App'x 768 (6th Cir. 2004) ............................................................................ 9, 10

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) .................................................................................................... 5

*McDaniel v. Dominium Mgmt. Servs., LLC*,
   2022 WL 1316384 (D. Colo. May 3, 2022) ............................................................... 10

*McNellis v. Douglas Cnty. Sch. Dist.*,
   116 F.4th 1122 (10th Cir. 2024) .................................................................................. 4

*Raffile v. Exec. Aircraft Maint.*,
   2012 WL 4361409 (D. Ariz. Sept. 25, 2012) .............................................................. 4

*Sandy v. Colorado*,
   2023 WL 9284564 (Mar. 27, 2023) ........................................................................... 10

*Scherer v. Mission Bank*,
   34 F. App'x 656 (10th Cir. 2002) ....................................................................... 3, 4, 8

*Swanson v. Citi*,
 2009 WL 5183801 (N.D. Ill. Dec. 22, 2009) ............................................................... 9

*Swanson v. Citibank, N.A.*,
 614 F.3d 400 (7th Cir. 2010) ................................................................................. 8-9

*Washington v. Wells Fargo Bank N.A.*,
 2023 WL 415483 (M.D.N.C. Jan. 25, 2023) .............................................................. 8

*Zhu v. Countrywide Realty Co.*,
 165 F. Supp. 2d 1181 (D. Kan. 2001) ....................................................................... 3

**Statutes & Regulations**

42 U.S.C. § 3605 ............................................................................................................. 7

12 C.F.R. § 1026.42 ........................................................................................................ 1

24 C.F.R. § 100.7 ............................................................................................................ 6

24 C.F.R. § 100.135 ............................................................................................... 1, 2, 3, 5

81 Fed. Reg. 63054 (Sept. 14, 2016) ............................................................................... 5

**Other Authorities**

APPRAISAL FOUND., A GUIDE TO UNDERSTANDING A RES. APPRAISAL 6 (Sept. 23, 2020
 ed.), *https://appraisalfoundation.sharefile.com/share/view/sb32f60230f14a329* ........ 5–6

Case No. 1:24-cv-02915-GPG-TPO   Document 60   filed 02/06/25   USDC Colorado
pg 4 of 16

The government's opposition ("Opp.," ECF No. 50) provides no legitimate basis to allow this misdirected and misguided lawsuit to proceed against Rocket Mortgage. The government makes no effort (none) to defend the conclusory allegation upon which its claims against Rocket Mortgage are predicated—that Rocket Mortgage had "the authority to correct" the challenged appraisal of an independent, third-party appraiser (defendant Mykhailyna). Compl. ¶ 149. The government's opposition tellingly ignores its own predicate allegation and Rocket Mortgage's dismissal arguments based upon it. The reason is obvious: the government has no response because it recognizes that Rocket Mortgage did *not* have the alleged authority as a matter of law. *See* ECF No. 28 ("Mot.") at 8 (demonstrating that lenders are not allowed to interfere in the "independent judgment" of an appraiser, either "direct[ly] or indirect[ly]"; citing 12 C.F.R. § 1026.42(c)(1)). And because Rocket Mortgage had no such authority, its motion to dismiss should be granted.

Attempting to evade this result, the government's main opposition strategy is to introduce a new legal claim unpled in the complaint. That new claim accuses Rocket Mortgage of violating a regulation, 24 C.F.R. § 100.135(d)(1), construing the FHA to make it unlawful to "[u]s[e] an appraisal . . . where the [lender] knows or reasonably should know that the appraisal" is discriminatory. Opp. at 2. The government is quick to declare that "Rocket does not cite . . . the regulation" in its Motion (*id.*), but omits mentioning that is because its own complaint never cited the regulation or claimed any violation of it. It is black-letter law that the government cannot evade dismissal by reference to claims and allegations nowhere pled in the complaint. *See infra* at 4.

Even apart from this, the government's new, unpled claim cannot save this lawsuit. For one thing, the government concedes the appraisal was only "***likely discriminatory***." Opp. at 2 (emphasis added). But the government's own position is that Rocket Mortgage

-1-

is only liable if it "knew or should have known" the appraisal *was*, *in fact*, discriminatory. Opp. at 7. Calling discrimination merely "likely" is not enough. The government cannot assert that Rocket Mortgage knew the appraisal was discriminatory at the time when the government does not claim such knowledge even now, with the benefit of a full investigation, and only claims discrimination was "likely." Second, the regulation does not relieve the government of the burden of pleading the basic elements of an FHA claim, including discriminatory intent. The complaint pleads no such facts (*see* Mot. at 9–13), and instead of pointing to any, the government's opposition brief argues that it shouldn't have to do so. That is wrong. The meritless claims against Rocket Mortgage should be dismissed.

## ARGUMENT

### I. The government admits it cannot allege discriminatory intent on Rocket Mortgage's part and is wrong to argue that it does not have to do so.

Both of the government's claims require plausible, factual allegations that Rocket Mortgage was "motivated by an intent to discriminate." *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2022 WL 2452379, at *8 (10th Cir. July 6, 2022); *see* Mot. at 9–10, 13. But nowhere in its opposition does the government identify a single allegation that Rocket Mortgage was so motivated (and it was not). To the contrary, it concedes that it cannot plead as much—and argues that it shouldn't have to:

> Contrary to Rocket's contention, it cannot escape liability merely because another party was the one who initially acted with discriminatory intent. It is well established, in the Tenth Circuit and elsewhere, that a defendant can also be liable when, through its deliberate action or inaction, it effectuates or enables the discriminatory acts or designs of others.

Opp. at 9 (citation omitted). It then attempts to salvage its FHA claims by accusing Rocket Mortgage of "enabl[ing]" appraiser Mykhailyna's alleged discrimination by "rel[ying] on an appraisal it knows is *likely* based on racial discrimination." Opp. at 7 (emphasis added). According to the government, this violates 24 C.F.R. § 100.135(d)(1), which bars "[u]sing

-2-

an appraisal . . . where the [lender] knows or reasonably should know that the appraisal improperly takes into consideration race." *See id*.

The government's careful wording in making these arguments is revealing. It seeks to hold Rocket Mortgage liable for "the discriminatory acts or designs ***of others***"—confirming it cannot plead discriminatory intent on Rocket Mortgage's part. Opp. at 9 (emphasis added). It seeks to hold Rocket Mortgage responsible for the alleged acts or intent of an independent, third-party appraiser because it supposedly "knew or should have known" that ***his*** appraisal was discriminatory. *Id*. at 7. But the government concedes the appraisal was only "***likely*** based on racial discrimination." *Id*. In other words, the government invites this Court to conclude that it has plausibly alleged that Rocket Mortgage knew or should have known the appraisal was discriminatory, while simultaneously asserting that the same allegations only support an inference that discrimination was "likely."

The government is wrong that it can proceed against Rocket Mortgage without alleging discriminatory intent except on the part "of others." Opp. at 9. Discriminatory intent is an element of the claim, and must be pled "either directly . . . or indirectly." *Zhu v. Countrywide Realty Co.*, 165 F. Supp. 2d 1181, 1195 (D. Kan. 2001). The former requires facts furnishing "direct evidence . . . that [the defendant] was motivated, even in part, by plaintiff's race." *Id*. at 1198; *see also*, *e.g.*, *Carrillo v. Hickenlooper*, 2013 U.S. Dist. LEXIS 187616, at *61 (D. Colo. Mar. 11, 2013). That is absent here. The latter involves the four-part test stated in *Scherer v. Mission Bank*, 34 F. App'x 656, 658 (10th Cir. 2002), querying whether the plaintiff "met all relevant qualifications for the loan," the "defendant refused to transact business with h[er] despite h[er] qualifications," and the "defendant continued to do business with other parties with the same qualifications." The government does not allege these elements (*see* Mot. at 10–12), and instead argues that it does not have to,

-3-

because "that is not the only set of circumstances where a plaintiff can set forth a plausible claim of discrimination." Opp. at 10 (citing *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1141 (10th Cir. 2024)). Even if true, that it is irrelevant. While indirect evidence is not the only way a plaintiff can plead a plausible discrimination claim, that is what the government must rely on here because it does not allege any direct evidence. *Scherer* sets forth the legal standard for doing so under the FHA. *McNellis*, the case the government cites for the proposition that *Scherer* does not apply, is *not* an FHA case, as the government admits. *See* Opp. at 10 (". . . in the employment discrimination context . . .").

## II. HUD's regulation does not relieve the government of the obligation to plead discriminatory intent, and the government pleads no violation of it, anyway.

The government's unpled Section 100.135(d) claim—asserted for the first time in the opposition—does not relieve it of its burden to plead discriminatory intent by Rocket Mortgage. As an initial matter, the complaint nowhere referenced this regulation or claimed any violation of it, so the government cannot rely on it now. *See Raffile v. Exec. Aircraft Maint.*, 2012 WL 4361409, at *5 (D. Ariz. Sept. 25, 2012) ("The [] complaint does not allege that [defendant] violated FAA regulations, and the Court will not consider arguments raised for the first time in Plaintiff's response brief as part of the complaint for purposes of [a] motion to dismiss."); *Boyer v. Bd. of Cnty. Comm'rs of Cnty. of Johnson Cnty.*, 922 F. Supp. 476, 482 (D. Kan. 1996) ("It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time.").

As *another* threshold matter, the plain language of the FHA provisions the government sues under require the plaintiff to plead discriminatory intent. Any regulation purporting to relax this requirement is invalid and entitled to no deference. HUD grounded its authority to promulgate the regulation on "*Chevron* deference," which no longer exists.

-4-

*Quid Pro Quo and Hostile Env't Harassment and Liab. for Discrim. Hous. Prac. Under the Fair Hous. Act*, 81 Fed. Reg. 63054, 63073 (Sept. 14, 2016); *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("best reading" of a statute is "'the reading the court would have reached' if no agency were involved"). HUD also opined that the regulation "imposes no new legal obligations or duties of care," *id*., which is inconsistent with the outcome the government urges of obviating its need to plead discriminatory intent.

Even if the regulation had been properly raised, the government has not pled that Rocket Mortgage "[u]s[ed] an appraisal" it knew or "should [have] know[n] . . . takes into consideration race." 24 C.F.R. § 100.135(d)(1). As noted, the most the government is willing to say is that the appraisal was "***likely*** discriminatory." Opp. at 2 (emphasis added). It is, to say the least, incongruous for the government to argue that *Rocket Mortgage* should have *known* the appraisal was discriminatory, when the government itself—even now, with the benefit of its deep investigation into this matter—is only willing to say it was "likely" discriminatory based the same information it seeks to impute Rocket Mortgage.

Further, the government has alleged nothing that would justify imputing knowledge of discrimination to Rocket Mortgage. It alleges merely that Cheroutes told Rocket Mortgage the appraiser "knew that [Cheroutes and her family] were Black" and that his "facial expressions indicated to Ms. Cheroutes that he was not interested in the information [she] provided" about "improvements she had made to the property." Compl. ¶¶ 64–65. The notion that Rocket Mortgage should have construed the appraiser's "ignor[ing]" Cheroutes's account of property improvements (Opp. at 3) as evidence of discrimination is implausible. Loan applicants *often* try to influence appraisers by talking up home improvements, and the professional standards applicable to appraisers "train[] [appraisers] to deflect any attempt to influence the appraisal or value opinion." APPRAISAL FOUND., A

-5-

Guide to Understanding a Res. Appraisal 6 (Sept. 23, 2020 ed.), https://appraisal-foundation.sharefile.com/share/view/sb32f60230f14a329. So Cheroutes did not report anything to Rocket Mortgage it "should have known" was discriminatory—only that the appraiser deflected what he was "trained to deflect." *Id*.

The government claims its arguments based on the regulation are supported by case law. Opp. at 7. But the cases the government cites do not advance its arguments or its reading of the regulation. None of them even cite it. Indeed, Rocket Mortgage's research reveals exactly zero citing references to Section 100.135(d) across the entire body of federal and state case law. The government's theories are thus literally unprecedented.

The first case the government cites, *Connolly v. Lanham*, 685 F. Supp. 3d 312 (D. Md. 2023), relies on a *different* regulation, which provides:

> Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct **and had the power to correct it**. The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.

24 C.F.R. § 100.7(a)(1)(iii) (emphasis added); *Connolly*, 685 F. Supp. 3d at 325. But as already shown and the government does not dispute, the requisite "power . . . to correct" is exactly what is lacking here. *Id*.; Mot. at 7–9. Under the terms of the regulation, that power "depends upon the extent of the [lender]'s control" of the third party. Rocket Mortgage had *no* control over the independent third-party, and indeed another one of the cases the government relies on explicitly found the lender *not liable* for the alleged discrimination of the independent appraiser on exactly that basis:

> Interbay contracted with Lagreca & Quinn to provide an "***independent appraisal***" report. . . . Although the agreement placed certain requirements on the appraisal, **Interbay was not in control of the process**. . . . The court concludes that Lagreca & Quinn was acting as an independent contractor because ***its conduct was not***

-6-

> ***controlled by Interbay. Because there is no agency relationship, Interbay is not liable for any alleged discrimination by Lagreca & Quinn***.

*Brown v. Interbay Funding, LLC*, 2004 WL 2579596 at *3 (D. De. Nov. 8, 2004) (emphases added). The same attends here. Indeed, the entire point of the appraiser-independence regulations was to ensure lenders had no such control. *See* Mot. at 8.

Recognizing this, the government's opposition backpedals from its original theory that Rocket Mortgage "had the authority to correct" the appraisal (Compl. ¶ 149) and relies instead on claims that there are a series of *other* things Rocket Mortgage should have done, like "order[ing] a second appraisal from a different appraiser," "ask[ing] Solidifi to correct" the appraisal, or asking Mykhailyna to "[c]onsider . . . additional comparable properties." Opp. at 5, 9, 11–12. Fatal to this argument is that none of these things amount to any "authority" of Rocket Mortgage "to correct" an appraisal—the predicate allegations for the government's claims here. They all describe requests that Rocket Mortgage allegedly could have made to independent third parties, but there are no allegations that Rocket Mortgage controlled any of these third parties or that any such requests would have resulted in the desired "correction." Nor would such allegations be plausible given that the outcome of any such requests would have depended on the unilateral and discretionary acts of the independent third parties receiving them.

Also fatal to the government's argument is it conspicuously does not (and cannot) allege that Rocket Mortgage refrained from doing anything "because of race," as the statute requires. 42 U.S.C. § 3605(a). Moreover, the government ignores its own concession that Rocket Mortgage actually *did* offer to do those things, and Cheroutes is the one who declined to pursue them. *See* Mot. at 5; Compl. ¶ 125.

The government's remaining case citations also fail to support its arguments.

-7-

*Brown* is not the only one that actually cuts against its position. *Washington v. Wells Fargo Bank N.A.*, 2023 WL 415483 (M.D.N.C. Jan. 25, 2023), *dismissed* the plaintiffs' claims under the Equal Credit Opportunity Act under the same legal standard as *Scherer*.[1] Just like here, "the plaintiffs sought to refinance their mortgage," complained that "[t]he appraisal team was curt, abrupt, and dismissive," and called the appraisal "discriminatory and flawed" because it was "less than Wells Fargo's previous estimate" even though "property values in the area had increased." *Id*. at *1. Because of the appraisal, Wells Fargo "require[d] that the plaintiffs pay for mortgage insurance, and it later refused to reconsider or get another appraisal." *Id*. The Court dismissed the claim because proceeding with the loan (with the corresponding insurance requirement) did not amount to "reject[ing] their refinancing application." *Id*. at *2. That is comparable to what is alleged here. The government alleges that Rocket Mortgage gave Cheroutes the option to "proceed with the refinancing"—including by challenging the appraisal with different sales comparables—and only canceled the application when Cheroutes declined. Compl. ¶¶ 7, 125.

In the other cases cited by the government, the defendant's liability was grounded on allegations against *that defendant*—not a mere claim that they are liable for a third party's alleged discrimination only because they purportedly "should have known" about it. In *Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810, at *15 (E.D.N.Y. Aug. 22, 2007), the plaintiffs had "specific allegations of intentional targeting" by race—in other words, the direct evidence of intentional discrimination the government fails to allege here. In *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010), the Seventh Circuit reversed the

---

[1] *See id*. at *2 ("To state a claim, the plaintiffs must allege that they are members of a protected class, they applied for and qualified for an extension of credit, the creditor rejected their application despite their qualifications, and the creditor continued to extend credit to others of similar credit stature outside of the protected class.").

-8-

dismissal of the plaintiffs' FHA claims against a lender where its loan officer raised "the question of race" when "input[ting] Plaintiffs' required information" and brought up his "mixed race" family. *Swanson v. Citi*, 2009 WL 5183801, at *1 (N.D. Ill. Dec. 22, 2009).[2]

Meanwhile, the government fails to distinguish the directly on-point *Hood v. Midwest Sav. Bank*, 95 F. App'x 768 (6th Cir. 2004). *See* Mot. at 11–12. There, the plaintiff asserted FHA claims based on a now-defunct regulation, similar to Section 100.135(d), "prohibit[ing] lenders from using or relying on an appraisal of a dwelling which they know, or reasonably should know, is discriminatory." 95 F. App'x at 777 (citing 12 C.F.R. § 528.2(a) (removed)). The offending conduct was the appraiser's "report[] that she could not complete the appraisal" because "there [we]re no comparable sales in the neighborhood," which resulted in the lender denying the plaintiff's loan application. *Id*. The plaintiff called this discriminatory, claiming—like Cheroutes—that the "appraisal report, or rather the lack thereof, [] was based in part on the racial composition of the neighborhood." *Id*. The Sixth Circuit found no evidence the lender's actions were "based on [the plaintiff's] race," because lacking a usable appraisal was "a problem that could arise regardless of the race of the applicant." *Id*. And there was no circumstantial evidence of discrimination because the plaintiff failed to meet his burden on the fourth prong of the four-pronged test—showing that other applicants in the same situation were approved. *Id*. at 779.

The government's effort to distinguish *Hood* is limited to protesting that "the court concluded that the lender could not have relied on a discriminatory appraisal because the

---

[2] *Swanson* also lacks persuasive value because the majority thought that "all [the plaintiff] needed to put in the complaint" was "the type of discrimination that she thinks occur[red]," "by whom," and "when," without supporting facts—contrary to current pleading standards. 614 F.3d at 405. As Judge Posner pointed out in dissent, the decision rests on language "suggest[ing] that discrimination cases are outside the scope of *Iqbal*," *id*. at 407, a proposition which, thousands of citing references to *Iqbal* later, no Court today would endorse.

appraiser, for non-discriminatory reasons, never completed the appraisal." Opp. at 11. That does not distinguish the case. For one thing, the plaintiff did not allege that the appraiser's reasons were "non-discriminatory"—he alleged otherwise, just like Cheroutes. *Hood*, *supra*. And the distinction between relying on an appraisal and relying on "the lack thereof" is a distinction without a difference, as the Court's own language implies. *Id*. Both here and there, the challenged conduct was the denial of the loan application because there was no appraisal sufficient to support the loan. But that could happen "regardless of the race of the applicant" and does not justify an inference of discriminatory intent. *Id*.

Referencing inapposite employment cases, the government asserts that Rocket Mortgage can be liable for "effectuat[ing] or enabl[ing]" discrimination even though "another party was the one who initially acted with discriminatory intent." Opp. at 9. That is legally wrong. "[P]ersonal participation is a necessary element of individual liability under the FHA, and courts routinely find that a plaintiff fails to state an FHA claim where, as here, the plaintiff has not tied any of the alleged wrongful conduct to a named defendant." *McDaniel v. Dominium Mgmt. Servs., LLC*, 2022 WL 1316384, at *6 (D. Colo. May 3, 2022), *report and recommendation adopted*, 2022 WL 20440201, at *1 (D. Colo. June 15, 2022) (defendant's "personal participation in the alleged unlawful conduct" is "required to state an FHA claim"). Rocket Mortgage cannot be held liable for discrimination by others that it had no authority to correct.[3] The Court should therefore grant its motion to dismiss.

---

[3] All the above applies equally to the Section 3617 "retaliation" claim. Here, the government goes so far as to deny the statute has an intent element at all, contending that "the unreported decision in *Hatfield*" is the only support for this. Opp. at 15 n.4. But the intent requirement is apparent from the plain language of the statute and is routinely recognized in this District's cases. *E.g.*, *Sandy v. Colorado*, 2023 WL 9284564, at *9 (Mar. 27, 2023), *aff'd*, 2024 WL 4677415 (10th Cir. Nov. 5, 2024); *Barwick v. Broadway Lofts, LLC*, 2022 WL 4295336, at *5 (D. Colo. May 23, 2022); *Carrillo*, *supra*.

-10-

Respectfully submitted this 6th day of February, 2025, by Defendant Rocket Mortgage, LLC, through its attorneys,

Jacob Hollars
SPENCER FANE LLP
1700 Lincoln St., Ste. 2000
Denver, Colo. 80203
(303) 839-3707
JHollars@spencerfane.com

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH
344 N. Old Woodward Ave., Ste. 200
Birmingham, Mich. 48009
(248) 864-4000
jmorganroth@morganrothlaw.com

/s/ *Brooks R. Brown*
Brooks R. Brown
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, Mass. 02210
(617) 570-1000
bbrown@goodwinlaw.com

Keith Levenberg
Angelica Rankins
GOODWIN PROCTER LLP
1900 N. St., N.W.
Washington, D.C. 20036
(202) 346-4000
klevenberg@goodwinlaw.com
arankins@goodwinlaw.com

-11-

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 6th day of February, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                              /s/ *Brooks R. Brown*
                                              Brooks R. Brown