IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA,

    Plaintiff,

and

FRANCESCA CHEROUTES,

    Intervening Plaintiff,

v.

ROCKET MORTGAGE, LLC;
SOLIDIFI U.S. INC.;
MAKSYM MYKHAILYNA; and
MAVERICK APPRAISAL GROUP INC.,

    Defendants.

## INTERVENOR'S COMPLAINT

Francesca Cheroutes, as Intervening Plaintiff, by and through her counsel, Mari Newman, Andy McNulty, and Madeline Leibin of NEWMAN | MCNULTY, LLC, states as follows for her Intervenor's Complaint:[1]

### INTRODUCTION

1. Ms. Cheroutes is a Black woman who wants and deserves to enjoy the American dream of home ownership and all of its rewards, free from discrimination. In 2021, Ms. Cheroutes sought to refinance her home in order to capitalize on remarkably low interest rates

---

[1] The United States details the race discrimination and retaliation to which Ms. Cheroutes was subjected in its Complaint, [ECF #1], the entirety of which Intervening Plaintiff incorporates by reference.

1

and the rising value of her property, located in the heart of an excellent, established central Denver neighborhood. But instead of providing Ms. Cheroutes the same opportunity to contract as White property owners, Defendants, Rocket Mortgage, LLC ("Rocket"), Solidifi U.S. Inc. (Solidifi"), Maksym Mykhailyna ("Mykhailyna"), and Maverick Appraisal Group Inc. ("Maverick") discriminated against Ms. Cheroutes in the appraisal of her property by significantly undervaluing her home, simply because she is Black. When Ms. Cheroutes expressed her opposition to the discriminatory appraisal, Defendant Rocket denied her right to a engage in a real estate transaction free from discrimination, and retaliated against her by cancelling her refinance application.

2. Ms. Cheroutes files this Intervenor's Complaint to vindicate her rights; secure a remedy for the significant financial losses and emotional distress inflicted upon her by Defendants; punish Defendants for their illegal conduct; and send a message to deter others from this sort of discriminatory and retaliatory conduct.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1331, 1343(a), 1345, 3612(o), 3613, and 1981. Jurisdiction for an award of attorneys fees exists pursuant to 42 U.S.C. §§ 3612(p) and 1988.

4. Intervening Plaintiff satisfies the standard for intervention under Federal Rule of Civil Procedure 24.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to these claims occurred in the District of Colorado.

## PARTIES AND SUBJECT PROPERTY

6.  The United States detailed the Parties and Subject Property at issue in this case in its Complaint, the entirety of which is incorporated herein by reference. [ECF #1].

7.  Intervening Plaintiff Francesca Cheroutes is a citizen of the United States of America and a resident of, and domiciled in, the State of Colorado. She is the owner of the Subject Property and resides in one of the two units of the Subject Property. She is an "[a]ggrieved person" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), and a person subject to the legal protections of 42 U.S.C. §§ 1981.

## ALLEGATIONS REGARDING DEFENDANTS' DISCRIMINATION AND RETALIATION AGAINST MS. CHEROUTES

8.  The United States detailed the allegations regarding Defendants' discrimination and retaliation against Ms. Cheroutes in its Complaint, which is incorporated herein by reference in its entirety.

9.  Defendants Mykhailyna and Maverick contract with Solidifi to perform appraisals. Defendants Mykhailyna and Maverick are contractually and legally required to submit accurate information in their appraisals and to comply with appraisal standards set by Solidifi and Rocket. Defendant Rocket is a third-party beneficiary with the authority to enforce the terms of that contract directly with Defendant Mykhailyna and Maverick.

10. Each Defendant had, and breached, his/its independent duty to act in accordance with federal law prohibiting discrimination in a real estate transaction, discrimination in the making and enforcement of contracts, and retaliation for a person's good faith objection to discrimination.

11. Each Defendant intentionally discriminated against Ms. Cheroutes in a real estate transaction and in the making and enforcing of contracts by discriminatorily undervaluing Ms.

3

Cheroutes' property, generating and offering her less favorable loan estimate terms, and cancelling her loan application, because she is Black.

12. In addition, Defendant Rocket intentionally and retaliatorily generated and offered Ms. Cheroutes less favorable loan estimate terms and cancelled her loan application because she spoke out about her concerns that Defendants Mykhailyna, Maverick, and Solidifi had undervalued her home because she is Black.

13. By intentionally discriminatorily undervaluing her home, generating and offering a loan estimate with less favorable terms, and cancelling her loan application, Defendants intentionally disallowed Ms. Cheroutes the same opportunity as is enjoyed by white citizens to make and enforce contracts.

14. Defendant Mykhailyna, independently and as an agent for Defendant Maverick Appraisal Group, Inc., Solidifi U.S. Inc, and Rocket Mortgage, LLC, intentionally issued an artificially low appraisal of Ms. Cheroutes' property because she is Black. That discriminatory appraisal included material misstatements, errors and omissions regarding Ms. Cheroutes' property and relied on so-called "comparable" properties in less valuable neighborhoods and school districts.

15. Ms. Cheroutes directly contacted Rocket and reported the discriminatory appraisal of her property, putting Defendant Rocket on notice of her good faith belief that she had been subjected to race discrimination in the valuation of her property in violation of her rights to engage in a real estate transaction and to contract free from discrimination.

16. Defendant Rocket is and was aware that federal law, including but not limited to law regarding appraisal independence, does not prohibit requests for confirmation and/or

4

corrections to an appraisal, the use of a second appraisal, and/or the reliance on additional comparable properties.

17. Defendant Rocket is and was aware of its legal obligation not to rely upon a discriminatory appraisal, or to retaliate against a person for expressing a good faith belief that they had received a discriminatory appraisal.

18. Even after it was specifically made aware that Defendants Mykhailyna, Maverick, and Solidifi had engaged in discrimination by undervaluing Ms. Cheroutes' property because she is Black, Defendant Rocket refused to confirm and/or correct the appraisal, use a second appraisal, and/or rely on additional comparable properties, or otherwise utilize a non-discriminatory appraisal to process Ms. Cheroutes' loan.

19. Instead, in response to Ms. Cheroutes' good faith report of discrimination, Defendant Rocket intentionally retaliated against Ms. Cheroutes for her protected opposition to discrimination in a real estate related transaction and in her right to contract in the same manner as white persons by cancelling her loan application.

**ALLEGATIONS REGARDING THE PARTICULAR INJURIES SUFFERED BY MS. CHEROUTES AND THE NEED FOR PUNITIVE/EXEMPLARY DAMAGES**

20. In addition to the financial and emotional harm Ms. Cheroutes suffered from Defendants' discrimination and retaliation as detailed in the United States' Complaint, Intervening Plaintiff adds the following facts regarding her severe emotional distress:

21. Defendants subjected Ms. Cheroutes to deep humiliation and emotional distress when two White men came onto her property, unannounced, assumed her White tenants were the homeowners, treated her with palpable disdain, and utterly dismissed her statements regarding the improvements that she had made to increase the value of her home. All this occurred in front of Ms. Cheroutes' daughter, and while her son was in the process of buying a home. Ms.

Cheroutes continues to fear not only that she will continue to be subjected to the same racist discrimination, but also for the racist discrimination her loved ones may face in their efforts to secure shelter.

      22.      Ms. Cheroutes' emotional distress did not end after Defendant Mykhailyna and his colleague left her home, nor after she received the discriminatorily low valuation. Defendant Rocket continued to inflict emotional distress on Ms. Cheroutes, retaliating against her by generating and offering her less favorable loan estimate terms and cancelling her loan application because she reported discrimination by Defendants Mykhialyna, Maverick, and Solidifi.

      23.      Defendant Rocket's agents knew Ms. Cheroutes was reporting discrimination and disallowance of her rights to make and/or enforce contracts and to engage in a real estate transaction because she is Black.

      24.      Defendant Rocket had the authority and/or obligation to confirm and/or correct the appraisal, use a second appraisal, and/or rely on additional comparable properties in order to rely on a non-discriminatory appraisal, but refused to do so. Indeed, Rocket was legally required to utilize a non-discriminatory appraisal, but refused to do so.

      25.      Defendant Rocket did not offer Ms. Cheroutes any consolation or solution. Defendant did not confirm and/or correct the appraisal, use a second appraisal, and/or rely on additional comparable properties. Its only response was to task Ms. Cheroutes with an appraiser's work by providing her own sales comps for the appraisal, with those suggested sales comps *to be evaluated by Defendant Mykhailyna*, the person who discriminatorily dismissed her, treated her with palpable disdain, and undervalued her home in the first instance. Defendant Rocket's numerous dismissals and gaslighting directive to revictimize herself caused additional and significant emotional distress.

6

26. Defendants' discriminatory and retaliatory conduct has caused Ms. Cheroutes to experience severe and persistent emotional distress, including but not limited to deep sadness, anger, outrage, discomfort, fear, anxiety, humiliation, embarrassment, a sense of powerlessness, loss of sense of security, loss of dignity, a feeling of inferiority, loss of sleep, and loss of self-worth.

27. Unfortunately, Defendants' treatment of Ms. Cheroutes is not an isolated incident, but, rather, part of a widespread pattern of racial bias in home appraisals. The scourge of racism in appraisals is well documented in both Colorado, and across the country. *See, e.g.,* Troy McMullen, *For Black Homeowners, A Common Conundrum With Appraisals,* WASH. POST (January 20, 2021 8:00 AM ET), https://www.washingtonpost.com/realestate/for-black-homeowners-a-common-conundrum-with-appraisals/2021/01/20/80fbfb50-543c-11eb-a817-e5e7f8a406d6_story.html (detailing data and examples, including discriminatory appraisal of a home belonging to a mixed-race couple in a Denver neighborhood near that of Ms. Cheroutes, in which the appraiser likewise overlooked nearby comparable properties in "white" areas and instead relied on lower-valued properties in "Black" areas); Debra Kamin, *Widespread Racial Bias Found in Home Appraisals* (November 2, 2022), https://www.nytimes.com/2022/11/02/realestate/racial-bias-home-appraisals.html (reporting persistent practice that gives higher values to homes when the occupants are white, and devalues them when the owners are people of color; Debra Kamin, *Black Homeowners Face Discrimination in Appraisals* (Published Aug. 25, 2020, Updated Jan. 26, 2023), https://www.nytimes.com/2020/08/25/realestate/blacks-minorities-appraisals-discrimination.html ("Even in mixed-race and predominantly white neighborhoods, Black homeowners say, their homes are consistently appraised for less than those of their neighbors, stymying their path

7

toward building equity and further perpetuating income equality in the United States."); Debra Kamin, *Justice Dept. Sues Rocket Mortgage for Appraisal Discrimination* (Nov. 1, 2024), https://www.nytimes.com/2024/11/01/realestate/home-appraisal-discrimination-rocket-mortgage.html.

28. National Public Radio describes "years of homeowner horror stories and a growing body of research has cast a harsh light on how frequently racial bias can skew home appraisals," including the story of a Black homeowner who, like Ms. Cheroutes, received a stunningly low appraisal, but then received an appraisal about one-third higher when a white family posed as the homeowners. Jennifer Ludden, *Racial bias often creeps into home appraisals,* NPR (March 13, 2023 5:01 AM ET), https://www.npr.org/2023/03/13/1161713496/home-appraisals-racial-bias-black-latino-homeowners-lawsuit; *see also* Brakeyshia Samms, *Racial Discrimination in Home Appraisals Is a Problem That's Now Getting Federal Attention*, INSTIT. ON TAX'N AND ECON. POL'Y, https://itep.org/racial-discrimination-in-home-appraisals-is-a-problem-thats-now-getting-federal-attention/ ("Throughout the pandemic home values have skyrocketed, but Black homeowners are less likely to benefit from this trend and in some cases have seen their home values stagnate relative to the broader real estate market. The reasons for this are multifaceted, but racial bias in home appraisals is a key contributor.").

29. An award of punitive, or "exemplary" damages is necessary to both punish the Defendants in this case, and to serve as an example to others in the appraisal, management, refinancing, and real estate industries, in order to deter them from similar illegal conduct. An award of exemplary damages could help to arrest the pattern of racial bias in home appraisals.

## CAUSE OF ACTION

### FIRST CLAIM FOR RELIEF
### Violations of the Fair Housing Act
### 42 U.S.C. §§ 3601–3619

30. The United States pled violations of the Fair Housing Act. [ECF #1]. Intervening Plaintiff incorporates the entirety of that pleading by reference.

31. In addition, Intervening Plaintiff re-alleges and incorporates by reference the allegations in this Proposed Intervening Complaint, as if fully set forth herein.

32. Ms. Cheroutes is a Black woman within the jurisdiction of the United States, subject to the legal protections of 42 U.S.C. §§ 3605 and 3617.

33. Ms. Cheroutes sought to exercise and/or enjoy rights guaranteed to her by the Fair Housing Act. Specifically, she sought to refinance her real property, a home located at 749-751 Ash Street, Denver Colorado, by having her home appraised, a refinanced mortgage loan estimated, and, ultimately, a refinanced mortgage loan extended.

34. Those opportunities remained available for similarly situated white homeowners.

35. Intentional discrimination and/or discrimination motivated Defendants' undervaluation of Ms. Cheroutes' home, generation and offer of a loan estimate with less favorable terms, and/or cancellation of her loan application.

36. These acts constituted coercion, intimidation, threat to, or interference on account of Ms. Cheroutes having sought to exercise and /or enjoy her rights as guaranteed to her by the Fair Housing Act.

37. Defendant Rocket retaliated against Ms. Cheroutes because she spoke out about Defendants Mykhailyna's, Maverick's, and Solidifi's undervaluation of her home because she is Black.

38. Each Defendant's conduct was intentional, malicious, and in reckless disregard of Ms. Cheroutes' federally protected rights.

39. Defendants' conduct caused Ms. Cheroutes to suffer financial loss.

40. Defendants' conduct caused Ms. Cheroutes to suffer severe and persistent emotional distress, including but not limited to deep sadness, anger, outrage, discomfort, fear, anxiety, humiliation, embarrassment, a sense of powerlessness, loss of sense of security, loss of dignity, a feeling of inferiority, loss of sleep, and loss of self-worth.

**SECOND CLAIM FOR RELIEF**
**Discrimination in Contracting**
**42 U.S.C. § 1981**

41. The United States detailed the discrimination and retaliation at issue in this case in its Complaint. [ECF #1]. Intervening Plaintiff incorporates the entirety of that pleading by reference.

42. In addition, Intervening Plaintiff re-alleges and incorporates by reference the allegations in this Proposed Intervening Complaint, as if fully set forth herein.

43. Ms. Cheroutes is a Black woman within the jurisdiction of the United States, subject to the legal protections of 42 U.S.C. § 1981.

44. Ms. Cheroutes applied and was qualified to make and/or enforce contracts regarding her real property, a home located at 749-751 Ash Street, Denver Colorado.

45. Ms. Cheroutes sought to make and/or enforce contracts regarding her real property, a home located at 749-751 Ash Street, Denver Colorado, including but not limited to contracts for an appraisal of her property, an estimate of a refinanced mortgage loan, and, ultimately, a refinanced mortgage loan.

46. Non-discriminatory appraisals of property, estimates of refinanced mortgage loans, and refinanced mortgage loans are each a part of the benefits, privileges, terms, and conditions of the contractual relationships between Ms. Cheroutes and Defendants.

47. Non-retaliatory appraisals of property, estimates of refinanced mortgage loans, and refinanced mortgage loans were part of the benefits, privileges, terms, and conditions of the contractual relationships between Ms. Cheroutes and Defendants.

48. By their conduct, Defendants denied Ms. Cheroutes, a Black woman, the same right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

49. Additionally, Defendant Rocket retaliated against Ms. Cheroutes for her legally protected objection to discrimination in the appraisal of her home by cancelling her loan application, thus denying the same legally protected right to contract as enjoyed by white citizens and citizens who do not engage in legally protected opposition to discrimination.

50. Defendants' conduct was intentional, willful, and taken in reckless disregard of Ms. Cheroutes' federally protected rights.

51. Defendants' conduct caused Ms. Cheroutes to suffer financial loss.

52. Defendants' conduct caused Ms. Cheroutes to suffer severe and persistent emotional distress, including but not limited to deep sadness, anger, outrage, discomfort, fear, anxiety, humiliation, embarrassment, a sense of powerlessness, loss of sense of security, loss of dignity, a feeling of inferiority, loss of sleep, and loss of self-worth.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award all relief as allowed by law and equity, including, but not limited to the following:

a. All of the relief requested by the United States, ECF #1;

b. Declaration that all Defendants have violated the provisions of applicable federal law;

c. Compensatory damages based on Ms. Cheroutes' significant emotional distress as pled in the Intervenor's Complaint, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, loss of enjoyment of life, sadness, anger, outrage, discomfort, fear, anxiety, humiliation, embarrassment, a sense of powerlessness, loss of sense of security, loss of dignity, a feeling of inferiority, loss of sleep, and loss of self-worth, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

   i. Issuance of a formal written apology from each Defendant to Plaintiff;

   ii. Issuance of a formal commitment to end the pattern of racial bias in home appraisals;

   iii. The imposition of policy changes for each Defendant designed to avoid future similar misconduct; and

   iv. The imposition of mandatory training for each Defendant and each Defendants' agents, designed to avoid future similar misconduct;

    f.   Intervening Plaintiff's Attorney's fees and costs, including but not limited to those as permitted under 42 U.S.C. §§ 3612(p) and 1988;

    g.   Pre- and post-judgement interest at the highest lawful rate;

    h.   Such further relief as justice requires.

## JURY DEMAND

Intervening Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 4th day of March, 2025.

NEWMAN | MCNULTY, LLC

*s/ Mari Newman*
Mari Newman
Andy McNulty
Madeline Leibin
1490 N. Lafayette Street Suite 304
Denver, CO 80218
(720) 850 - 5770
mari@newman-mcnulty.com
andy@newman-mcnulty.com
madeline@newman-mcnulty.com

ATTORNEYS FOR FRANCESCA CHEROUTES

**CERTIFICATE OF SERVICE**

       I hereby certify that on March 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties who have entered their appearances in this matter.

                                                                                                                                                NEWMAN | MCNULTY, LLC

                                                          *s/ Mari Newman*
                                                          Mari Newman