# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

       *Plaintiff,*

and

FRANCESCA CHEROUTES,

       *Intervening Plaintiff,*

v.

ROCKET MORTGAGE, LLC,
SOLIDIFI U.S. INC.,
MAKSYM MYKHAILYNA, and MAVERICK
APPRAISAL GROUP INC.,

       *Defendants.*

Civil Action No. 1:24-cv-02915-GPG-TPO

---

## DEFENDANT SOLIDIFI U.S. INC.'S MOTION TO DISMISS THE INTERVENOR'S COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTS ALLEGED IN THE COMPLAINT ........................................................................ 2

STANDARD OF REVIEW .............................................................................................. 2

ARGUMENT ................................................................................................................. 3

   I.   Ms. Cheroutes Fails to State a Claim for Relief under the Fair Housing Act .......... 3

      a.   Solidifi is Not Directly Liable under the Fair Housing Act ................................ 3

      b.   Neither is Solidifi Vicariously Liable Under the Fair Housing Act .................... 4

   II.   Ms. Cheroutes Also Fails to State a Claim for Relief Under 42 U.S.C. § 1981 .... 10

      a.   Solidifi is Not Directly Liable under 42 U.S.C. § 1981 ................................... 11

      b.   Neither is Solidifi Vicariously Liable Under 42 U.S.C. § 1981 ....................... 12

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................... 3

*Bixler v. Foster*,
  596 F.3d 751 (10th Cir. 2010)..................................................................... 3

*Chavez v. McDonald's Corp.*,
  No. 19-cv-00164-PAB-SKC, 2020 U.S. Dist. LEXIS 48417 (D. Colo. Mar. 20,
  2020)
  .............................................................................................. 12, 13, 14, 15

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
  589 U.S. 327 (2020)................................................................................... 11

*Cont'l Bus Sys., Inc. v. NLRB*,
  325 F.2d 267 (10th Cir. 1963)................................................................ 7, 8

*Courtney v. Class Transportaion, Inc.*,
  No. 18-cv-02335-RBJ, 2021 U.S. Dist. LEXIS 6347, at *5 (D. Colo. Jan 13,
  2021)....................................................................................................... 8, 9

*Dole v. Snell*,
  875 F.2d 802 (10th Cir. 1989)................................................................ 6, 7

*Galindo v. Taylor*,
  723 F. Supp. 3d 1008, 1025-26 (D. Kan. 2024) ...................................... 11

*Gallinger v. R. Martinez Trucking*,
  No. 2019CV034727, 2020 Colo. Dist. LEXIS 4613 (D. Colo. Dec. 14, 2020) ........... 4

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
  458 U.S. 375 (1982)............................................................................. 11, 12

*Gray v. McDonald's USA, LLC*,
  874 F. Supp. 2d 743 (W.D. Tenn. 2012) ................................................. 12

*Griffith v. City of Des Moines*,
  387 F.3d 733 (8th Cir. 2004)....................................................................... 3

*Gross v. FBL Fin. Servs.*,
  557 U.S. 167 (2009)...................................................................................... 3

*Hampton v. Dillard Dep't Stores, Inc.*,
  247 F.3d 1091 (10th Cir. 2001) ................................................................ 11

*Jerome v. Hertz Corp.*,
  15 F. Supp. 3d 1225 (M.D. Fla. 2014) ...................................................... 12

*Knitter v. Corvias Mil. Living, LLC*,
  758 F.3d 1214 (10th Cir. 2014) ................................................................ 13

*Lambertsen v. Utah Dep't of Corr.*,
  79 F.3d 1024 (10th Cir. 1996) ............................................................... 5, 7

*McCurry v. Kenco Logistics Servs., LLC*,
  942 F.3d 783 (7th Cir. 2019) .................................................................... 12

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ..................................................................................... 3

*Meyer v. Holley*,
  537 U.S. 280 (2003) ............................................................................... 4, 10

*Nationwide Mut. Ins. Co. v. Darden*,
  503 U.S. 318 (1992) ................................................................................. 6, 7

*Perkins v. Reg'l Transp. Dist.*,
  907 P.2d 672 (Colo. App. 1995) ................................................................. 4

*Powell v. City & County of Denver*,
  973 F. Supp. 1198 (D. Colo. 1997) ......................................................... 8, 9

*Reynolds v. Sch. Dist. No. 1*,
  69 F.3d 1523 (10th Cir. 1995) .................................................................. 11

*Sandoval v. City of Boulder*,
  388 F.3d 1312 (10th Cir. 2004) ................................................................ 12

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ...................................................................... 3

*Utah Gospel Mission v. Salt Lake City Corp.*,
  425 F.3d 1249 (10th Cir. 2005) .................................................................. 9

*Vu Phan v. Hipple*,
  735 F. App'x 492 (10th Cir. 2018) ...................................................... 11, 12

**RULES**

Rule 12(b)(6) ...................................................................................................... 3

**STATUTES**

15 U.S.C. § 1639e ................................................................................................ *passim*

42 U.S.C § 1981 ................................................................................................. passim

Colo. Rev. Stat. § 12-10-614 ............................................................... 5, 10, 12

**OTHER AUTHORITIES**

12 C.F.R. § 1026.42(c)(1) ......................................................................... 6, 12

Restatement (Second) of Agency § 220(2) (1958) ......................................... 6

**INTRODUCTION**

In October 2021, Francesca Cheroutes ("Cheroutes") submitted a complaint to the United States Department of Housing and Urban Development alleging that her lender, the appraisal management company, appraisal company, and appraiser collectively subjected her to a discriminatory appraisal. Three years later, the government filed its lawsuit alleging that the defendants violated the Fair Housing Act (the "FHA"), and the court subsequently granted Ms. Cheroutes' Motion to Intervene on March 3, 2025. *See generally* ECF No. 1; ECF No. 69. Ms. Cheroutes now files her own complaint (the "Intervenor Complaint") alleging not only that the defendants violated the Fair Housing Act, but also that they violated her right to contract under 42 U.S.C § 1981. ECF No. 70 ¶¶ 30–52.

Yet the Intervenor Complaint fails to include a single factual allegation to support these conclusory claims of discrimination **as to Defendant Solidifi U.S. Inc.** ("Solidifi"), the appraisal management company ("AMC"). As an AMC, Solidifi fulfills a purely administrative function in the real estate process by managing the appraisal management procurement process and acting as an intermediary between the lender and the appraiser. More importantly, pursuant to federal and state appraiser independence requirements, Solidifi is **prohibited** from influencing or attempting to influence the appraisal value arrived at by the independent, third-party appraiser. Thus, Ms. Cheroutes seeks to hold Solidifi liable for conduct which has been statutorily removed from Solidifi's control.

Moreover, the Intervenor Complaint articulates not a single plausible allegation of discriminatory intent by Solidifi. Indeed, Ms. Cheroutes fails to allege that Solidifi even knew her race, much less intentionally discriminated against her on that basis. Rather,

the relevant factual allegations giving rise to Ms. Cheroutes' claims focus squarely on the third-party appraiser, Maksym Mykhailyna ("Mykhailyna"), and his company, Maverick Appraisal Group ("Maverick")—independent parties for which Solidifi cannot be held liable.  For these reasons, the Complaint against Solidifi should be dismissed.

## FACTS ALLEGED IN THE COMPLAINT

Solidifi contracted with Defendants Maksym Mykhailyna and Maverick Appraisal Group to conduct appraisals. ECF No. 70 ¶ 9.  On January 14, 2021, Defendant Rocket Mortgage LLC ("Rocket Mortgage") contacted Solidifi to order an appraisal of residential real property located at 749–751 N. Ash Street, Denver, Colorado 80220 (the "Property"). ECF No. 1 ¶ 3.[1]  Solidifi then assigned the appraisal order to appraiser Mykhailyna, owner and CEO of Denver-based Maverick, to perform the appraisal of the Property.  *Id.* ¶¶ 3,12, 44.  Mykhailyna conducted the inspection of the Property (*id.* ¶ 59) and submitted a copy of the appraisal report to Solidifi on January 21, 2021.  *Id.* ¶ 107.  Solidifi then submitted the appraisal report to Rocket Mortgage.  *Id.* ¶ 112.

Ms. Cheroutes does not allege that the appraisal report prepared by Mr. Mykhailyna, which was provided to Solidifi and forwarded to Rocket Mortgage, contained any information regarding her race or ethnicity.  Indeed, Ms. Cheroutes does not allege that Solidifi had any knowledge of her race or ethnicity.  Similarly, Ms. Cheroutes does not allege that she ever communicated with Solidifi, or even attempted to do so.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must establish "factual plausibility" by pleading "factual content that allows the court to draw the

---

[1] The Intervenor's Complaint incorporates the government's complaint by reference.  ECF No. 70 ¶¶ 6, 8, 30, 41.

reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a complaint alleging "purposeful discrimination" like this one, the plaintiff must plead facts that plausibly suggest "a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' the actions adverse effects upon an identifiable group." *Id.* at 676–77. At the motion to dismiss stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).

## ARGUMENT

Unable to show discriminatory intent or the requisite agency relationship, the Intervenor Complaint, like that of the government, fails to allege that Solidifi either directly or vicariously discriminated against Ms. Cheroutes. Accordingly, Ms. Cheroutes' claims under both the Fair Housing Act and 42 U.S.C § 1981 should be dismissed.

### I. Ms. Cheroutes Fails to State a Claim for Relief under the Fair Housing Act

#### a. Solidifi is Not Directly Liable under the Fair Housing Act

An FHA disparate treatment claim requires the plaintiff to show that the defendant acted with a discriminatory motive, such that a plaintiff's protected characteristic was the "but for" cause of the defendant's actions. *See, e.g., Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176–77 (2009). Such a showing requires allegations that (1) the defendant knew the race or protected characteristic of the plaintiff, and (2) discriminated against the plaintiff because of that characteristic. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403–06 (7th Cir. 2010). Like the government, Ms. Cheroutes does not (and cannot) allege that Solidifi was even aware of her race. *See* ECF No. 1; ECF No. 70. As such, it is no surprise that the Intervenor Complaint, along with the

government's complaint, collectively include **no** factual allegations that Solidifi discriminated against, or took any action at all, with respect to Ms. Cheroutes **because of her race**. *See generally* ECF No. 1; ECF No. 70. Accordingly, the Intervenor Complaint fails to state a claim for direct liability under the FHA.

### b. Neither is Solidifi Vicariously Liable Under the Fair Housing Act

Traditional rules of vicarious liability, which are applied under the FHA, "ordinarily make principals and employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 289–91 (2003). Although these rules may permit an employer to be held liable "for the torts committed by an employee or agent while acting within the scope of his employment or agency," vicarious liability does not arise when negligent work is performed by an independent contractor." *Gallinger v. R. Martinez Trucking*, No. 2019CV034727, 2020 Colo. Dist. LEXIS 4613, at *8–9 (D. Colo. Dec. 14, 2020) (citing *Perkins v. Reg'l Transp. Dist.*, 907 P.2d 672, 674 (Colo. App. 1995)). The requisite agency relationship "demands not only control (or the right to direct or control) but also 'the manifestation of consent by one person to another that the other shall act on his behalf . . . and consent by the other so to act.'" *Meyer*, 537 U.S. at 286 (citation omitted).

To that end, courts must consider other aspects of the relationship—not merely whether there exists a "right to direct or control." *See Meyer*, 537 U.S. at 291. Here, the relationship between an appraisal management company and an appraiser is uniquely defined by a statutory scheme that prevents the existence of an agency relationship for purposes of a claim under the FHA.

State and federal appraisal independence requirements preclude vicarious liability for the precise conduct on which Ms. Cheroutes' claims are based. Colorado law subjects appraisal management companies to penalties for "**influencing or attempting to influence** the development, reporting, result, or review of a real estate appraisal through coercion, extortion, collusion, inducement, intimidation, bribery, **or in any other manner**." Colo. Rev. Stat. § 12-10-614(c) (emphasis added). Solidifi was explicitly **prohibited** from "**[a]ltering or modifying** a completed **appraisal report** without the authoring appraiser's knowledge and written consent, and the consent of the intended user, except to modify the format of the report solely for transmission to the client and in a manner acceptable to the client." Colo. Rev. Stat. § 12-10-614(e) (emphasis added). Solidifi could not "influence" the "development, reporting, result or review" of Mykhailyna's appraisal report in any manner. As such, Solidifi could not, without violating Colorado law, exercise control over Mykhailyna's independent judgment and determination of the value of Ms. Cheroutes' property. Nor could Solidifi, upon receiving Mykhailyna's report, change the substance of the appraisal to reflect a different value. Given such statutory prohibition, Solidifi did not have the right to exercise control over Mykhailyna's work with respect to the determination of the value of Ms. Cheroutes' property—the value which she alleges was determined based on racial discrimination. *See Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996) ("Under the common-law agency approach . . . the primary focus is on whether the hiring party controls the means and manner by which work is accomplished.") (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)).

Federal law similarly provides that "[i]it shall be unlawful . . . to engage in any act or practice that violates appraisal independence." 15 U.S.C. § 1639e(a). "**[P]ractices that violate appraisal independence** shall include . . . **seeking to influence an appraiser** or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction." 15 U.S.C. § 1639e(b)(3) (emphasis added). The federal government has further promulgated rules governing these relationships that prohibit appraisal management companies from attempting to "directly or indirectly cause the value assigned to the consumer's principal dwelling to be **based on any factor other than the independent judgment** of a person that prepares valuations." 12 C.F.R. § 1026.42(c)(1) (emphasis added). As with Colorado law, Solidifi could not, without violating federal law, exercise control over Mykhailyna's independent judgment and valuation of Ms. Cheroutes' property. Therefore, based on federal law, Solidifi could not exercise control over the very act of Mykhailyna that Ms. Cheroutes alleges was motivated by discrimination—the determination of the value of her property.

Moreover, Mykhailyna was licensed by the state to conduct appraisals, while Solidifi was not—a distinction which is further evidence that the statutory framework insulates appraisers from the control of an appraisal management company necessary to establish an agency relationship. *See* ECF No. 1 ¶ 13; *see also Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989) (considering "the degree of skill required to perform the work" as a factor in the existence of an agency relationship); Restatement (Second) of Agency § 220(2) (1958) (including "whether [] the work is usually done [] by a specialist without supervision" as factor in determining whether an agency relationship exists). As such,

Solidifi was precluded, as a matter of law, from substantively controlling the valuation of Ms. Cheroutes' property.

Even if appraisal independence requirements did not prevent Solidifi from exercising the requisite control over appraisers, Mykhailyna is at best an independent contractor over whom Solidifi is not vicariously liable. An independent contractor is "one who engages to perform services for another, according to his own methods and manner, free from direction and control of the employer in all manners relating to the performance of the work, and accountable to him only for the result to be accomplished." *Cont'l Bus Sys., Inc. v. NLRB*, 325 F.2d 267, 271 (10th Cir. 1963). In considering whether an individual is merely an independent contractor, rather than an agent, courts consider various factors, often including (1) the degree of control exercised over the work; (2) the financial arrangement of the parties; (3) the worker's investment in the business; (4) the permanence of the business relationship; (5) the degree of skill the work calls for; and (6) the extent to which the work is integral to the employer's business. *See, e.g., Dole*, 875 F.2d at 805. No one factor is decisive, but under the common law approach, "the primary focus is whether the hiring party controls the means and manner by which the work is accomplished." *Lambertsen*, 79 F.3d at 1028 (citing *Nationwide Mut. Ins. Co.*, 503 U.S. at 323).

First and most importantly, Solidifi does not control "the means and manner" of Mykhailyna's work as required by the common law, and the Intervenor Complaint does not show otherwise. The Intervenor Complaint incorporates by reference the government's mention of Solidifi's quality assurance policies for selecting appraisers and submitting appraisals. ECF No. 70; ECF No. 1 ¶¶ 44, 46–58. Even if taken as true, these

policies underscore that any control Solidifi exercised over Mykhailyna was merely to ensure consistency in "the result to be accomplished," *Cont'l Bus Sys.*, 325 F.2d at 271, and constituted "no more authority than anyone might have over an independent contractor." *See Powell v. City & County of Denver*, 973 F. Supp. 1198, 1200–03 (D. Colo. 1997) (holding that a security consultant was an independent contractor, and not an agent, even though the hiring party had "final authority as to what strategies or techniques were to be carried out concerning the security of the facility," because he owned his own company, had multiple clients, consulted throughout the United States, and billed the clinic for his services rather than taking a salary).

The Intervenor Complaint further incorporates the legal conclusion that Solidifi "takes steps to control its appraisers," by reviewing "licensing and insurance information" and conducting background checks. ECF No. 1 ¶ 44. In *Courtney v. Class Transportation, Inc.*, the court noted that "when acting as a broker, [a shipping broker] takes numerous steps to confirm a [trucking company]'s safety rating prior to contracting with it." No. 18-cv-02335-RBJ, 2021 U.S. Dist. LEXIS 6347, at *5 (D. Colo. Jan 13, 2021). Nonetheless, the court weighed the circumstances to determine that "as a broker, [the defendant] did not have the 'right to direct or control the method and manner' in which the trucking company completed the work[.]" *Id.* at *38 (citations omitted). Similarly, Solidifi effectively brokers the appraisal process and does not establish a principal-agent relationship with one of the parties merely by interviewing and monitoring appraisers. *See id.*

The financial relationship between Solidifi and Mykhailyna also precludes classifying him as an agent. Mykhailyna receives no regular salary or wage for his work,

but in contrast is paid per appraisal at a rate he sets himself.  Solidifi's Appraiser Terms of Use, attached hereto as **Exhibit A**, state that "[i]f User agrees to provide an appraisal to a Purchaser through the use of the Service, User hereby agrees that User's fees will be based on the then fee schedule that User has previously posted on the Website. . . . Solidifi shall remit User's fees . . . for those appraisals submitted by User to Purchasers within thirty (30) days of . . . the appraisal."[2]  Ex. A, Terms of Use § 5(c); *see Powell*, 973 F. Supp. at 1200–03 (finding security consultant to be an independent contractor in part because he billed for his services).

Further, Solidifi's panel appraisers are responsible for all costs incurred in performing the appraisal and are subject to their own recordkeeping requirements.  Ex. A, Terms of Use §§ 5(b); 4(a)(vii).  Solidifi's panel appraisers are responsible for "procuring, installing, operating, supporting and maintaining" their own systems, "including computer hardware and software" necessary to work with Solidifi—a requirement that further highlights the arms-length relationship between the Solidifi and Mykhailyna.  Ex. A, Terms of Use § 4(a)(i); *see Courtney*, 2021 U.S. Dist. LEXIS 6347, at *36 (finding a trucking company was not an agent of a shipping broker where the trucking company was responsible for providing its own equipment).

Moreover, Mykhailyna is invested in his own business—not Solidifi. Mykhailyna is the owner and CEO of Maverick, his own appraisal company, was free to perform appraisals for anyone he chose, and had sole discretion to accept or reject appraisal

---

[2] The Court may consider the Terms of Use on a motion to dismiss because the document is central to Ms. Cheroutes' claims and referred to in the Intervenor Complaint by reference to the government's complaint.  *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005); ECF No. 70; ECF No. 1.

orders from Solidifi.  ECF No. 1 ¶ 13; Ex. A, Terms of Use.  The contractual arrangement between the parties provides that Mykhailyna "shall not be considered an agent or employee of Solidifi."  Ex. A, Terms of Use, § 5(e).  Moreover, Solidifi does not conduct appraisals itself but engages appraisers to conduct appraisals and then send Solidifi completed reports.  ECF No. 1 ¶¶ 3, 44.  This distinction is evidenced by the fact that Mykhailyna, as a licensed appraiser, was a specialist who could not, by law, fall under Solidifi's supervision.  ECF No. 1 ¶ 13; *see also* Colo. Rev. Stat. § 12-10-614(c); 15 U.S.C. § 1639e(b)(3).  On the contrary, Solidifi's agreement with its panel appraisers specifically provides that "Solidifi will not be responsible for the accuracy, completeness or adequacy of . . . appraisals or the results of any appraisals and that Solidifi has no control over any . . . appraisals, or the results of any appraisals and that Solidifi does not purport to monitor any . . . appraisals or the results therefrom."  Ex. A, Terms of Use, § 4(e).  Accordingly, Solidifi had no right to direct or control Mykhailyna, much less was there any "manifestation of consent" to such a relationship.  *See Meyer*, 537 U.S. at 286.

## II.      Ms. Cheroutes Also Fails to State a Claim for Relief Under 42 U.S.C. § 1981

The Contract Clause of the Civil Rights Act ensures that all persons "have the same right in every State and Territory to make and enforce contracts[.]'"  42 U.S.C. § 1981(a).  This right covers "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *See* 42 U.S.C. § 1981(a)–(b).  Because Solidifi is neither directly nor vicariously liable for infringing on this right under § 1981, Ms. Cheroutes' claim fails.

### a. Solidifi is Not Directly Liable under 42 U.S.C. § 1981

In order "to establish a prima facie case of discrimination under § 1981, the plaintiff must show: (1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101 (10th Cir. 2001) (citing *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995)). "Racial animus is an element necessary to support a claim under § 1981." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). To prevail on a § 1981 claim, a plaintiff must initially plead that "but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020). As such, Ms. Cheroutes must plausibly allege that race "explained [her] injuries." *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1025–26 (D. Kan. 2024) (citing *Comcast Corp.*, 589 U.S. at 329). Indeed, a valid claim under § 1981 requires the plaintiff to plead specific factual allegations indicating that the defendant discriminated based on the protected characteristic. *See Vu Phan v. Hipple*, 735 F. App'x 492, 494 (10th Cir. 2018) (affirming dismissal of § 1981 housing claims where plaintiff "pleaded no facts indicating that the defendants had taken action based on his disability or race").

The Intervenor Complaint fails to show that Solidifi intentionally discriminated against Ms. Cheroutes because of her race. Indeed, like the government, Ms. Cheroutes does not even claim that Solidifi was aware that she was Black—nor could she, since Solidifi had no way of knowing her race. *See generally* ECF No. 70; ECF No. 1. As such, Ms. Cheroutes has "pleaded no facts indicating that [Solidifi] has taken action based on"

race, and thus has failed to state claim for direct § 1981 liability against Solidifi. *See Vu Phan*, 735 F. App'x at 494.

### b. Neither is Solidifi Vicariously Liable Under 42 U.S.C. § 1981

As with the FHA, to establish vicarious liability under § 1981 a plaintiff must show the existence of an agency relationship. *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 393. "[C]entral to the master-servant relationship is the master's control over or right to control the physical activities of the servant." *Id.* More specifically, the "proper inquiry for a § 1981 claim is whether that entity is considered an employer of the employee and thus can be held liable for the actions of that employee." *Chavez v. McDonald's Corp.*, No. 19-cv-00164-PAB-SKC, 2020 U.S. Dist. LEXIS 48417, at *7 (D. Colo. Mar. 20, 2020) (citing *McCurry v. Kenco Logistics Servs.*, *LLC*, 942 F.3d 783, 790 (7th Cir. 2019); *Jerome v. Hertz Corp.*, 15 F. Supp. 3d 1225, 1237 (M.D. Fla. 2014); *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 751 (W.D. Tenn. 2012) (parentheticals omitted)). Although not yet addressed by the Tenth Circuit, federal courts maintain that even an employer-employee relationship may be insufficient to establish vicarious liability under § 1981 when the employer is not personally involved in the conduct. *Id.* at *8 (citing *Sandoval v. City of Boulder*, 388 F.3d 1312, 1324 n.4 (10th Cir. 2004); *Jerome*, 15 F. Supp. 3d at 1234).

As an initial matter, state and federal appraisal independence requirements provide that Solidifi is statutorily prohibited from any "right to control" appraisers. *See supra* Section I(b) (discussing Colo. Rev. Stat. § 12-10-614; 15 U.S.C. § 1639e; 12 C.F.R. § 1026.42(c)(1)). Cheroutes seeks to charge Solidifi with vicarious liability under federal civil rights statutes for the valuation determination of an independent, third-party appraiser, while state and federal law simultaneously preclude Solidifi from making any attempt to influence that appraiser's independent judgment. Accordingly, state and

federal law dictate that Solidifi, as a matter of law, lacks the "right to control" the exact actions which Cheroutes alleges infringed on her § 1981 rights.

Moreover, Mykhailyna is not Solidifi's employee. The Tenth Circuit has three different tests for determining whether an entity is an "employer" for the purpose of § 1981 claims: "the hybrid test, the joint employer test, and the single employer test." *See Knitter v. Corvias Mil. Living, LLC,* 758 F.3d 1214, 1225–26 (10th Cir. 2014); *Chavez*, 2020 U.S. Dist. LEXIS 48417, at *8–9 (applying *Knitter* employer tests to § 1981 claims). The hybrid test is the most appropriate to distinguish an employee from an independent contractor. *See Knitter*, 758 F.3d at 1226. The hybrid test asks (1) whether an entity has the right to control the "'means and manner' of the worker's performance" and (2) whether the worker is in business for himself "as a matter of economic fact." *Id.*

Solidifi is not Mykhailyna's employer and the Intervenor Complaint does not attempt to allege otherwise. Indeed, it is undisputed that Mykhailyna is not Solidifi's employee but rather is the CEO of Maverick, his own appraisal company, which on its own should end the inquiry. ECF No. 1 ¶ 13; *see also generally* ECF No. 70. Nevertheless, and as discussed above, Solidifi does not have the right to control the "means and manner" of Mykhailyna's work. *See supra* Section I(b). The Intervenor Complaint alleges that "Mykhailyna and Maverick contract with Solidifi to perform appraisals," yet contains no allegation beyond this agreement to provide services. *See* ECF No. 70 ¶ 9; *see also* ECF. No 1. Indeed, allegations relating to Solidifi's quality assurance policies or contractual ability to request certain changes to appraisal reports are insufficient to establish that Solidifi is Maverick's employer. *See Gen. Building Contractors Ass'n*, 458 U.S. at 393–94 ("[T]he 'power to oppose' the [the purported agent],

even when the opposition is grounded in the . . . agreement, is not tantamount to a 'right to control.' . . . Indeed, a rule equating the two would convert every contractual relationship into an agency relationship, a result clearly unsupported by the common law.").

Additionally, Mykhailyna is in business for himself "as a matter of economic fact." In addition to being the CEO of his own, separate business, Mykhailyna could have performed appraisals for anyone he chose, was not bound to work exclusively for Solidifi, and had sole discretion to accept or reject appraisal orders from Solidifi. *See generally* Ex. A, Terms of Use. More to the point, Mykhailyna set his own rate, was paid per appraisal, and was responsible for all of his own costs. Exhibit A, Terms of Use §§ 5; 4(a)(vii). Accordingly, under the hybrid test Solidifi is definitively not Mykhailyna's employer for purposes of § 1981.

Even if Mykhailyna was Solidifi's employee (he was not), Solidifi was not personally involved in the alleged discriminatory conduct. In *Chavez v. McDonald's Corp.*, a customer brought a § 1981 discrimination claim against a fast-food corporation, arguing that it was vicariously liable for a discriminatory altercation perpetrated on herself and her daughter by a franchisee-restaurant employee. 2020 U.S. Dist. LEXIS 48417, at *4. The court rejected that argument. *Id.* at *12–13. "[E]ven if defendants are employers of [the franchisee-restaurant employee], that conclusion would not necessarily impute liability to defendants for [her] actions." *Id.* at *7–8. Indeed, the court agreed with other courts that "plaintiffs must allege personal involvement of a defendant for the alleged discriminatory acts." *Id.* at *8. Because it was "undisputed that [the] defendants had no involvement in

the altercation between [the] plaintiffs and [the franchisee-restaurant employee]," the court found that the defendants "could not be held liable under § 1981." *Id.*

Solidifi was similarly divorced from Mykhailyna's alleged conduct. Neither the Intervenor Complaint, nor the government's complaint by incorporation, contain a single nonconclusory allegation to indicate that Solidifi was "personally involved" with the alleged discriminatory appraisal. Ms. Cheroutes alleges that "two White men"—not Solidifi— came onto her property and conducted themselves in a discriminatory manner. See ECF No. 70 ¶ 21. She does not allege that Solidifi was aware of the alleged discrimination, or that she even attempted to communicate with Solidifi. *See generally* ECF No. 70. She alleges no facts at all implicating Solidifi's role in the discriminatory appraisal other than its assignment of Mykhailyna to appraise the property. *Id.* Accordingly, because it is "undisputed that [Solidifi] has no involvement in" the interaction between Ms. Cheroutes and Mykhailyna, Solidifi cannot be liable under § 1981. *See Chavez*, 2020 U.S. Dist. LEXIS 48417, at *8.

## CONCLUSION

Because Solidifi is neither directly nor vicariously liable for the civil rights claims asserted by Ms. Cheroutes, Solidifi respectfully requests that the Court grant its Motion to Dismiss.

Respectfully submitted this 28th day of March, 2025.

/s/ Christopher A. Riley
Christopher A. Riley
John Evan Laughter
ALSTON & BIRD LLP
1201 West Peachtree Street

Atlanta, Georgia 30309
404-881-7000 (telephone)
404-881-7777 (facsimile)
chris.riley@alston.com
johnevan.laughter@alston.com

Michael J. Carrigan
Alexandria E. Pierce
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
mcarrigan@hollandhart.com
aepierce@hollandhart.com

*Attorneys for Defendant Solidifi
U.S. Inc.*

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR7.1(a) AND GPG CIV. PRACTICE STANDARD 7.1B(b)

Undersigned counsel certifies counsel certifies that Solidifi U.S. Inc.'s counsel conferred with the Intervening Plaintiff's counsel, in good faith, by telephone, about the relief sought herein, and Plaintiff's counsel indicated non-consent to such relief.

This 28th day of March, 2025.

/s/ Christopher A. Riley
Christopher A. Riley

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This 28th day of March, 2025.

/s/ Christopher A. Riley
Christopher A. Riley