# EXHIBIT A

1

**TERMS OF USE**

The use of Solidifi's Services is subject to the terms and conditions of this Agreement. This is a legal contract between User (as defined below) and Solidifi U.S. Inc. ("Solidifi"). Please read the entire Agreement carefully before User accesses or uses any of the Services, Solidifi Values™, the Website or any information, products, software, services or other features available from Solidifi through the use of the Website.

THIS AGREEMENT ESTABLISHES THE TERMS AND CONDITIONS TO WHICH USER AGREES AND TO WHICH USER IS SUBJECT WHEN USER ACCESSES OR USES THE SERVICES, INCLUDING THE WEBSITE. BY ACCEPTING THE TERMS OF THIS AGREEMENT, USER ACCEPTS ALL ASPECTS OF THIS AGREEMENT. EACH TIME THAT USER ACCESSES OR USES THE WEBSITE, USER RE-AFFIRMS USER'S CONSENT TO THE THEN-EXISTING TERMS OF USE.

1. **SCOPE**

    (a) APPLICATION: These terms of use apply to User and to all Services and products provided by Solidifi and the use of the Website. IF YOU ARE NOT AN APPRAISER, BUT YOU REPRESENT THE USER, THEN YOU MUST HAVE AUTHORITY TO BIND THE USER BY AGREEING TO THESE TERMS OF USE AND YOU HEREBY WARRANT THAT YOU HAVE AUTHORITY TO ENTER INTO THIS AGREEMENT ON BEHALF OF THE USER. If User is not an appraiser, then do not agree to this Agreement, but please refer to the appropriate agreement for User's circumstance.

    (b) AMENDMENTS: User acknowledges that Solidifi may amend, change or modify this Agreement, in which case, Solidifi may require User to accept such amendment, change or modification by clicking the "I Agree" button prior to any continued use of the Service or the Website. Nevertheless, User agrees that User's continued use of the Website and Service shall constitute User's agreement to such amendment, change or modification.

2. **INTERPRETATION**

    (a) DEFINITIONS: In this Agreement, the following terms shall have the respective meanings indicated below:

    "**Agreement**" means these general terms of use for appraisers.

    "**Appraisal Network**" means Solidifi's proprietary database of appraisers.

    "**Appraisal Standards**" means any service levels that Solidifi publishes to User, and to which User agrees, pertaining to User's performance in the conduct, quality, and timing of producing an appraisal including compliance with industry and Purchaser standards.

    "**Authentication ID**" means a security mechanism by which User identifies itself to the Website and gains access thereto, including but not limited to, user identification, passwords, digital certificates, smart cards, security cards or any other similar process mechanism for authentication and recognition as determined by Solidifi from time to time.

    "**Business Day**" means any calendar day except for Saturday or Sunday or any statutory or banking holiday as per the holiday schedule of the Federal Reserve Bank of New York.

    "**Confidential Information**" means User Content, Appraisal Network and any software used by Solidifi to run the Website, including Solidifi Values™ and any information and data included therein or derived therefrom and the form, format, mode or method of compilation, selection, configuration, presentation or expression of such software, including any and all ideas, designs, business models, databases, drawings, documents, diagrams, and formulas related thereto and any other information already furnished and to be

furnished or made available by one Party to the other, whether in oral, written, graphic or electronic form including any such information exchanged during informational sessions designated as confidential, provided, however, that Confidential Information shall not include any data or information which:

    (i)      is or becomes publicly available through no fault of the Party to whom disclosure is made;

    (ii)     is disclosed to a Party by a third party under no obligation of confidentiality to the other Party;

    (iii)    is independently developed by the receiving Party without reference to the information provided by the disclosing Party;

    (iv)    is already known or in the possession of the receiving Party prior to receipt of the information from the disclosing Party; or

    (v)     is further disclosed with the prior written consent of the disclosing Party.

"**Effective Date**" means the date User first clicked "I Agree".

"**Governmental Authority**" means any domestic or foreign government, whether federal, provincial, state, territorial or municipal; and any governmental agency, ministry, department, tribunal, commission, bureau, board or other instrumentality exercising or purporting to exercise legislative, judicial, regulatory or administrative functions of, or pertaining to, government.

"**Intellectual Property**" means any property, tangible or intangible, that may be subject to Intellectual Property Rights, including without limitation, ideas, formulae, algorithms, concepts, techniques, processes, procedures, approaches, methodologies, plans, systems, research, information, documentation, data, data compilations, specifications, requirements, designs, diagrams, programs, inventions, technologies, software, tools, products knowledge, know-how, including without limitation, trade secrets, and other materials or things.

"**Intellectual Property Rights**" means (a) any and all proprietary rights anywhere in the world provided under (i) patent law; (ii) copyright law, including moral rights; (iii) trademark law; (iv) design patent or industrial design law; (v) semiconductor chip or mask work law; (vi) trade secret law; (vii) privacy law; or (viii) any other statutory provision or common law principle applicable to this Agreement which may provide a right in either (A) Intellectual Property; or (B) the expression or use of Intellectual Property; and (b) any and all applications, registrations, licenses, sub-licenses, franchises, agreements or any other evidence of a right in any of the foregoing.

"**Marks**" means User's, or the appraiser organization that User represents, trademarks, logos or other identifying names or marks.

"**Objectionable Content**" means content that infringes any applicable laws, regulations or third party rights, and content which is obscene, indecent, pornographic, seditious, offensive, defamatory, threatening, liable to incite racial hatred, menacing, blasphemous, misleading, deceptive or in breach of any Person's Intellectual Property Rights.

"**Party**" means either Solidifi or User; and "**Parties**" means both of them.

"**Person**" means any individual, sole proprietorship, partnership, unincorporated association, unincorporated syndicate, unincorporated organization, limited liability company, corporation, body corporate, trustee, trust, Governmental Authority or other entity or organization.

"**Point of Access**" means Solidifi's, or its subcontractor's, border router, which is used to establish connectivity from the Solidifi System to Solidifi's, or its subcontractor's, Internet service provider, or the public Internet.

"**Purchaser**" means a Person who has ordered an appraisal and which order was submitted to User by Solidifi.

"**Service(s)**" means the services provided by Solidifi through the use of the Website as set out herein.

"**Solidifi Server**" means that computer server located at Solidifi's premises, or a third party provider of hosting and/or network services, that houses the Website and Solidifi Values™.

"**Solidifi System**" means the Appraisal Network, Website, Solidifi Values™, Solidifi Server and such devices, and peripherals physically located with the Solidifi Server including all computer hardware, software, network elements, and electrical and telecommunications infrastructure located behind and including the Point of Access.

"**Solidifi Values™**" means the application computer software, in object code format, that permits Solidifi to provide its Services to User.

"**Solidifi's Commission**" shall have the meaning ascribed to it in Section 5(a).

"**Term**" shall have the meaning ascribed to it in Section 9(a).

"**Virus**" means a piece of code usually (but not necessarily) disguised as something else that causes some unexpected and, for the victim, usually undesirable, event and which is designed so that it may automatically spread to other computer users; the term 'Virus' will also be deemed to include worms, cancelbots, trojan horses, harmful contaminants (whether self-replicating or not) and nuisance causing or otherwise harmful applets.

"**Website**" means the website from which the Services are provided.

"**User**" means the appraiser identified on the login screen on the Website (or any of User's employees, independent contractors, affiliates and/or agents).

"**User Content**" means any and all files, description, data, documentation and other information that User provides that describes User's profile or relates to User's business.

"**User Documentation**" means the user manuals and guides with respect to the operation and use of the Website, which is accessible on the Website.

(b)   HEADINGS:  The division of this Agreement into articles, sections, schedules and other subdivisions, and the inclusion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.  The headings in the Agreement are not intended to be full or precise descriptions of the text to which they refer.  Unless something in the subject matter or context is inconsistent therewith, references herein to Articles and Sections are to Articles and Sections of this Agreement.

(c)   ENTIRE AGREEMENT:  This Agreement, together with any agreements and other documents to be delivered pursuant hereto, constitutes the entire agreement between the Parties pertaining to the subject matter hereof and supersedes all prior agreements, negotiations, discussions and understandings, written or oral, between the Parties. Except as expressly provided in this Agreement, there are no representations, warranties, conditions, other agreements or acknowledgements, whether direct or collateral, express or implied, that form part of or affect this Agreement.  The execution of this Agreement has not been induced by, nor do either of the Parties

4

rely upon or regard as material, any representations, warranties, conditions, other agreements or acknowledgements not expressly made in this Agreement or in the agreements and other documents to be delivered pursuant hereto.

(d) GOVERNING LAW:  This Agreement shall be governed by, and construed and enforced in accordance with, the laws in force in the State of New York (excluding any conflict of laws rule or principle which might refer such construction to the laws of another jurisdiction).  The Parties hereto agree to submit to the jurisdiction of the federal and/or state courts of the State of New York and waive any objection relating to improper venue or *forum non conveniens* to the conduct of any proceeding in any such court.

(e) SEVERABILITY:  In the event that any provision (or any portion of a provision) of this Agreement shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable for any reason, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or portion of a provision) had never been contained herein in regards to that particular jurisdiction.

(f) UNITED NATIONS CONVENTION: The Parties hereby expressly exclude the application of the United Nations Convention on Contracts for the International Sale of Goods and any local implementing legislation related thereto.

3. **SOLIDIFI SERVICES**

(a) AUTHENTICATION IDs:  Subject to the terms of this Agreement, Solidifi will provide User with an Authentication ID, which will enable User to access the Services through the Website.

(b) SOLIDIFI SYSTEM:  Solidifi shall operate and maintain the Solidifi System and host the Website in accordance with the terms of this Agreement.

(c) MAINTENANCE:  From time to time, it will be necessary for Solidifi to perform maintenance on the Solidifi System.  Such maintenance includes routine maintenance to ensure the continued provision of the Services through the continued operation of the Solidifi System or upgrading, updating or enhancing the Solidifi System, including the Solidifi Values™.  Solidifi shall use its commercially reasonable efforts to perform such maintenance at such times to minimize the impact of any downtime of the Solidifi System to User.  To the extent Solidifi is able; Solidifi shall notify User in advance of any scheduled maintenance by posting a message on the Website or by sending User an email of the scheduled maintenance time and the anticipated duration of such maintenance.

(d) CHANGES:  Solidifi may, at any time, with or without notice to User (i) add or withdraw information, products, features or other functionality to or from the Services; (ii) make changes that are necessary to comply with applicable safety, security or other statutory requirements or orders from applicable Governmental Authorities; (iii) supplement or make changes to its User Documentation and to its rules of operations, access procedures, security and privacy procedures and policies; and (iv) change the type and location of the Solidifi System and all equipment, facilities and software, including the Solidifi Values™ used by it in providing the Services.

(e) REASSIGNMENT:  If User accepts an engagement without requesting an extension to the due date, User agrees to provide a requested appraisal within the timeframe set out in the Appraisal Standards. Solidifi reserves the right, and without notice to User, to reassign the production of any appraisal not provided by the agreed upon due date to another appraiser, in which case, User's

engagement to produce such appraisal shall terminate and Solidifi shall not be liable to User for any costs or expenses incurred by User in the performance of such appraisal.

(f) REVIEW BY SOLIDIFI:  Subject to applicable law, Solidifi may, but is not obligated to, and reserves the right to, review any and all appraisals and require changes to be made to the appraisal(s) in order to meet applicable professional and industry standards and/or other Governmental Authority requirements and/or bring the appraisal(s) into compliance with the Appraisal Standards, if any. If, during the revision process, additional comparable(s) are requested by the Purchaser, User will add them at a price not to exceed the terms noted in the Purchaser's order.

(g) RESTRICTIONS ON USE:  User shall not use the Website or the Solidifi System or any part thereof except for the sole purpose of obtaining the Services.  Without limiting the generality of the foregoing, User shall not (i) except as permitted herein, access or use the Service, the Website or the Solidifi System for any purpose, including any illegal purpose or in contravention of any applicable laws, including privacy laws; (ii) knowingly permit, any unauthorized Person to access or use the Website or the Solidifi System or any part thereof, (iii) re-license, sublicense, lease or rent the use of the Website or the Solidifi System or any part thereof to any third Person or affiliate; or (iv) download or attempt to obtain from the Website any software, including Solidifi Values™.  User shall not, and shall not permit others to, reverse engineer, decompile, disassemble or translate the Website or Solidifi Values™, or otherwise attempt to view, display or print the Website or Solidifi Values™ source code.

(h) GRANT BY USER:  User hereby grants to Solidifi a royalty-free, non-exclusive, non-transferable right and license for the duration of the Term to use, copy, store and display User Content for the purpose of enabling Solidifi to perform the Services hereunder.

(i) TRADEMARKS:  Subject to the provisions of this Agreement, User hereby grants to Solidifi a non-exclusive, non-transferable, royalty free license to reproduce, display and use the Marks in connection with the provision of the Services.  Solidifi acquires no ownership or any other proprietary right, title, interest or license in the Marks, except as stipulated in this Section 3(i).  Solidifi agrees that User is the exclusive owner of the Marks and shall not take any action that will adversely affect the validity of the Marks or, directly or indirectly, attempt to dilute or depreciate the value of the goodwill attached thereto.  Any use of the Marks by Solidifi shall inure to the exclusive and entire benefit of User.  Solidifi shall not use the Marks or any part thereof as part of Solidifi's business, trade, corporate, partnership or other name and shall not combine the Marks in association with any other marks or words to form a new mark nor alter the design of the Marks.  Solidifi shall not, at any time, directly or indirectly, challenge, dispute or contest the ownership, validity or enforceability of the Marks.  Solidifi shall not, either directly or indirectly, grant sub-licenses or otherwise permit any third Person to use the Marks.

4. **USER OBLIGATIONS**

(a) RESPONSIBILITIES:  In addition to User's other obligations contained in this Agreement, User shall:

(i) be responsible for procuring, installing, operating, supporting and maintaining User's systems, including computer hardware and software necessary for User to access and use the Service, including the procurement and maintenance of the necessary communication services to connect to the Services;

(ii) maintain reasonable, commercially standard measures to protect the Confidential Information;

- (iii) comply with any Purchaser code of conduct provided in the Appraisal Standards and Solidifi's code of conduct, security and privacy policies in respect of the use of the Service and the Solidifi System, which policies can be found on the Website;

- (iv) immediately notify Solidifi of any suspected or actual breach of any Confidential Information;

- (v) assign, record and control the issuance and use of any Authentication IDs, including notifying Solidifi if a user to whom User has assigned an Authentication ID is no longer authorized by User to access the Services;

- (vi) be responsible for the accuracy, completeness and adequacy of all User Content, including maintaining and promptly update User's profile on the Website, as necessary to keep it true, current and complete and shall maintain only one (1) profile on the Website;

- (vii) maintain User's work file and any other records related to User's services for five (5) years or two (2) years following any judicial or disciplinary proceeding, whichever is longer;

- (viii) comply, at all times, with all applicable legal and regulatory requirements, including, without limitation:

    - A. applicable privacy laws (including the Gramm-Leach-Bliley Privacy Act);

    - B. any applicable requirements issued by User's state authority governing licensing and certification of real estate appraisers, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation and the Office of Thrift Supervision; and

    - C. any applicable anti-bribery, anti-corruption, and anti-money laundering laws.

- (ix) immediately notify Solidifi if User is the subject of ((including pending or threatened):

    - A. any claim, action or dispute in relation to any appraisal User completed through the use of the Services;

    - B. any enforcement or review proceedings by any regulator or other governing body that purports to regulate User's activities or who grants User's license; or

    - C. any claim, action or dispute, or any enforcement or review proceedings alleging a violation of any anti-bribery, anti-corruption, or anti-money laundering laws.

- (x) meet or exceed the standards for conducting appraisals set out in the Uniform Standards of Professional Appraisal Practice, as updated from time to time by the Appraisal Foundation, and comply at all times with the requirements of the professional organization that User belongs;

- (xi) provide, at all times, appropriate professional liability insurance, including errors and omissions insurance, that a prudent and diligent appraiser would carry;

- (xii) carry, at all times, appropriate worker's compensation and all other applicable insurance;

- (xiii) promptly report to Solidifi receipt of any homeowner or borrower complaint involving a Solidifi engagement;

  (xiv) always submit true, current and complete information about properties, appraisals, and other information to the Purchasers who have ordered an appraisal through Solidifi; and

  (xv) be familiar with and comply with any requirements that may be imposed by a Purchaser in respect of the creation and delivery of an appraisal to such Purchaser.

(b) <u>PROHIBITED ACTIVITIES</u>:  User shall not:

  (i) use the Service or the Website for improper or unlawful purposes or in contravention of any applicable privacy legislation;

  (ii) use any Service or the Website to impersonate or portray another Person, to communicate under a false name or name User is not authorized to use or otherwise engage in false or fraudulent practice(s);

  (iii) use any device, software or routine to interfere or attempt to interfere with the proper working of the Website, the Solidifi System or the Service.

  (iv) take any action that imposes an unreasonable or disproportionately large load on the Solidifi System;

  (v) include, or knowingly allow others to include, any Objectionable Content or introduce Viruses to the Solidifi System and shall institute such security procedures and safeguards as User deems necessary to prevent the posting, uploading or inclusion of any Objectionable Content or Viruses;

  (vi) use the Service to develop any derivative works or any functionally compatible or competitive software;

  (vii) remove any copyright or other proprietary rights notice on the Website, Solidifi Values™ or the User Documentation or any copies thereof;

  (viii) intercept or attempt to intercept any messages transmitted to and from the Website that are not intended for User;

  (ix) use the services of offshore third parties in the provision of appraisal services;

  (x) use the information obtained through Solidifi to locate, identify or directly contact any Purchaser in any manner without prior express written permission from Solidifi;

  (xi) use any part of the fees received from Solidifi, directly or indirectly, for any payments that could constitute a violation of any applicable anti-money laundering laws; or

  (xii) make any payments, offers, requests, or agreements to receive or accept any financial or other advantage, which has the purpose or effect of public or commercial bribery.

(c) <u>LICENSE AND INSURANCE</u>:  User will provide to Solidifi a copy of User's appraiser license from the applicable state authority governing User's activities and a summary of the insurance that User carries, together with a certificate from User's insurer.  Within five (5) days of any amendment or modification to either User's license or insurance, User will submit to Solidifi such updates, such that Solidifi's records are kept current.  User agrees that Solidifi may provide to the Purchaser and/or its delegate copies of User's license, summary of insurance and insurance certificate.

(d) <u>APPRAISAL STANDARDS</u>:  By accepting an engagement without providing Solidifi with any requested changes or deviations from the Appraisal Standards of which Solidifi notified User, User acknowledges and agrees to comply with such Appraisal Standards. If User fails to comply with such

8

Appraisal Standards, User agrees that User may not be entitled to any fees in respect of such appraisal and it may be considered a breach hereunder and Solidifi may terminate User's use of the Service and the Website and disable User's Authentication IDs in accordance with the provisions herein.

(e) CONTENT MONITORING: User acknowledges and agrees that Solidifi will not be responsible for the accuracy, completeness or adequacy of any User Content, appraisals or the results of any appraisals and that Solidifi has no control over any User Content, appraisals, or the results of any appraisals and that Solidifi does not purport to monitor any User Content, appraisals or the results therefrom posted on or through the Website.

(f) PASSWORDS: User shall control and maintain the security of all Authentication IDs and other identification codes and passwords used by User in relation to the Service and access to the Website, including the Solidifi System. User shall be solely responsible for all instructions, commitments and other actions or communications taken under User's Authentication IDs. User shall promptly report to Solidifi any errors or irregularities in the Service, Website or the Solidifi System or any unauthorized use of any part thereof and inform Solidifi immediately if any Authentication ID becomes known to any third Person who is not authorized to possess such password. To the extent permitted by applicable State law, User hereby indemnifies and holds harmless Solidifi from any actions, claims, suits, proceeding or damages made against Solidifi from a third Person as a result of any use of User's Authentication IDs, whether or not such use is authorized by User.

5. **FEES AND PAYMENT**

(a) SOLIDIFI'S FEES: User acknowledges that Solidifi shall be entitled to charge any Purchaser to whom User provided an appraisal using the Services a fee for the provision of such appraisal, which fee shall be in addition to any charges by User for such appraisal ("**Solidifi's Commission**"). Solidifi's Commission may be separately disclosed to the Purchaser from User's fees.

(b) USER FEES: If User agrees to provide an appraisal to a Purchaser through the use of the Service, User hereby agrees that User's fees will be based on the then fee schedule that User has previously posted on the Website. User may amend such fee schedule from time to time, but the fee schedule as posted at the time of User's acceptance of an engagement shall be used to calculate the fees payable to User.

(c) REMITTANCE TO USER: Solidifi shall remit User's fees, as calculated in accordance with such fee schedule less any direct costs incurred by Solidifi in connection therewith (but not including Solidifi's Commission) for those appraisals submitted by User to Purchasers within thirty (30) days of the date on which User provided the appraisal, or by such other date as required by law.

Solidifi shall make such payment by check, pre-authorized payment plan, or electronic funds transfer to the bank account or address that User has identified and designated to Solidifi. User expressly agrees that Solidifi's remittance of payment to such designated bank account or address satisfies Solidifi's payment obligations, regardless of whether the bank account or address is associated with User, User's employer, or with any third party, including but not limited to an appraisal firm or appraisal management company. User acknowledges that User is responsible for promptly notifying Solidifi of any changes to User's payment information.

User represents and warrants that User has provided to Solidifi all of its current business tax numbers and covenants to provide any correction thereto occurring during the Term, and

represents that Solidifi may rely upon such numbers in the preparation of any statement rendered under this Agreement and any return or remittance required under applicable law.

(d) <u>CANCELLED ORDERS:</u> If a Purchaser cancels an order for an appraisal after User has accepted it, User will be entitled to compensation for such cancelled order in accordance with Solidifi's Cancellation Policy, which may be amended from time to time by Solidifi.

(e) <u>RELATIONSHIP:</u> It is understood and agreed that User is an independent contractor and not an employee of Solidifi for any purpose, including without limitation, benefits eligibility, overtime eligibility and federal or state tax purposes. User shall abide by each and all of the covenants set forth herein. User affirms that as to his/her/its own employees, if any, he/she/it shall at all times comply with applicable law, including all wage and hour laws (including but not limited to state and federal laws governing minimum wage, overtime, and, as applicable, rest and meal breaks), and all federal immigration laws, and shall indemnify Solidifi from any and all claims involving alleged violations of such laws made by or relating to User's employees or subcontractors. It is also understood that User shall not be considered an agent or employee of Solidifi. User shall have no authority whatsoever to act on behalf of Solidifi or bind Solidifi by contract or otherwise without express written authorization from Solidifi. User shall provide Solidifi with a W-9 concurrently with execution of this Agreement.

(f) <u>TAX OBLIGATION:</u> User is responsible for the remittance of: (i) any taxes collected by Solidifi and paid to User that may be levied on User's performance and provision of the appraisal, including without limitation, federal, state and local excise, sales, use, goods and services taxes, value added taxes, harmonized sales taxes; and (ii) User's income taxes; and (iii) any taxes or other amounts in lieu thereof or penalties, interest and demands which may be made by any applicable Governmental Authority in respect of such taxes that may be levied on the transactions contemplated herein. To the extent permitted by applicable State law, User agrees to indemnify Solidifi and hold it harmless to the extent of any obligation imposed by law on Solidifi to pay any withholding taxes, social security, workers' compensation insurance, unemployment, or disability insurance or similar items in connection with any payments made to User by Solidifi pursuant to this Agreement.

**6.   USER REPRESENTATIONS**

User hereby represent and warrant to Solidifi that:

(i) User is of legal age and otherwise capable of forming a binding legal contract;

(ii) User has complied with all licensing and regulatory requirements applicable to real estate appraisers in the geographic areas User has listed as part of User's registration form with Solidifi and User is a licensed or certificated real estate appraiser;

(iii) User is and has been in compliance in all material respects with all applicable laws respecting wages and hours, including but not limited to all applicable laws respecting independent contractors and classification of workers;

(iv) the information submitted to Solidifi about User is true, current, complete and accurate; and

(v) for each appraisal that User has submitted for and on behalf of a Purchaser, User is, at all relevant times, an approved appraiser for such Purchaser and authorized by such Purchaser to submit appraisals in the geographic location in which User operates.

**7. OWNERSHIP**

(a) SOLIDIFI'S OWNERSHIP:  User acknowledges and agrees that, as between User and Solidifi, the Website, including Solidifi Values™, User Documentation, and all other software text, graphics, images and other materials used by Solidifi in respect of the Website and any modifications or enhancements thereto (collectively "**Solidifi Materials**") are the Intellectual Property of Solidifi and that Solidifi owns all Intellectual Property Rights therein.  User does not acquire any rights, title or ownership interests of any kind whatsoever, express or implied, in any of the Solidifi Materials.  User shall not copy the Solidifi Materials.

(b) USER OWNERSHIP:  Solidifi acknowledges and agrees that User owns, including all Intellectual Property Rights, all User Content.  Solidifi does not acquire any rights, title or ownership interests of any kind whatsoever, express or implied, in any User Content other than the licenses granted herein.

(c) APPRAISALS:  User acknowledges and agrees that all worldwide right, title and interest in and to the appraisals, including copyright, delivered to Solidifi by User, shall be the sole property of Solidifi and shall be considered "works made for hire".  To the extent that User may, under applicable law, be entitled to claim any ownership interest in the appraisals, and to give effect to the foregoing sentence, User hereby agrees to assign, and does hereby assign, to Solidifi all rights title and interests in and to the appraisals, including copyright.  Solidifi may assign such interest to the Purchaser or direct User to transfer such interest directly to the Purchaser.

**8. CONFIDENTIALITY**

(a) OBLIGATION:  Each Party acknowledges that all Confidential Information consists of confidential, proprietary, and trade secret information of the disclosing Party.  Each Party shall, and shall cause its employees, agents and contractors to hold Confidential Information of the other Party in confidence, and shall use the same degree of care by instruction, agreement or otherwise, to maintain the confidentiality of the other Party's Confidential Information that it uses to maintain the confidentiality of its own Confidential Information, but with at least a reasonable degree of care commensurate with the nature and importance of such Confidential Information.  Each Party agrees not to make use of Confidential Information other than for the exercise of rights or the performance of obligations under this Agreement, and not to release, disclose, communicate it or make it available to any third party other than employees, agents and contractors of the Party who reasonably need to know it in connection with the exercise of rights or the performance of obligations under this Agreement.

(b) SUBPOENA:  In the event that any Party receives a request to disclose all or any part of the Confidential Information under the terms of a valid and effective subpoena or order issued by a court of competent jurisdiction or by a Governmental Authority, such Party agrees to (i) immediately notify the other Party of the existence, terms and circumstances surrounding such a request; (ii) consult with the other Party on the advisability of taking legally available steps to resist or narrow such request; and (iii) if disclosure of such Confidential Information is required, exercise its commercially reasonable efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to such portion of the disclosed Confidential Information which the other Party so designates.

(c) INJUNCTIVE RELIEF:  Each Party acknowledges and agrees that any unauthorized use or disclosure by it of any of the other Party's Confidential Information, in whole or part, will cause irreparable damage to the disclosing Party, that monetary damages would be an inadequate remedy and that

Case No. 1:24-cv-02915-GPG-TPO   Document 85-1   filed 03/28/25   USDC Colorado
pg 12 of 18

11

the amount of such damages would be extremely difficult to measure. The receiving Party agrees that the disclosing Party shall be entitled to seek temporary and permanent injunctive relief in a court of competent jurisdiction to restrain the receiving Party from such unauthorized disclosure or use. Nothing in this Agreement shall be construed as preventing the disclosing Party from pursuing any and all remedies available to it for a breach or threatened breach of a covenant made in this Article 8, including the recovery of monetary damages from the receiving Party.

9. **TERM AND TERMINATION**

(a) TERM: The term of this Agreement shall commence on the Effective Date and shall continue until terminated in accordance with the provisions of this Article 9 (the "**Term**").

(b) CONVENIENCE: Subject to Sections 9(e) and 9(f), either Party may terminate this Agreement for no reason or for any reason by providing the other Party at least thirty (30) days prior written notice, which notice may be provided by Solidifi through a message posted on the Website or by an email to User.

(c) SOLIDIFI'S ADDITIONAL RIGHTS OF TERMINATION: Subject to Sections 9(e) and 9(f), Solidifi may terminate this Agreement and the rights granted hereunder and thereunder without prejudice to enforcement of any other legal right or remedy, immediately upon giving written notice of such termination if User:

(i) infringes the Intellectual Property Rights of Solidifi or breaches any Person's privacy rights; or

(ii) breaches any other provision of this Agreement and such breach continues for a period of ten (10) Business Days after delivery of a written notice by Solidifi requiring User to correct such failure;

(iii) engages in any misconduct or illegal act; or

(iv) becomes or is adjudicated insolvent or bankrupt, admits in writing User's inability to pay User's debts as they mature, or makes an assignment for the benefit of creditors; or User applies for or consents to the appointment of any receiver, trustee or similar officer for it or for all or any substantial part of User's property; or such receiver, trustee or similar officer is appointed without User's consent; or User institutes any bankruptcy, insolvency, reorganization, moratorium, arrangement, readjustment or debt, dissolution, liquidation or similar proceeding relating to User under the laws of any jurisdiction, or any such proceeding is instituted against User and is not dismissed within twenty (20) Business Days; or any judgment, writ, warrant or attachment or execution of similar process is issued or levied against a substantial part of User's property and remains unsatisfied for twenty (20) Business Days.

(d) WAIVER: The waiver by either Party of a breach or default of any provision of this Agreement by the other Party shall not be effective unless in writing and shall not be construed as a waiver of any succeeding breach of the same or of any other provision. Nor shall any delay or omission on the part of either Party to exercise or avail itself of any right, power or privilege by such Party constitute a waiver.

(e) EFFECT OF TERMINATION: Upon the termination of this Agreement for any reason:

(i) User shall download any and all User Content contained on the Website;

(ii) Solidifi shall disable User's Authentication IDs;

    (iii)    User shall destroy any copies of the Authentication IDs in User's possession or control and not access or attempt to access the Website and the Services; and

    (iv)    each Party will return to the other Party all Confidential Information of the other Party which is then in its possession or control.

    User acknowledges and agrees that User's access to the Website will be terminated upon the termination or expiration of this Agreement and that if User fails to download User Content from the Website in a timely manner, User may not have access to such information or such information may be destroyed by Solidifi in accordance with the terms of this Section 9(e). It is User's responsibility to download and obtain all User Content prior to the expiration or termination of this Agreement. Solidifi shall have no responsibility, or any liability to User, for maintaining or providing to User, User Content or any portion thereof after the termination or expiration of this Agreement.

(f)    SURVIVAL OF COVENANTS:  Notwithstanding the termination or expiration of this Agreement for any reason, the covenants set out in this Section 9(f) and in Sections 2(d), 2(e), 4(b)(vi), 9(e) and 18(a) and Articles 7, 8, 10, 11 and 12 of this Agreement shall survive any such termination or expiration.

10.    DISCLAIMERS

(a)    NO WARRANTIES:  THERE ARE NO EXPRESS OR IMPLIED WARRANTIES OR CONDITIONS IN RELATION TO ANY OF THE SERVICES, WEBSITE, SOLIDIFI SYSTEM, INCLUDING SOLIDIFI VALUES™ OR THE USER DOCUMENTATION THAT ARE THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABLE QUALITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT, OR THAT ANY OF THE FOREGOING WILL MEET USER'S NEEDS OR WILL BE AVAILABLE FOR USE AT ANY PARTICULAR TIME OR WILL BE ERROR FREE.  SOLIDIFI DOES NOT PROVIDE AND HEREBY DISCLAIMS ANY REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER.  THE SERVICES, WEBSITE, THE SOLIDIFI SYSTEM, INCLUDING SOLIDIFI VALUES™ AND THE USER DOCUMENTATION ARE PROVIDED ON AN "AS IS" BASIS.

(b)    DISCLAIMER:  User acknowledges and agrees that Solidifi's methods and procedures to secure the Solidifi System may not prevent unauthorized electronic intruders to access the Solidifi System through the Internet or through other form of electronic communication.  If such unauthorized electronic intruders are able to bypass Solidifi's security protocols, firewall and safeguards, such unauthorized electronic intruder may change, delete or otherwise corrupt the contents and data contained in the Solidifi Server, including information and data supplied by User or by others.  Except for the maintenance of appropriate firewall and safeguards that are designed to frustrate access from unauthorized electronic intruders, Solidifi shall not be liable to User, and hereby disclaims responsibility, with respect to any action, destructive or otherwise, by any unauthorized electronic intruder.

11.    INDEMNITY

(a)    INTELLECTUAL PROPERTY INDEMNITY:  Solidifi, at Solidifi's expense, shall defend at its own expense any claim, proceeding or suit (hereinafter referred to in this Article 11 as a "**Claim**") brought against User to the extent such Claim alleges that the use of any of the Service, Website, Solidifi Values™ or User Documentation furnished hereunder infringes any U.S. registered copyright, registered trademark or validly issued patent of a third Person, and will indemnify and pay all damages which

13

by final judgment or settlement may be assessed against User on account of such infringement, provided that Solidifi is given:

(i)     prompt written notice of the Claim or of any allegations or circumstances known to User which could result in a Claim;

(ii)    all reasonable information and assistance from User, at Solidifi's expense, which Solidifi may require to defend the Claim;

(iii)   sole control of the defense of the Claim, and all negotiations for the settlement or compromise thereof; and

(iv)    that the alleged infringement does not result from any non-permitted uses, alterations, modifications or enhancements carried out by User or on User's behalf by a third Person.

If such Claim has occurred, or in Solidifi's opinion is likely to occur, Solidifi may, at its option and expense, either procure for User the right to continue using the infringing item or replace or modify the same so that it becomes non-infringing without loss of functionality, or if none of the foregoing alternatives is reasonably available and at Solidifi's discretion, discontinue the Service and disable access to the Website, the Solidifi System and the User Documentation and terminate this Agreement. The foregoing states the entire obligations of Solidifi with respect to any infringement of Intellectual Property Rights of any third Person.

(b)  USER INDEMNITY:  User, at User's expense, shall defend, indemnify and hold harmless Solidifi, its affiliates, the Purchaser and their respective directors, officers, employees, agents and subcontractors, from and against any Claim brought against them to the extent such Claim: (i) alleges, directly or indirectly that any User Content or other documentation, information or material provided by User to Solidifi infringes the Intellectual Property Rights of any third Person; (ii) relates to or is in respect of the appraisal(s) submitted by User and such Claim alleges that User performed or prepared the appraisal(s) negligently; (iii) in relation to the injury or death of any Person, damage to or destruction of any property sustained by any Person caused by any act or omission on User's part; or (iv) is in relation to User's use of the Services, except to the extent as Solidifi has indemnified User pursuant to Section 11(a).  Solidifi shall provide User with:

(i)     prompt written notice of the Claim or of any allegations or circumstances known to Solidifi which could result in a Claim;

(ii)    all reasonable information and assistance from Solidifi, at User's expense, which User may require to defend the Claim; and

(iii)   sole control of the defense of the Claim, and all negotiations for the settlement or compromise thereof.

(c)  EXCEPTIONS:  One or more of User's indemnities set out in Section 5(f)  or 11(b) may not be permissible under law in certain jurisdictions and therefore, one or more of User's indemnities set out in Section 5(f)or 11(b) may not apply to User.

**12.  LIMITATION OF LIABILITY**

(a)  LIMITATION OF DAMAGES:  IN NO EVENT SHALL SOLIDIFI BE LIABLE FOR ANY LOST REVENUE, LOST PROFITS, LOST SAVINGS, ANY CONSEQUENTIAL, INCIDENTAL, EXEMPLARY, OR PUNITIVE DAMAGES, OR ANY ATTORNEYS' FEES, EVEN IF ADVISED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES.

    (b)    <u>NO LIABILITY:</u>  Solidifi will not be liable to User or any third Person for any loss caused by any of the following: (i) any unintentional deletion, corruption, removal of data, files or material stored on the Website, provided that Solidifi used reasonable efforts to prevent any such deletion, corruption, removal of data, files or material; (ii) removal of any User Content from the Website; or (iii) any instructions for or the results of any appraisals or the appraisals themselves.

    (c)    <u>NO LIEN:</u>  User will not place, or attempt to place any liens, mortgage, hypothec or other security interest on any property associated with any appraisal order delivered through Solidifi's Services.

**13.**    **FORCE MAJEURE**

Except for any obligation to make payments, any delay or failure of either Party to perform its obligations under this Agreement or under any supplemental Term shall be excused if, and to the extent, that the delay or failure is caused by an event or occurrence beyond the reasonable control of the Party and without its fault or negligence, such as, by way of example and not by way of limitation, acts of God, action by any Governmental Authority (whether valid or invalid), fires, flood, wind storms, explosions, riots, natural disasters, wars, terrorist acts, sabotage, labor problems (including lock-outs, strikes and slow downs, except for any labor problems of the Party claiming a force majeure event), or court order or injunction.  In the event that the force majeure event lasts for twenty (20) Business Days or longer, either Party shall have the option to terminate this Agreement upon written notice to the other without liability.

**14.**    **THIRD PARTY BENEFICIARY**

User agrees that each Purchaser for whom User has provided or is requested to provide an appraisal or other product or service is a third party beneficiary under this Agreement and such Purchaser shall have the right to exercise and enforce all of the rights, remedies and terms of this Agreement directly against User, including, without limitation, Sections 4(a)(viii), 4(a)(x), 4(a)(xi), 4(a)(xiv), 4(a)(xv),  4(c), 4(d), 6, 8 and 11(b).

User further agrees that any appraisal or other product or service shall not contain any disclaimers or notices that would affect Purchaser' rights and remedies under this Agreement.

**15.**    **AGREEMENT TO ARBITRATE**

User acknowledges that as part of this Agreement the Parties have mutually agreed that any and all future disputes, claims or controversies between them, whether or not arising out of or relating to any of the provisions of this Agreement, that are not resolved by the Parties' mutual agreement shall be resolved by final and binding arbitration as the exclusive remedy, limited only by those claims deemed non-arbitrable by applicable law.  Thus, all future disputes, controversies or differences which may arise between the parties, whether arising in contract, statute (including but not limited to wage and hour and labor statutes), tort, fraud, misrepresentation, discrimination, retaliation, common law or any other legal theory, including, but not limited to disputes relating to the making, performance or interpretation of this Agreement, including the relationship created by this Agreement, and claims or other disputes arising under any federal, state or local law or regulation, statute, law or ordinance whenever brought, which cannot be resolved by the Parties' mutual agreement shall be resolved by final and binding arbitration as the exclusive remedy in accordance with the Federal Arbitration Act, limited only by those claims deemed non-arbitrable by applicable law.

Either Party may commence the arbitration process by filing a written demand for arbitration with the American Arbitration Association ("AAA") and sending a copy to the other Party listing the claim(s) to be

arbitrated. User may obtain a copy of the AAA Rules by accessing the AAA website. In addition, User may obtain a copy of the AAA Rules by requesting a copy from compliance@solidifi.com. The arbitration shall be conducted in Buffalo, New York by one arbitrator, selected from a list of arbitrators provided by AAA. If the Parties are unable to agree upon an arbitrator from the list provided, then an arbitrator shall be selected in accordance with the procedures of the AAA. The Parties will cooperate in scheduling the arbitration proceedings. The arbitration will be conducted in accordance with the provisions of the applicable AAA rules and procedures in effect at the time of filing of the demand for arbitration. Should a non-Party witness refuse to comply with a subpoena issued by the arbitrator and the arbitrator is unable to enforce compliance with the subpoena, the Parties agree to submit the subpoena to a court of competent jurisdiction for enforcement of the subpoena. The arbitrator is authorized to award any remedy allowed by applicable law. Proceedings to enforce, confirm, modify, set aside or vacate an award or decision rendered by the arbitrator will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 et. seq. or applicable state law. Nothing in this Section shall prohibit or limit either Party from seeking provisional remedies from a court of competent jurisdiction, including but not limited to injunctive relief (and without needing to post any bond or other security) for purposes of enforcing Section 8(c) of this Agreement. The arbitrator's fee will be paid by Solidifi. In addition, where required by law, Solidifi shall pay all costs unique to the arbitration to the extent such costs would not otherwise be incurred in a court proceeding, and User shall not be required to pay any type or amount of expense if such requirement would invalidate this agreement to arbitrate or would otherwise be contrary to the law as it exists at the time of the arbitration. The Parties hereby further agree that should any arbitration or litigation occur between the Parties to enforce or interpret the terms of this Agreement or to resolve a dispute, claim or controversy concerning any provision of this Agreement, the prevailing Party shall be entitled to recover from the non-prevailing Party all of its/his/her reasonable attorneys' fees and costs to the extent that applicable law permits such recovery. Both Parties are bound by this agreement to arbitrate. This does not include disputes, controversies or differences which may not by law be arbitrated, and does not prevent User from participating in a governmental investigation or proceeding by any agency charged with the enforcement of employment laws.

THE PARTIES WAIVE THEIR RIGHT TO HAVE ANY SUCH DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT. THE PARTIES ALSO AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE OR COLLECTIVE PROCEEDING, AS FURTHER SET FORTH IN SECTION 16.

15.1    OPT-OUT

USER HAS THIRTY (30) DAYS AFTER RECEIVING THIS AGREEMENT TO OPT OUT OF ARBITRATION. IF USER OPTS OUT, THEN NEITHER SOLIDIFI NOR USER WILL BE BOUND BY THE TERMS OF ARBITRATION CONTAINED HEREIN. TO OPT OUT USER MUST: (1) NOTIFY SOLIDIFI IN WRITING THAT USER IS OPTING OUT, (2) SIGN THE WRITING; AND (3) EMAIL THE WRITING WITH SIGNATURE TO COMPLIANCE@SOLIDIFI.COM SO THAT SOLIDIFI RECEIVES IT NO LATER THAN THIRTY (30) DAYS AFTER THE DATE USER RECEIVED THIS AGREEMENT. SUCH WRITTEN NOTICE MAY SIMPLY STATE "I WISH TO OPT OUT OF THE ARBITRATION PROGRAM" OR WORDS TO THAT EFFECT. IF NO SUCH NOTICE IS DELIVERED BEFORE THE THIRTY-DAY DEADLINE, THEN THIS AGREEMENT TO ARBITRATE WILL BECOME FULLY EFFECTIVE AND BINDING UPON THE DATE BELOW. IF

USER OPTS OUT, THE DECISION TO DO SO WILL NOT ADVERSELY AFFECT USER'S PROVISION OF SERVICES IN ANY WAY.

**16.   ARBITRATION OF INDIVIDUAL CLAIMS ONLY**

All claims covered by Section 15 must be submitted on an individual basis.  No claims may be arbitrated on a class, collective, or representative basis (except as provided below).  The Parties expressly waive any right with respect to any covered claims to submit, initiate, or participate in a representative capacity, or as a plaintiff, claimant or member in a class action, collective action or other representative or joint action, regardless of whether the action is filed in arbitration or in court.  Any and all disputes regarding Section 16 shall be resolved by the court, and not an arbitrator.

IF EITHER PARTY INITIATES OR JOINS IN A LAWSUIT OR ARBITRATION AGAINST THE OTHER PARTY IN VIOLATION OF THE WAIVERS DETAILED IN SECTION 16.1 AND/OR 16.2 BELOW AND THE WAIVER IS DEEMED TO BE UNENFORCEABLE FOR ANY REASON, THEN TO THE EXTENT THE WAIVER IS INVALIDATED, CLAIMS SUBJECT TO THE INVALIDATED WAIVER SHALL NO LONGER BE SUBJECT TO ARBITRATION, BUT SHALL INSTEAD PROCEED IN COURT, WITH ALL REMAINING CLAIMS REMAINING SUBJECT TO ARBITRATION.

**16.1   NO CLASS OR COLLECTIVE ACTION CLAIMS**

THE PARTIES AGREE THAT EACH MAY BRING AND PURSUE CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES, AND MAY NOT BRING, PURSUE, OR ACT AS A PLAINTIFF OR CLASS MEMBER, IN ANY PURPORTED CLASS OR COLLECTIVE PROCEEDING.  THE PARTIES AGREE THAT A COURT, NOT THE ARBITRATOR, SHALL DETERMINE WHETHER ANY CLAIMS MUST PROCEED ON A CLASS OR COLLECTIVE BASIS.

**16.2   NO REPRESENTATIVE ACTION CLAIMS**

EXCEPT TO THE EXTENT THIS PROVISION IS UNENFORCEABLE AS A MATTER OF LAW, THE PARTIES AGREE THAT EACH MAY BRING AND PURSUE CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES, AND MAY NOT BRING, PURSUE, OR ACT AS A PLAINTIFF IN ANY PURPORTED REPRESENTATIVE PROCEEDING. THE PARTIES AGREE THAT A COURT, NOT THE ARBITRATOR, SHALL DETERMINE WHETHER ANY CLAIMS MUST PROCEED ON A REPRESENTATIVE BASIS. THE PARTIES EXPRESSLY AGREE THAT ANY REPRESENTATIVE CLAIMS THAT ARE FOUND NOT SUBJECT TO ARBITRATION UNDER THIS AGREEMENT SHALL BE RESOLVED IN COURT AND SHALL BE STAYED PENDING THE OUTCOME OF THE ARBITRATION.

**17.   NO VOLUME COMMITMENT**

This Agreement does not obligate User to provide nor commit Solidifi to order any appraisal product or service. Solidifi makes no commitment to User whatsoever, whether in terms of dollar volume or amount or type of appraisal product or service.

**18.   MISCELLANEOUS**

(a)   NOTICE:  Every notice or other communication hereunder shall be deemed to have been duly given and made if in writing and if served by personal delivery upon the Party for whom it is intended, if delivered by registered or certified mail, return receipt requested, or by a national courier service, or if sent by fax (receipt of which is confirmed) to the Person at the address set forth below, or such other address as may be designated in writing hereafter, in the same manner, by such Person:

        To Solidifi U.S. Inc.:

        701 Seneca Street, Suite 660
        Buffalo, NY 14210
        Attention: Compliance Department

        Fax: (866) 666-9442

        To User:

        at the address, fax number or email address provided by User upon registering for
        the Service.

Any such notification shall be deemed delivered (a) upon receipt, if delivered personally, (b) on the next Business Day, if sent by national courier service for next Business Day delivery or if sent by fax or by email.

(b)    FURTHER ASSURANCES: Each Party shall take such action (including, but not limited to, the execution, acknowledgement and delivery of documents) as may reasonably be requested by the other Party for the implementation or continuing performance of this Agreement.

(c)    ENUREMENT: This Agreement shall enure to the benefit of and be binding upon each of the Parties hereto and their permitted successor and assigns.

(d)    ASSIGNMENT: Neither this Agreement nor any of the rights or obligations hereunder may be assigned by either Party without the prior written consent of the other Party, except, but with prior written notice, to a wholly-owned subsidiary of a Party or an entity which acquires all or substantially all of the assets and business of the assigning Party by merger, sale of assets or otherwise, provided such party agrees in writing to be bound by the terms of this Agreement and such party is not a competitor of the other Party.

**19. ACKNOWLEDGEMENT**

By selecting the phrase "I Agree" below, User agrees: (1) that User has read the terms stated above; (2) User understands the terms stated above; (3) User intends to form a legally binding contract by selecting the phrase "I Agree"; (4) a printout of the terms stated above will constitute a "writing" under any applicable law or regulation; and (5) User agrees to abide by all the terms of the Agreement stated above.