**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA,

Plaintiff,

FRANCESCA CHEROUTES,

Intervening Plaintiff,

v.

ROCKET MORTGAGE, LLC;
SOLIDIFI U.S. INC.;
MAKSYM MYKHAILYNA; and
MAVERICK APPRAISAL GROUP INC.,

Defendants.

---

**DEFENDANT ROCKET MORTGAGE, LLC'S MOTION**
**TO DISMISS THE INTERVENOR'S COMPLAINT**

---

## TABLE OF CONTENTS

Page

BACKGROUND .......... 2
STANDARD OF LAW .......... 3
ARGUMENT .......... 4
I. Cheroutes's claims fail for the same reasons as the government's. .......... 4
II. Cheroutes's addition of a Section 1981 claim does not change anything. .......... 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adetoro v. King Abdullah Acad.*,
585 F. Supp. 3d 78 (D.D.C. 2020) .......... 11

*Akyar v. TD Bank US Holding Co.*,
No. 18-379, 2018 WL 4356734 (S.D.N.Y. Sept. 12, 2018) .......... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 9, 11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4, 9, 11

*Chavez v. McDonald's Corp.*,
No. 19-0164, 2020 WL 1322864 (D. Colo. Mar. 20, 2020) .......... 10

*Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*,
589 U.S. 327 (2020) .......... 8, 11

*Cruz v. Farmers Ins. Exch.*,
42 F.4th 1205 (10th Cir. 2022) .......... 8, 9

*Duran v. Cmty. First Bankshares, Inc.*,
92 F. App'x 756 (10th Cir. 2004) .......... 8

*FHFA v. Nomura Holding Am., Inc.*,
104 F. Supp. 3d 441 (S.D.N.Y. 2015) .......... 4

*Galindo v. Taylor*,
723 F. Supp. 3d 1008 (D. Kan. 2024) .......... 11, 12

*Hood v. Midwest Sav. Bank*,
95 F. App'x 768 (6th Cir. 2004) .......... 7

*Jackson v. Marion Cnty.*,
66 F.3d 151 (7th Cir. 1995) .......... 6

*Jerome v. Hertz Corp.*,
15 F. Supp. 3d 1225 (M.D. Fla. 2014) .......... 10

*Johnson v. CMC Prop. Leasing*,
No. 12-1309, 2012 WL 6025601 (D. Kan. Dec. 4, 2012) .......... 6, 9

*Reynolds v. Sch. Dist. No. 1, Denver, Colo.*,
69 F.3d 1523 (10th Cir. 1995) .......... 9

*Scherer v. Mission Bank*,
34 F. App'x 656 (10th Cir. 2002) .......... 7

*Vanterpool v. Fed'n of Chiro. Lic. Bds.*,
No. 22-1208, 2022 WL 16635391 (D. Colo. Nov. 2, 2022) .......... 9

*Yusuf v. Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994) .......... 11

**Statutes & Rules**

15 U.S.C. § 1639e .......... 5

42 U.S.C. § 1981 .......... *passim*

42 U.S.C. § 3605 .......... 1, 3, 7

42 U.S.C. § 3617 .......... 1, 3, 7

FED. R. CIV. P. 12 .......... 1, 2, 4

**Other Authorities**

Fannie Mae Selling Guide (Feb. 5, 2025) .......... 10

Freddie Mac Single-Family Seller/Servicer Guide (Oct. 31, 2024) .......... 11

HUD Mortgagee Letter 2024-07 (May 1, 2024) .......... 10

HUD Mortgagee Letter 2025-08 (Mar. 19, 2025) .......... 2, 10

Plaintiff-Intervenor Francesca Cheroutes's Complaint ("IC," ECF No. 70) asserts the same defective claims for violation of Sections 3605 and 3617 of the Fair Housing Act, based on the same defective allegations, as the government's complaint ("Compl.," ECF No. 1). In fact, Intervenor's Complaint expressly incorporates the FHA-related claims and allegations in the government's Complaint by reference. IC ¶¶ 1 n.1, 30. On December 4, 2024, Rocket Mortgage moved to dismiss the government's Complaint pursuant to FED. R. CIV. P. 12(b)(6). *See* ECF No. 28. That pending motion applies with equal force to Intervenor's identical FHA claims and demonstrates that they, too, must be dismissed.

This is primarily because, in this case about purported discrimination by an independent, licensed, third-party appraiser (Defendant Maksym Mykhailyna), neither the government nor Intervenor has pled (or can plead) the requisite plausible factual allegations necessary to state a cognizable claim against Rocket Mortgage for *the appraiser's* alleged misconduct. *Id*. This is not surprising, because Rocket Mortgage was not responsible for—and had no control over—the appraiser or his appraisal as a matter of law. *Id*. Federal regulations require that an appraisal be based on the independent judgment of the appraiser and expressly preclude lenders like Rocket Mortgage from taking action to attempt to influence that independent judgment. *Id*.

For this reason, the predicate allegation for the government's and Intervenor's FHA claims here—*i.e.*, that Rocket Mortgage failed to exercise its purported "authority to correct" the challenged appraisal in response to Cheroutes's claim that it was discriminatory (Compl. ¶ 149; IC ¶ 24)—is demonstrably false and unsustainable. As a matter of law, Rocket Mortgage indisputably had no such authority because the government's own regulations *made sure* it had no such authority. That's why a former state Attorney General

criticized this lawsuit for resting on "a fatal flaw" and for threatening "a dangerous new precedent . . . directly contrary to a central tenet of the Dodd-Frank Wall Street Reform and Consumer Protection Act—appraiser independence." ECF No. 28 at 2–3.

And indeed, just last week, the U.S. Department of Housing and Urban Development—the government department responsible for the FHA and its enforcement—reinforced its position on appraiser independence by rescinding certain of its prior policies aimed at addressing purported appraisal bias like that alleged here. *See* HUD Mortgagee Letter 2025-08 (Mar. 19, 2025). But perhaps more significant than the policies HUD rescinded is one that it reaffirmed: that, contrary to Cheroutes's allegation that it discriminated against her by telling her that the way to challenge an appraisal was to submit alternative sales comparisons to the appraiser (IC ¶ 25), lenders are *supposed* to address complaints like Cheroutes's by doing exactly that. *See* Mortgagee Letter 2025-08 at 3–4.

In addition to her defective FHA claims, Intervenor also adds an extraneous claim styled as "Discrimination in Contracting" under 42 U.S.C. § 1981, which the government did not see fit to assert. But, as demonstrated below, that claim also must be dismissed because it rests on the same defective legal theories and factual allegations as the FHA claims. In the end, Intervenor's complaint adds nothing new at all. The claims against Rocket Mortgage should therefore be dismissed.

**BACKGROUND**[1]

Cheroutes's allegations closely track the government's, and her complaint purports to "incorporate[] by reference" "the entirety" of the government's complaint. IC ¶ 1 n.1.

[1] As it is required to do for purposes of this motion under FED. R. CIV. P. 12(b)(6), Rocket Mortgage treats the well-pleaded factual allegations in the Intervenor complaint as true. Rocket Mortgage, however, reserves its right to contest all of the factual allegations in the complaint in the event this matter proceeds beyond the pleading stage (and it should not).

Thus, in the interest of brevity and efficiency, Rocket Mortgage likewise incorporates the entirety of its prior motion to dismiss and refers the Court to that motion for a full statement of the pertinent background facts. *See* ECF No. 28 at 4–6.

Briefly, both Complaints describe Cheroutes's effort to refinance her mortgage loan in January 2021, Rocket Mortgage's engagement of a third-party appraisal-management company to hire an independent appraiser to value the property, and Cheroutes's accusation that the appraiser rendered a valuation too low to support the loan in order to discriminate against her. *See id.*; IC ¶¶ 1, 14. Both Complaints describe how Rocket Mortgage's team members responded to Cheroutes's customer-service complaint by telling her how to challenge the appraisal, including by providing alternative sales comparisons for the independent appraiser to consider. Compl. ¶ 125; IC ¶ 25. Neither Complaint alleges that Cheroutes did anything to pursue this challenge (and she did not).

Against this background and as the core predicate for the claim against Rocket Mortgage, Cheroutes alleges—just like the government (Compl. ¶ 149)—that Rocket Mortgage "had the authority and/or obligation to confirm and/or correct the appraisal." IC ¶ 24. She alternatively suggests that Rocket Mortgage should have "use[d] a second appraisal" or "rel[ied] on additional comparable properties." IC ¶ 24. She labels Rocket Mortgage's alleged "refus[al]" to do so an act of discrimination and retaliation in purported violation of 42 U.S.C. §§ 3605 and 3617, which also somehow deprived her of her civil right to "make and enforce contracts" in purported violation of 42 U.S.C. § 1981.

## STANDARD OF LAW

A complaint must be dismissed where it fails to allege "plausible" facts which, if true, provide grounds for relief, taking into account any "obvious alternative explanation" for the conduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007); FED. R.

CIV. P. 12(b)(6). In determining whether the complaint suffices to state a claim, the Court assesses whether it contains sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Id*. at 555. The factual allegations must "plausibly suggest[] (not merely [be] consistent with)" a valid claim. *Id*. at 557. In a complaint alleging "purposeful discrimination" such as this one, the plaintiff must plead facts (not conclusory assertions) that plausibly suggest "a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' the action's adverse effects upon an identifiable group." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009).

## ARGUMENT

### I. Cheroutes's claims fail for the same reasons as the government's.

As already shown in its motion to dismiss the government's substantially identical FHA claims, the core theory underlying those claims in both complaints—that Rocket Mortgage "had the authority" to "correct" Mykhailyna's appraisal—is false. Rocket Mortgage had no such authority to "correct" the appraisal, because federal law (i) strictly prohibited lenders from doing anything to "influence" an appraiser or an appraisal result, and instead (ii) required that an appraisal must be based only on the "independent judgment" of the appraiser. See ECF No. 28 at 8 (citing 15 U.S.C. § 1639e(b)(1), (3); 12 C.F.R. § 1026.42(c)(1)).

Congress and the CFPB adopted these requirements intending to protect consumers just like Cheroutes. They came about in response to a series of complaints by appraisers, private plaintiffs, and government agencies that lenders were "pressur[ing]" appraisers to return valuations high enough to close the loans, putting borrowers at risk of finding themselves dangerously underwater on their loan obligations. *Id.*; *FHFA v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 462 (S.D.N.Y. 2015). Prohibiting lenders from

doing anything to interfere with the appraiser's "independent judgment" (15 U.S.C. § 1639e) was intended as a consumer-protection measure.

Perhaps recognizing this, Cheroutes makes two alternative suggestions to the notion that Rocket Mortgage had the "authority" to "correct the appraisal." The first is that Rocket Mortgage should have "use[d] a second appraisal." IC ¶ 24. The government itself wisely avoided pleading this theory, because the government knows that (i) Rocket Mortgage had no legal obligation to do so based upon Cheroutes's assertion of discrimination; and (ii) if Rocket Mortgage had done so, it would have exposed itself to the same complaints of unlawful appraisal practices and interference with appraiser independence that the government itself asserted in a prior lawsuit against Rocket Mortgage (f/k/a Quicken Loans). Indeed, in that 2015 case about Rocket Mortgage's appraisal practices, the government alleged that Rocket Mortgage engaged in misconduct by seeking "additional value[s]" and "second opinion appraisal[s]" when original appraisals failed to support loan amounts. Compl., *United States v. Quicken Loans*, *Inc*., No. 15-0613, ECF No. 1 ¶¶ 134–36 (D.D.C. filed Apr. 23, 2015) (describing denial of a "second opinion appraisal" because "FHA will already be aware of this appraisal" and second appraisal would leave loan "not insurable").

Cheroutes's other suggestion is that Rocket Mortgage should have "rel[ied] on additional comparable properties in order to rely" on a valuation other than Mykhailyna's allegedly "discriminatory" valuation. IC ¶ 24. Cheroutes, but not the government, omits mentioning that Rocket Mortgage had offered to do just that. *See* Compl. ¶ 125 ("Ms. CanoBaca also stated that Ms. Cheroutes could provide her own sales comps for the appraisal"). Neither the government nor Cheroutes alleges that she did anything to pursue

this option. Cheroutes should not be permitted to overcome a motion to dismiss through the artful-pleading tactic of conveniently omitting to mention the fact that defeats her claim. *See*, *e.g.*, *Jackson v. Marion Cnty.*, 66 F.3d 151, 154 (7th Cir. 1995) (where "the plaintiff alleges extensive facts but leaves out one fact that is critical to his claim, . . . the court is apt to infer that the fact is adverse to the plaintiff").

Put simply, Cheroutes, like the government, cannot as a matter of law plead that Rocket Mortgage violated the Fair Housing Act by *refraining* from violating the appraiser-independence statutes.

The FHA claims are also legally infirm on their own terms. As already briefed, *both* claims require discriminatory intent on Rocket Mortgage's part. *See* ECF No. 28 at 9–13. And Cheroutes, like the government, alleges none, except in conclusory boilerplate that does not even distinguish one Defendant from another. *See* IC ¶ 35 ("Intentional discrimination and/or discrimination motivated Defendants' undervaluation of Ms. Cheroutes' home. . . ."). Neither the group-pleading tactic nor the conclusory statements can overcome a motion to dismiss. *See*, *e.g.*, *Johnson v. CMC Prop. Leasing*, No. 12-1309, 2012 WL 6025601, at *4 (D. Kan. Dec. 4, 2012) ("In determining whether the [] complaint plausibly alleges discriminatory intent, the court first identifies those unsupported conclusory statements that should be disregarded."). Dispositively, the only factual claims of discriminatory intent are asserted against *the appraiser*—though even here Cheroutes omits the factual content that appears in the government's complaint supporting her belief that the appraiser discriminated against her. *Compare* IC ¶ 14 *with* Compl. ¶¶ 62, 69 *et seq*. In either event, neither Cheroutes nor the government plead anything about *Rocket Mortgage*'s intent, and there is not a shred of factual content in either complaint that Rocket

Mortgage or its team members were motivated by anything other than their business goals of responsible mortgage lending.

With no direct claims of discriminatory intent, Cheroutes can only survive dismissal by pleading it indirectly, but fails to plead the essential elements of doing so—*viz*., that (i) she "met all relevant qualifications" for the loan, (ii) Rocket Mortgage refused the loan "despite" this, and (iii) it "continued to do business with other parties with the same qualifications." *Scherer v. Mission Bank*, 34 F. App'x 656, 658 (10th Cir. 2002). Cheroutes alleges nothing at all about any of these elements, but the inference raised by her Complaint is the same inference raised by the government's—that Cheroutes did *not* meet all relevant qualifications for the loan due to the low appraisal, but that it was Cheroutes, not Rocket Mortgage, who refused the options offered to address this and proceed with the loan. As the government alleged (and Cheroutes incorporates by reference), her loan application faltered because of the "low appraised value"—not because of her race or because she made any discrimination complaints. Compl. ¶ 123. "This is a problem that could arise regardless of the race of the applicant," and is not enough to support the theory that Rocket Mortgage acted "based on . . . h[er] race." *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 777 (6th Cir. 2004).

This failure forecloses both the Section 3605 and the Section 3617 claims asserted by Cheroutes. *See* IC ¶ 32; ECF No. 28 at 13. The Section 3617 retaliation claim fails for several additional reasons besides. In addition to discriminatory intent, the claim requires Cheroutes to plead coercion, intimidation, threats, or a "pattern of harassment." ECF No. 28 at 13–14 (quoting *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)). Again, Cheroutes makes no effort to plead these elements except in boilerplate. *See* IC ¶¶ 35–

36 (alleging that "cancellation of her loan application . . . constituted coercion, intimidation, threat to, or interference"). Even with all reasonable inferences drawn in Cheroutes's favor, the facts alleged here are *nothing* like the situation that retaliation claims are meant for, *i.e.*, where the defendant is so intent on perpetuating discrimination that it threatens those who report it. Nothing alleged in either complaint permits an inference that Rocket Mortgage was intent on anything other than treating Cheroutes with the same high levels of customer service with which it would have treated anybody. And, in any event, a plaintiff cannot coherently claim that *the very same act* is both (i) the discriminatory act and (ii) retaliation for complaining about the discriminatory act. *See* ECF No. 28 at 14 n.7.

## II.   Cheroutes's addition of a Section 1981 claim does not change anything.

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Duran v. Cmty. First Bankshares, Inc.*, 92 F. App'x 756, 761 (10th Cir. 2004). Cheroutes's addition of this claim, not asserted by the government, provides no legitimate basis to allow her Complaint to proceed against Rocket Mortgage.

The claim is defectively pled. As with Cheroutes's FHA claims, an essential element of a Section 1981 claim is that "the defendant intended to discriminate on the basis of race." *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022) (citing *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001)). Thus, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 589 U.S. 327, 341 (2020). Cheroutes has not pled (because she cannot) either of these things. She does not plead discriminatory intent except in invalid, conclusory terms, and does not plead that race (as opposed to lack of qualification for the loan) was a "but for" cause of the loan cancellation about which she complains.

It is well settled that Section 1981 can be violated only by "intentional or purposeful discrimination." *Vanterpool v. Fed'n of Chiro. Lic. Bds.*, No. 22-1208, 2022 WL 16635391, at *5 (D. Colo. Nov. 2, 2022) ("To make out a claim under § 1981, a plaintiff must show intentional or purposeful discrimination against her."); *accord*, *e.g.*, *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995). As with her FHA claims, however, Cheroutes alleges no intentional discrimination except in conclusory boilerplate. *See*, *e.g.*, IC ¶ 12 (accusing Rocket Mortgage of "intentionally . . . cancel[ing] her loan application because she spoke out about her concerns"), ¶ 50 ("Defendants' conduct was intentional, willful, and taken in reckless disregard of Ms. Cheroutes' federally protected rights."). Such conclusory statements "should be disregarded" and are insufficient to sustain Cheroutes's pleading burden as a matter of law. *Johnson*, 2012 WL 6025601, at *4. They also need not be credited given the "obvious alternative explanation," affirmatively alleged by both Cheroutes and the government, that the loan application got canceled because of the "low appraised value" and Cheroutes's refusal to pursue a challenge to it, not because Cheroutes "spoke out" about anything. *Twombly*, 550 U.S. at 555 ; Compl. ¶ 123. There is no plausible claim of discriminatory intent when all the allegations of intent as to Rocket Mortgage are conclusory and there is no *factual* basis for presuming that Rocket Mortgage or its team members did anything "because of" race. *Iqbal*, *supra*.[2]

---

[2] To the extent Cheroutes is suggesting that Rocket Mortgage is liable for any alleged discrimination by Defendant Mykhailyna as an "agent for . . . Rocket Mortgage" (IC ¶ 14), that does not save her claims either. Mykhailyna is *not* an agent of Rocket Mortgage as a matter of law. Agency requires control. *Cruz*, 42 F.4th at 1212 (citing RESTATEMENT (THIRD) OF AGENCY § 1.01)). As already shown and as Cheroutes affirmatively admits, Mykhailyna worked subject to "federal law . . . regarding appraisal independence" that ensured Rocket Mortgage lacked that level of control. IC ¶ 16. Cheroutes pleads no factual allegations sufficient to establish the requisite "control." And even if she had, liability cannot be vicariously imposed on Rocket Mortgage without discriminatory intent on its

Cheroutes's complaint is full of contradictions that render her Section 1981 claim implausible. For example, on one hand, she asserts that Rocket Mortgage did nothing to assist her in obtaining a value reconsideration for the low appraisal. IC ¶ 25. In the same paragraph, she concedes that Rocket Mortgage *did* offer her the opportunity to get the valuation reconsidered by providing "her own sales comps." *Id*. Cheroutes confirms she never did so and takes offense at the very suggestion, which she regards as "task[ing] [her] with an appraiser's work" and a source of "additional and significant emotional distress." *Id*. Cheroutes also complains that the additional sales comps would "*be evaluated by Defendant Mykhailyna*, the person who discriminatorily dismissed her" in the first place (*id*. (emphasis in original)), but no inference of discrimination can be drawn from this because it is fully consistent with federal policy. *See* HUD Mortgagee Letter 2024-07 at 3–4 (May 1, 2024) ("A second appraisal may only be ordered if . . . the first appraisal is materially deficient *and the Appraiser is unable or uncooperative in resolving the deficiency*.") (emphasis added); HUD Mortgagee Letter 2025-08 at 3–4 (same); *Fannie Mae Selling Guide*, at B4-1.3-12 (Feb. 5, 2025) ("the lender may obtain a second or subsequent appraisal report" only if "material deficiencies identified in the appraisal report are not corrected or addressed by the appraiser upon request"); Freddie Mac Single-Family Seller/Servicer Guide at 5604.4(b) (Oct. 31, 2024) (same).

---

part. *See*, *e.g.*, *Chavez v. McDonald's Corp.,* No. 19-0164, 2020 WL 1322864, at *3 (D. Colo. Mar. 20, 2020) ("[A]n entity held to be an employer must actually participate in the allegedly discriminatory action to be liable under § 1981."); *Jerome v. Hertz Corp.,* 15 F. Supp. 3d 1225, 1234 (M.D. Fla. 2014) ("[A] plaintiff cannot bring a cause of action pursuant to Section 1981 against an individual not personally involved."). There are, as noted, no such factual allegations as to Rocket Mortgage's intent.

In any event, Cheroutes does not allege any facts plausibly suggesting that the option Rocket Mortgage offered her for obtaining a value reconsideration was motivated by racial animus, or indeed that it differs in any way from the option Rocket Mortgage offers any other applicant in Cheroutes's situation, regardless of race. This failure is dispositive. Cheroutes cannot survive dismissal without pleading that race was a "but for" cause of "the loss of a legally protected right." *Comcast*, 589 U.S. at 341. "That is, a plaintiff must demonstrate that race didn't just play[ ] some role in the defendant's decision-making process"; rather, a plaintiff must plausibly allege that "race explained plaintiff's injuries." *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1025–26 (D. Kan. 2024) (internal quotation marks omitted); *accord Iqbal*, *supra*. But there is no plausible basis in her Complaint for inferring that "but for" racial animus, Rocket Mortgage would have done anything different. Absent from the Complaint, for example, are any allegations that Rocket Mortgage "correct[ed]" other appraisals in similar circumstances. IC ¶ 24. Meanwhile, the Complaint affirmatively alleges by reference to the government's Complaint that the reason for the loan cancellation was the "low appraised value," Compl. ¶ 123, which, as already noted, furnishes an "obvious alternative explanation" for the loan cancellation. *Twombly*, *supra*; *see also*, *e.g.*, *Adetoro v. King Abdullah Acad.*, 585 F. Supp. 3d 78, 84 (D.D.C. 2020) (dismissing Section 1981 claims because the complaint "allege[d] other, nondiscriminatory explanations for [plaintiffs'] terminations," such as low performance and financial reasons); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (affirming dismissal of § 1981 claim where plaintiff failed to provide factual support for "naked allegation" of discrimination but did allege several nondiscriminatory reasons for the resulting action); *Galindo*, 723 F. Supp. 3d at 1027 ("The [] Complaint fails to allege plausibly that

[the defendant] intended to discriminate on the basis of race, and that, but for racial animus, [the defendant] would've behaved differently.").

Simply put, had Cheroutes *not* made the discrimination complaint, Rocket Mortgage would *still* have needed to adjust the loan terms due to the "low appraised value" of the property, and if she refused to move forward with those new terms, it would *still* have had to cancel her loan application for the same reason. *See* Compl. ¶¶ 119, 123.

The bottom line is that Cheroutes's complaint fails to plausibly allege that Rocket Mortgage interfered with Cheroutes's right "to make and enforce contracts" at all, much less for reasons of racial animus. Rather, her and the government's allegations demonstrate that Cheroutes was afforded the same right to enter into a loan refinancing as anybody else. A condition of that agreement, for Cheroutes as for anyone else, was an appraisal capable of supporting the loan amount. Compl. ¶ 2 ("This required an appraisal."). When the appraisal came in lower than expected, Cheroutes *still* had an opportunity "to make and enforce contracts" with Rocket Mortgage, just based on "a revised written loan estimate" that Plaintiffs allege had "less favorable terms." *Id*. ¶ 120. But those "less favorable terms" were just the automatic consequences of the appraised value, *id*., and Rocket Mortgage offered her the same reconsideration-of-value option it provides to all potential borrowers, consistent with federal requirements—including HUD's specific requirements: submitting alternative "sales comps." *Id*. ¶ 125; IC ¶ 25. So, Rocket Mortgage gave her every opportunity "to make and enforce contracts" on the same terms as anybody else. No facts are pled that would permit an inference that it did anything "because of" race. *Iqbal*, *supra*.

Failing to satisfy the underwriting requirements for a loan or failing to comply with the procedures for completing a loan application does not amount to being deprived of one's civil rights to enter into a contract. *See Akyar v. TD Bank US Holding Co.*, No. 18-379, 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018) ("A complaint that identifies other possible motives . . . for a defendant's action and that does not contain specific facts suggesting discriminatory animus contradicts a claim of racial [or ethnic] discrimination.") (citations omitted). Cheroutes had every such right but chose a lawsuit instead. But since her Complaint fails to plead the basic elements of her Section 1981 claim, it should be dismissed.

Respectfully submitted this 28th day of March, 2025, by Defendant Rocket Mortgage, LLC, through its attorneys,

s/ *Brooks R. Brown*
Brooks R. Brown
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, Mass. 02210
(617) 570-1000
bbrown@goodwinlaw.com

Jacob Hollars
SPENCER FANE LLP
1700 Lincoln St., Ste. 2000
Denver, Colo. 80203
(303) 839-3707
JHollars@spencerfane.com

Keith Levenberg
Angelica Rankins
GOODWIN PROCTER LLP
1900 N. St., N.W.
Washington, D.C. 20036
(202) 346-4000
klevenberg@goodwinlaw.com
arankins@goodwinlaw.com

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH
344 N. Old Woodward Ave., Ste. 200
Birmingham, Mich. 48009
(248) 864-4000
jmorganroth@morganrothlaw.com

*Attorneys for Defendant Rocket Mortgage, LLC*

**CERTIFICATE OF COMPLIANCE: D.C.COLO.LCivR 7.1(a) AND GPG CIV. PRACTICE STANDARD 7.1B(b)**

Undersigned counsel certifies that Rocket Mortgage's counsel conferred with Intervening Plaintiff's counsel, in good faith, by telephone, about the relief sought herein, and Intervening Plaintiff's counsel indicated non-consent to such relief.

s/ *Brooks R. Brown*
Brooks R. Brown

Date: March 28, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of March, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ *Brooks R. Brown*
Brooks R. Brown