IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA, et al.,

    Plaintiffs,

v.

ROCKET MORTGAGE, LLC, et al.;

    Defendants.

**RESPONSE TO DEFENDANT ROCKET'S
MOTION TO DISMISS INTERVENOR'S COMPLAINT [ECF #86]**

**I.    INTRODUCTION**

Intervenor Plaintiff, Francesca Cheroutes, a Black woman, wants and deserves to enjoy the American dream of home ownership and its rewards, free from discrimination. Both the Fair Housing Act ("FHA"), 42 U.S.C. § 3601–3619, and 42 U.S.C. § 1981 entitle her to do so.

In 2021, Ms. Cheroutes sought to refinance her home in order to capitalize on remarkably low interest rates and the rising value of her property. [ECF #70], ¶ 1. She contacted Defendant Rocket Mortgage, LLC ("Rocket"). [ECF #1][1], ¶ 2. Defendant Rocket then contracted with Defendant Solidifi U.S. Inc. ("Solidifi"), an appraisal management company, which arranged for one of its appraisers, Defendant Maksym Mykhailyna (CEO of Defendant Maverick Appraisal Group Inc. ("Maverick")) to perform the appraisal ("the Subject Appraisal"). *Id.* at ¶¶ 3, 13, 31,

---

[1] The Intervenor Complaint incorporated the entirety of the United States' Complaint. *See* [ECF #70], p. 1 n.1 and ¶¶ 6, 8, 30, 41. Thus Defendant Rocket's characterization of the Intervenor Complaint as omitting information the government includes, [ECF #86], at 6-7, and comparison of the two pleadings, *see generally id.*, is mistaken and misleading. Further, Ms. Cheroutes incorporates the entirety of the United States' Response, [ECF #50], to Defendant Rocket's Motion to Dismiss its Complaint, [ECF #28] in her present filing.

1

43-45; *see also* [ECF #70], ¶ 9. In the Subject Appraisal, Defendants Mykhailyna and Maverick intentionally and significantly undervalued Ms. Cheroutes' home, because she is Black. [ECF #1], ¶¶ 2-8, 23-34, 42-135; [ECF #70], ¶¶ 1, 9-19, 21-26.

Ms. Cheroutes immediately contacted Defendant Rocket, telling several of its agents that the Subject Appraisal was discriminatory and providing numerous bases for her observation. [ECF #1], ¶¶ 2, 65, 69-74, 107, 113-17, 124-27. Defendant Rocket's agents could tell based on the information provided that Defendant Mykhailyna undervalued Ms. Cheroutes' home because she is Black, *id.* at ¶¶ 115, 130, but Defendant Rocket refused to correct the appraisal, use a second appraisal, rely on additional comparable properties, or otherwise utilize a non-discriminatory appraisal to process Ms. Cheroutes' loan estimate, despite its obligation to do so. *Id.* at ¶¶ 44, 131; [ECF #70], ¶ 18. Instead, Defendant Rocket relied on the discriminatory Subject Appraisal to generate and offer Ms. Cheroutes less favorable loan estimate terms. Rocket threatened that if she continued to speak out about her discriminatory treatment, it would cancel her loan application; when Ms. Cheroutes persisted in objecting to the discrimination, Rocket retaliated by doing so. [ECF #1], ¶¶ 119, 121-23; [ECF #70], ¶¶ 12-13.

Because the Intervenor's Complaint, [ECF #70], adequately alleges that Defendant Rocket's actions in relying on the discriminatory Subject Appraisal to generate and offer less favorable loan estimate terms, and cancelling her loan application in retaliation for opposing that discrimination, violated Ms. Cheroutes' rights under the FHA and Section 1981, its motion to dismiss, [ECF #86], should be denied in its entirety.

## II. FACTUAL ALLEGATIONS

Defendants Mykhailyna and Maverick significantly intentionally and significantly undervalued Ms. Cheroutes' home in the Subject Appraisal, because she is Black. *See* [ECF #1],

¶¶ 2-8, 23-34, 42-135; [ECF #70], ¶¶ 1, 14, 21. The United States clearly articulated facts demonstrating Defendant Rocket's liability under Section 3605 of the FHA for relying on the discriminatory Subject Appraisal, as well as under Section 3617 for retaliating against Ms. Cheroutes when she expressed her good faith opposition to her discriminatory treatment. The Intervenor's Complaint incorporated those pleadings and further alleged that Defendant Rocket violated Section 1981 because through those acts, it "denied Ms. Cheroutes, a Black woman, the same right to make and enforce contracts . . . as is enjoyed by white citizens . . . and citizens who do not engage in legally protected opposition to discrimination." [ECF #70], ¶¶ 48-49.

As alleged, Ms. Cheroutes was appalled by the discriminatory Subject Appraisal and immediately contacted Defendant Rocket. [ECF #1], ¶¶ 113-14. She spoke with five different Defendant Rocket agents, each time articulating her observation that the Subject Appraisal was discriminatory. *Id.* at ¶¶ 113-17, 124-27. She provided numerous evidentiary bases, including but not limited to that Defendant Mykhailyna had treated her with hostility; the Subject Appraisal was 25 percent lower than another appraisal of the same home done less than a year prior; and the Subject Appraisal contained numerous errors, irregularities, and departures from industry standards. *Id.* at ¶¶ 4, 5, 59-67, 65, 69-74, 107, 113-17, 124-27. Among those errors, Defendant Mykhailyna based his appraisal exclusively on duplex sales in areas with significantly higher percentages of Black residents than Ms. Cheroutes' area, *id.* at ¶¶ 82-92, and listed a school with a significantly higher percentage of Black students than the school serving her neighborhood, *id.* at ¶ 104. Defendant Rocket's own agent acknowledged that the decrease in value from the previous appraisal made no sense, *id.* at ¶ 115. That Defendant Rocket agent and the four others Ms. Cheroutes spoke with could tell based on the information provided that Defendant Mykhailyna undervalued Ms. Cheroutes' home because she is Black, *id.* at ¶¶ 115, 130.

3

Ms. Cheroutes repeatedly requested that Defendant Rocket obtain a new, non-discriminatory appraisal. *Id.* at ¶¶ 115, 121. Defendant Rocket refused to correct the appraisal, use a second appraisal, rely on additional comparable properties, or otherwise utilize a non-discriminatory appraisal to process Ms. Cheroutes' loan, despites its obligation to do so. *Id.* at ¶¶ 44, 131; [ECF #70], ¶¶ 18, 24-25. It did not even relay Ms. Cheroutes' concerns to Defendants Mykhailyna, Maverick, or Solidifi. [ECF #1], ¶¶ 128, 131. Notably, though, Defendant Rocket *did* ask Defendant Mykhailyna to correct an unrelated error in the appraisal. *Id.* at ¶ 131. Defendant Rocket's only response to Ms. Cheroutes' outcries was to task her with an appraiser's work by providing her own comparable properties, *to be evaluated by Defendant Mykhailyna*, the person who had treated her with palpable disdain, and undervalued her home. *Id.* at ¶ 125; [ECF #70], ¶ 25. Defendant Rocket's dismissals and gaslighting directive to revictimize herself caused additional distress, beyond the discriminatory Subject Appraisal's own immense economic and emotional damage. [ECF #70], ¶¶ 20-22, 25-26; [ECF #1], ¶¶ 132-135.

Despite Ms. Cheroutes' repeated and substantiated reports of discrimination, Defendant Rocket intentionally chose to rely on the discriminatory Subject Appraisal, and generated and offered Ms. Cheroutes less favorable loan estimate terms. [ECF #1], ¶ 120; [ECF #70], ¶¶ 18, 24-25. When she continued to protest against this discriminatory treatment, Defendant Rocket retaliatorily cancelled her loan application. *Id.* at ¶¶ 119, 121-23; [ECF #70], ¶¶ 12-13.

Defendant Rocket's discrimination and retaliation against Ms. Cheroutes are not isolated incidents, but, rather, part of a widespread pattern of racial bias in home appraisals, warranting an award of punitive damages to punish Defendant Rocket and deter others in the appraisal, refinancing, and real estate industries from similar illegal conduct. *See* [ECF #70], ¶¶ 27-29.

4

### III.     LEGAL STANDARD

"There is a strong presumption against the dismissal of claims under [Fed.R.Civ.P. 12(b)(6)]." *Blevins v. Reid*, 2008 U.S. Dist. LEXIS 46168, at *9 (D. Colo. June 12, 2008). Generally, a complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "In this context, for Plaintiff's discrimination claim to be 'plausible,' this Court need not decide which version of events is most likely, but rather, simply, whether Plaintiffs' allegations could have happened." *Connolly v. Lanham*, 685 F. Supp. 3d 312, 324 (D. Md. Aug. 2, 2023) (denying, in part, motion to dismiss allegations of housing appraisal discrimination under the FHA and Section 1981) (citing *Swanson v. Citibank*, *N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

"[I]n FHA discrimination cases, 'before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Hunt v. Aimco Props.*, L.P., 814 F.3d 1213, 1221 (11th Cir. 2016) (citation omitted). In such instances, "the allegations in the complaint 'should be judged by the statutory elements of an FHA claim.'" *Id.* (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997)). Similarly, for Section 1981 claims, a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also Brown v. Harford Bank*, No. CV ELH-21-0096, 2022 U.S. Dist. LEXIS 38626, 2022 WL 657564, at *11 (D. Md. Mar. 4, 2022) ("although reference to the elements of a prima facie § 1981 claim can help to gauge the adequacy of the [] Complaint's allegations, plaintiff is not required to establish a prima facie case.").

5

## IV. LEGAL ARGUMENT

### A. Ms. Cheroutes adequately alleged that Defendant Rocket violated the FHA by discriminating against her.

Ms. Cheroutes adequately alleged that Defendant Rocket "had, and breached, [its] independent duty to act in accordance with federal law prohibiting discrimination in a real estate transaction." [ECF #70], ¶ 10. Specifically, she pled that Defendant Rocket violated the FHA by discriminating against her in the availability and terms of a residential real estate-related transaction on the basis of her race, in contravention of Section 3605(a). Appraisals completed for purposes of refinancing are real estate-related transactions encompassed by the statute. *Id.* at § 3605(b); *see also Tate-Austin v. Miller*, No. 21-CV-09319-MMC, 2022 U.S. Dist. LEXIS 68454, 2022 WL 1105072, at *6 (N.D. Cal. Apr. 13, 2022) (collecting cases to underscore that Section 3605 is the "appropriate vehicle" for such claims).

The FHA's implementing regulations not only plainly prohibit reliance on discriminatory appraisals—those regulations further direct lenders to "take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it." 24 C.F.R. § 100.7(a)(1)(iii). Indeed, as alleged, "Defendant Rocket had the authority and/or obligation to confirm and/or correct the appraisal, use a second appraisal, and/or rely on additional comparable properties in order to rely on a non-discriminatory appraisal, but refused to do so." [ECF #70], ¶ 24.

As the United States stated in its Response to Defendant Rocket's Motion to Dismiss its Complaint, courts across the country have recognized that lenders like Defendant Rocket violate the FHA when they rely on appraisals they know are likely discriminatory to generate loan estimates and do not take remedial actions. [ECF #50], at 7-8 (collecting cases). In fact, those courts have determined that allegations almost identical to the ones Ms. Cheroutes brings against

6

Defendant Rocket are plausible. *See Connolly,* 685 F. Supp. 3d at 325 (finding allegations adequate where plaintiff pled that a lender "was aware of the discriminatory appraisal, had the power to order a second appraisal or conduct a formal appeal and review, and failed to take action to remedy the discrimination"); *Washington v. Wells Fargo Bank*, 1:22-CV-764, 2023 WL 415483, at *1-2 (M.D.N.C. Jan. 25, 2023) (finding allegations adequate where plaintiffs pled that "[t]he appraisal team was curt, abrupt, and dismissive"; the appraisal "improperly limit[ed] the geographical area" and "relied on less expensive homes from another neighborhood" and the lender "refused to reconsider or get another appraisal" and "did not provide any substantive response to [the plaintiffs'] communications about the discriminatory and flawed nature of the appraisal"); *Barkley v. Olympia Mortg. Co.*, No. 04 CV 875, 2007 WL 2437810, U.S. Dist. LEXIS 61940, at *1-2, 15 (E.D.N.Y. Aug. 22, 2007) (finding allegations sufficient where "plaintiffs allege that their mortgages 'contained significantly unfavorable terms," due to discriminatory appraisals (internal citation omitted)). This Court should follow this robust, well-reasoned caselaw.

      i.    **The related statutes, regulations, and agency advisements do not prohibit—but, rather, expressly encourage—remedial measures such as corrections and use of second appraisals.**

The appraisal independence statutes that Defendant Rocket falsely claims keep it from acknowledging and remedying discrimination actually cut in the opposite direction. *Cf.* [ECF #86], 4-5. As an initial matter, those statutory requirements are directed to undue efforts to manipulate an appraiser's valuation. *See* 15 U.S.C. § 1639e(b)(1) (prohibiting "attempts to compensate, coerce, extort, collude, instruct, induce, bribe, or intimidate such a person, for the purpose of causing the appraised value assigned, under the appraisal, to the property to be based on any factor other than the independent judgment of the appraiser") and (3) (prohibiting "seeking to influence an appraiser or otherwise to encourage a targeted value . . ."). *See also Dolan v. FEMA*, No. CV

23-00908 JB/JFR, 2024 U.S. Dist. LEXIS 228153, at *123 (D.N.M. Dec. 17, 2024) ("the ejusdem generis canon, meaning "of the same kind or class," [] supports a narrow interpretation of the catch-all provisions") (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts at 428 (2012)). The statutes clearly contemplate a lender intercepting in order to encourage particular appraisal outcomes for its own ends—not simply asking an appraiser, at arms-length, to correct errors when the appraisal objectively runs afoul of the Uniform Standards of Professional Appraisal Practice. *See also Alig v. Quicken Loans, Inc.,* Civil Action No. 5:12-CV-114, 2017 U.S. Dist. LEXIS 222052, at *71 (N.D.W. Va. July 11, 2017) (following determination that appraisals were "unfair, invalid and unreasonable on account of Quicken engaging in a scheme to circumvent established standards of appraiser independence"—by feeding appraisers valuations and telling consumers to how to regard those valuations—recommending that "[i]n such circumstances, the only way a consumer can be made whole is to throw out the contaminated appraisal and refund the cost *or obtain another appraisal*." (emphasis added)).

Moreover, the statutes clearly anticipate that lenders will maintain and activate processes to review appraisals. The federal appraiser independence statute states that:

> The requirements of subsection (b) shall not be construed as prohibiting a mortgage lender . . . with an interest in a real estate transaction from asking an appraiser to undertake 1 or more of the following: (1) Consider additional, appropriate property information, including the consideration of additional comparable properties to make or support an appraisal. (2) Provide further detail, substantiation, or explanation for the appraiser's value conclusion. (3) Correct errors in the appraisal report.

15 U.S.C. § 1639e(c). In a later subsection, the federal statute even reminds mortgage lenders that if it has "a reasonable basis to believe an appraiser is failing to comply with the Uniform Standards of Professional Appraisal Practice, is violating applicable laws, or is otherwise engaging in unethical or unprofessional conduct, [it] *shall* refer the matter to the applicable State appraiser certifying and licensing agency." 15 U.S.C. § 1639e(e). This is a mandatory reporting duty. *Id.*;

8

*Black's Law Dictionary* (5th ed. 1979) (shall "is generally imperative or mandatory").

The later-released Department of Housing and Urban Development ("HUD") Mortgagee Letter referenced by Defendant Rocket, [ECF #86] at 2, does not diminish this obligation. To the contrary, it recognizes that a second appraisal may be ordered if "the first appraisal is materially deficient and the Appraiser is unable or uncooperative in resolving the deficiency." A key material deficiency is "reliance upon outdated or dissimilar comparable sales when more recent and/or comparable sales were available . . ." *Id.* at 4. In this case, though the discriminatory Subject Appraisal had a direct—significantly negative—impact on the value and marketability of Ms. Cheroutes' home because—among other errors—it relied on dissimilar comparable sales, Defendant Rocket did not contact Defendants Solidifi, Mykhailyna, or Maverick to even learn whether they would be able or cooperative in taking steps to resolve the deficiency, such as by correcting errors or adding comparable sales, as clearly considered in the HUD Mortgagee Letter. Accordingly, at the time of the Subject Appraisal and to date, Defendant Rocket has maintained the right and the obligation to review and require changes to appraisals upon which it relies to set loan terms. In this case, despite seeing that the Subject Appraisal deviated from industry standards, [ECF #1], ¶¶ 108-11, and contained numerous material deficiencies, in ways which it knew or should have known were discriminatory, *id.* at ¶¶ 75-94, 115, 130, Defendant Rocket intentionally utilized it without taking any corrective actions. *Id.* at ¶¶ 44, 120, 131; [ECF #70], ¶¶ 18, 24-25.

In sum, the appraisal independence statutes Defendant Rocket constructs as obstacles actually provide pathways to remedy the discrimination levied by appraisers. *See also* [ECF #50], at 11. This Court should follow the well-paved path of other courts by holding that Defendant Rocket cannot throw up its hands by argument that its hands were tied and/or simply unengaged. *See United States v. SSM Props., LLC*, 619 F. Supp. 3d 602, 607 (S.D. Miss. 2022); *see also*

9

*Connolly,* 685 F. Supp. 3d at 325; *Washington*, 2023 WL 415483, at *1-2. And, at any rate, the allegations demonstrate that Defendant Rocket knew well how to not throw up its hands: it asked Defendant Mykhailyna to correct an error in the Subject Appraisal unrelated to Ms. Cheroutes' claims of discrimination, thereby demonstrating its unobstructed ability—but decided refusal—to seek corrections concerning discrimination, specifically. *Id.* at ¶ 131.

### ii. Defendant Rocket is liable though it was not the first actor to discriminate against Ms. Cheroutes.

Defendant Rocket "cannot escape liability merely because another party was the one who initially acted with discriminatory intent." [ECF #50], at 9; *see also id.* at 9-11; *Cf.* [ECF #28], at 9-13; [ECF #86], at 6. Indeed, it has been long established and consistently affirmed that when a party "effectuates or enables the discriminatory acts or designs of others" it may be liable. *See, e.g., Dailey v. City of Lawton*, 425 F.2d 1037, 1039 (10th Cir. 1970); *see also Valentin v. Town of Natick*, 633 F. Supp. 3d 366, 374 (D. Mass. 2022) (finding, in FHA case, that among other factors, the "sequence of events leading up to the denial, the differences in procedural treatment" "provide circumstantial evidence of a discriminatory intent"); *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227 (W.D. Wash. 2012). Courts "have no quarrel with the idea that direct liability for inaction makes sense [] if defendants had, but failed to deploy, available remedial tools." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 865 (7th Cir. 2018), *cert. dismissed sub nom. Glen St. Andrew Living Com. v. Wetzel*, 139 S. Ct. 1249 (2019); *see also Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.,* No. 18 CV 839, 2019 U.S. Dist. LEXIS 196481, at *31 (N.D. Ill. Nov. 13, 2019) (holding plaintiffs sufficiently alleged that Bank Defendants can be liable for failure to prevent discrimination given their inaction despite available remedial tools).

Defendant Rocket's reliance on the discriminatory Subject Appraisal was integral to Ms. Cheroutes' ability to refinance; in fact, Defendant Rocket was sole party positioned in these

circumstances to economically harm Ms. Cheroutes via the discriminatory Subject Appraisal, through less favorable loan terms—and later cancellation of her application altogether when she continued to speak out about discrimination. *Cf. Hemisphere Bldg. Co. v. Vill. of Richton Park*, No. 96 C 1268, 1996 U.S. Dist. LEXIS 18451, 1996 WL 721132, at *4 (N.D. Ill. Dec. 12, 1996) ("The alleged discriminatory decision here is the denial of the zoning petition, which only the Village Board had the authority to do; the remaining individual defendants were not in a position to 'otherwise make unavailable or deny' housing . . .); *see also Shipman v. Gelso*, No. 3:11-cv-1162, 2011 U.S. Dist. LEXIS 131490, 2011 WL 5554252, at *3 (M.D. Pa. Nov. 15, 2011).

Moreover, Ms. Cheroutes fulsomely alleges that Defendant Rocket acted with discriminatory intent. Defendant Rocket knew well it was facilitating discrimination, and was itself intentionally discriminating against Ms. Cheroutes: she explicitly told five different Defendant Rocket agents the Subject Appraisal was discriminatory, [ECF #1], ¶¶ 113-17, 124-27; *see also id.* at ¶ 121 ("Ms. Cheroutes told Mr. Watson that if Rocket canceled her refinance application because she was reporting discrimination, Rocket would be involving itself in the discrimination by ignoring her complaint."). As alleged, Defendant Rocket knew or should have known, based on the information she provided, that the "Subject Appraisal had undervalued [her home] based on her race." *id.* at ¶ 130.

Ms. Cheroutes need not meet the four-factor test that Defendant Rocket selects, *cf.* [ECF #86], at 7. As outlined above, "in FHA discrimination cases, 'before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case." *Hunt,* 814 F.3d at 1221; *Friscia v. Flagstar Bank, FSB*, No. C 12-05178 WHA, 2013 U.S. Dist. LEXIS 39683, at *8 (N.D. Cal. Mar. 21, 2013). At this stage, Ms. Cheroutes need only allege that she is an "aggrieved person[]" subjected to "an alleged discriminatory housing

11

practice." *Gilligan*, 108 F.3d at 250 (holding that the plaintiffs are "aggrieved persons" under the statutory definition because they "claim to have been injured by a discriminatory housing practice[,]" even despite failure to plead financial qualifications). *Cf.* [ECF #86], at 7, 9 (focusing on the "low appraised value" of the Subject Appraisal, not Ms. Cheroutes' allegations that discrimination caused that low value). The United States and Ms. Cheroutes adequately alleged as much as required. *See* [ECF #70], ¶ 7 (stating that Ms. Cheroutes "is an '[a]ggrieved person' within the meaning of the FHA, 42 U.S.C. § 3602(i)"); [ECF #1], ¶¶ 4, 5, 59-67, 65, 69-74, 107, 113-17, 124-27, and 130 ("Rocket knew . . . the Subject Appraisal had undervalued the Subject Property based on her race. Despite knowing these facts, Rocket relied on the discriminatory appraisal in its decision to deny Ms. Cheroutes' loan application.").

> **B.** **Ms. Cheroutes adequately alleged that Defendant Rocket violated the FHA by retaliating against her.**

Section 3617 of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." '[T]he language of the FHA is broad and inclusive, prohibits a wide range of conduct, has a broad remedial purpose, and is written in decidedly far-reaching terms." *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260, 1278 (11th Cir. 2019). Accordingly, it has been long established that the "'or interferes with' language of section [3617] has been . . . broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the Act," including the "activities of appraisers." *United States v. Am. Inst. of Real Est. Appraisers of Nat. Ass'n of Realtors*, 442 F. Supp. 1072, 1079 (N.D. Ill. 1977); *see also Tate-Austin*, 2022 U.S. Dist. LEXIS 68454, 2022 WL 1105072, at *7 (quoting *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994)). "Interfering" with a person's rights under the FHA includes ignoring the outcries of aggrieved persons, like Ms. Cheroutes. *See Valentin v. Town of*

*Natick*, No. CV 21-10830-PBS, 633 F. Supp. 3d 366, 2022 U.S. Dist. LEXIS 174578, 2022 WL 4481412, at *5 (D. Mass. Sept. 27, 2022); *see also Michigan Prot. & Advocacy Serv. v. Babin,* 18 F.3d 337, 347 (6th Cir. 1994); *Bartlett v. Hames*, No. 5:18-CV-1096-CLS, 2023 U.S. Dist. LEXIS 104617, 2023 WL 4038657, at *19 (N.D. Ala. June 15, 2023).

While Ms. Cheroutes need not precisely articulate each element of her prima facie case at this stage, she can readily show that "(1) [she] exercised or enjoyed a right guaranteed by Sections 3603-06 of the FHA—here, the right to a non-discriminatory appraisal as guaranteed by § 3605; (2) Defendants' conduct constituted coercion, intimidation, a threat, or interference; and (3) a causal connection exists between Plaintiffs' assertion of the right to a nondiscriminatory appraisal and Defendants' conduct." *Connolly*, 685 F. Supp. 3d at 328 (citing *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112-13, 66 V.I. 905 (3d Cir. 2017)); *see also Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1187-88 (D. Colo. 2016). First, Defendant Rocket interfered with her right under Section 3605 to engage in a residential real-estate transaction by canceling her loan application. [ECF #1], ¶¶ 119, 122. Second, Defendant Rocket's cancellation of her refinancing application "could well dissuade a reasonable [person]" from protesting her discriminatory subject appraisals for purposes of refinancing. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Third, as pled, that cancellation occurred because Ms. Cheroutes continued to protest against her discriminatory treatment. [ECF #1], ¶¶ 119, 121-23; [ECF #70], ¶¶ 12-13. Furthermore, Ms. Cheroutes also pleads coercion, intimidation, and threats—specifically Defendant Rocket's efforts to coerce and intimidate her to accept the discriminatory appraisal through threats that if she did not cease her complaints regarding the discriminatory appraisal, it would cancel her application—as it went on to do. [ECF #1], ¶¶7, 119-22.

Thus, Ms. Cheroutes adequately alleged her Section 3617 claim against Defendant Rocket.

13

### C. Ms. Cheroutes adequately alleged that Defendant Rocket violated Section 1981.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). This includes the right to enjoy "all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Section 1981 claims may arise from discrimination at any stage of a contractual relationship. *See generally, Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006) (describing Congress' desire to confront discrimination at any stage, including post-formation); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341-44 (2020) (Ginsburg, J., concurring in part). It has been directly held that the rights encompassed by Section 1981 "extend[] to the present situation, where Plaintiffs sought an appraisal of their home to refinance their mortgage." *Connolly*, 685 F. Supp. 3d at 332.

Ms. Cheroutes' Section 1981 claims against Defendant Rocket prevail for the same reasons as her FHA claims. As for her FHA claims, Defendant Rocket's reference to the prima facie standard is mistaken; Ms. Cheroutes "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss." *Woods*, 855 F.3d at 648. Rather, Ms. Cheroutes "only needed to 'initially identify an impaired 'contractual relationship' . . . under which she had rights." *Watts v. Joggers Run Prop. Owners Ass'n*, No. 22-13763, 2025 U.S. App. LEXIS 8133, *25 (11th Cir. Apr. 7, 2025) (citing *Domino's Pizza, Inc.*, 546 U.S. at 476).[2]

Further, Ms. Cheroutes adequately alleged that Defendant Rocket intentionally

---

[2] Though Ms. Cheroutes need not establish precisely *how* her contractual relationship was impaired at this stage, in response to Defendant Rocket's suggestion that it could not have been through Defendants Mykhailyna's actions as an agent of Defendant Rocket, [ECF #86], 9-10, n.2, Ms. Cheroutes states that she and the United States have adequately alleged facts plausibly demonstrating an agency relationship. For example, control was demonstrated, among other facts, by the allegation that Defendant Rocket asked Defendant Mykhailyna to correct an error in the Subject Appraisal, and he did. [ECF #1], ¶ 13.

14

discriminated against her based on her race *and* her protected opposition to discrimination. [ECF #70], ¶¶ 13, 19. She explicitly indicated to five different Defendant Rocket agents that the Subject Appraisal was discriminatory, [ECF #1], ¶¶ 113-17, 124-27, and highlighted that, among other errors, Defendant Mykhailyna based his appraisal exclusively on duplex sales in areas with significantly higher percentages of Black residents than Ms. Cheroutes' area, *id.* at ¶¶ 82-92, and listed a school with a significantly higher percentage of Black students than the school serving her neighborhood, *id.* at ¶ 104. Defendant Rocket agents could tell based on the information provided that Defendant Mykhailyna undervalued Ms. Cheroutes' home because she is Black, *id.* at ¶ 130. And Ms. Cheroutes explicitly told Defendant Rocket's agent that if he canceled her application because she was reporting discrimination, Rocket would be involving itself in the discrimination, *id.* at ¶ 121. Yet Defendant Rocket *intentionally* relied on the Subject Appraisal.

Then, Defendant Rocket threatened Ms. Cheroutes: telling her that she could either proceed with the refinancing using the discriminatory appraisal, or her application would be canceled. When Ms. Cheroutes continued to request that the appraisal be changed or redone because it was discriminatory, Defendant Rocket retaliatorily canceled her application. *See* [ECF #1], ¶¶ 7, 119-22. This readily demonstrates that her race and complaints of racism were "but for" causes, *cf.* [ECF #86], 8. Defendant Rocket's gestures to the low value of the Subject Appraisal, in argument to the contrary, *id.* at 11-12, are illogical, as that low value was due to Ms. Cheroutes' race, as pled. *See* [ECF #1], ¶¶ 2-8, 23-34, 42-135; [ECF #70], ¶¶ 1, 14, 21. In any event, it would be improper, on a motion to dismiss, for this Court to disregard Ms. Cheroutes' well-pled allegations that Defendant Rocket retaliatorily canceled her loan application because she continued to insist on a non-discriminatory appraisal.

In sum, Ms. Cheroutes adequately alleged her Section 1981 claim against Defendant Rocket.

15

## V. CONCLUSION

For the foregoing reasons, Ms. Cheroutes respectfully requests that this Court deny Defendant Rocket's Motion to Dismiss, [ECF #86], in its entirety.

Respectfully submitted this 2nd day of May 2025.

        NEWMAN | MCNULTY, LLC

        *s/ Mari Newman*
        Mari Newman
        Andy McNulty
        Madeline Leibin
        1490 N. Lafayette Street Suite 304
        Denver, CO 80218
        (720) 850 - 5770
        mari@newman-mcnulty.com
        andy@newman-mcnulty.com
        madeline@newman-mcnulty.com

        ATTORNEYS FOR FRANCESCA CHEROUTES

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties who have entered their appearances in this matter.

        NEWMAN | MCNULTY, LLC

        *s/ Mari Newman*