IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA,

    Plaintiff, and

FRANCESCA CHEROUTES,

    Intervening Plaintiff,

v.

ROCKET MORTGAGE, LLC,
SOLIDIFI U.S. INC.,
MAKSYM MYKHAILYNA, and
MAVERICK APPRAISAL GROUP INC.,

    Defendants.

**ORDER**

Before the Court are Defendant Rocket Mortgage's Motion to Dismiss the Complaint (D. 28), Defendant Solidifi U.S. Inc.'s Motion to Dismiss (D. 39), Defendant Solidifi U.S. Inc.'s Motion to Dismiss the Intervenor's Complaint (D. 85), and Defendant Rocket Mortgage, LLC's Motion to Dismiss the Intervenor's Complaint (D. 86).  The Court DENIES the motions for the following reasons.

1

## I. BACKGROUND

This civil action arises from the appraisal of Intervening Plaintiff Francesca Cheroutes's home in Denver, Colorado.[1]

Cheroutes, who is Black, owns a duplex in Denver, Colorado (D. 1 at ¶¶ 16, 23-26). In January 2021, she applied to refinance her mortgage with Defendant Rocket Mortgage, LLC (Rocket) (*id*. at ¶¶ 2, 31). A Rocket representative provided a loan estimate based on an estimated property value of $860,000, the same value for which it had been appraised in May 2020 in connection with her existing mortgage, which was also from Rocket (*id*. at ¶¶ 33, 69). Compared with her existing mortgage, the loan would have provided a lower interest rate and other more favorable terms (*id*. at ¶ 33).

Rocket contracted with Defendant Solidifi U.S. Inc. (Solidifi) to supply an appraisal of the property (*id*. at ¶ 43). Solidifi entered into an agreement with Defendant Maverick Appraisal Group Inc. (Maverick) and Defendant Maksym Mykhailyna, Maverick's owner, to complete the appraisal on Solidifi's behalf. (*id*. at ¶¶ 13, 44-45). Pursuant to this agreement, Mykhailyna inspected Cheroutes's home; he seemed surprised that Cheroutes was the owner and ignored her explanation of improvements she had made since the last appraisal (*id*. at ¶¶ 63, 65). After the visit, Cheroutes told her daughter that Mykhailyna's conduct troubled her and that she was concerned that the appraisal would not fairly represent the value of her home (*id*. at ¶ 67).

The next day, Mykhailyna submitted his appraisal to Solidifi, valuing the home at only $640,000, which is $220,000 lower than the $860,000 appraisal in May 2020 (*id*. at ¶¶ 68-69, 107).

---

[1] The Court draws the operative facts as set forth in the Complaint (D. 1). These allegations are largely paralleled by those in the Intervenor's Complaint (D. 70), which also purports to incorporate the Complaint by reference.

This approximately 25 percent decrease in value in the span of eight months was inconsistent with improvements Cheroutes had made and rapidly increasing home prices in the area (*id.* at ¶¶ 65, 69-74).

Multiple apparent irregularities and errors existed in the appraisal. Although Mykhailyna's agreements with Solidifi required him to base his appraisal on comparable sales within a one-mile radius of the property, all but one of the sales he chose were outside this zone (*id.* at ¶ 81). He based his appraisal exclusively on duplex sales in areas with significantly higher percentages of Black residents than Cheroutes's duplex, and he ignored higher-priced sales of duplexes that were closer to the property and in predominantly white areas (*id.* at ¶¶ 82-92). He erroneously identified the elementary school that served the property, listing a school with a significantly higher percentage of Black students than the school that served the neighborhood (*id.* at ¶ 104). And he made numerous other errors or deviations from the standards required by Solidifi, including under-counting the property's gross living area; incorrectly stating that the property lacked a fence, attic, and energy-efficient appliances; and exceeding the standards for downward adjustments to sales comparisons (*id.* at ¶¶ 95-96, 98-103, 105-106).

Solidifi is an appraisal management company (AMC) in the business of providing appraisals to mortgage lenders (D. 1 at ¶ 42). Solidifi maintains a panel of appraisers who complete appraisals on its behalf (*id.* at ¶ 45). Solidifi retained and exercised control over the manner Mykhailyna and Maverick performed the appraisal for Solidifi. Solidifi maintained Mykhailyna on a panel, trained him, and monitored him (*id.* at ¶¶ 3, 45, 47, 53-54). Solidifi required Mykhailyna to follow specified standards in completing the appraisal and stated that it could recoup its fees if he did not follow those standards (*id.* at ¶ 44). It required him to use Solidifi's

3

proprietary software to receive assignments and submit appraisals, keep specified information confidential, and notify Solidifi promptly of any breaches (*id*. at 1 ¶ 52). And it imposed numerous continuing obligations on Mykhailyna after the appraisal was complete, including that he would promptly report to Solidifi any complaints, legal claims, or enforcement proceedings regarding the appraisal and that he would retain records for a specified period. (*id*. at ¶ 44). Solidifi also owned and retained control over the content of the appraisal. Its agreements with Mykhailyna authorized Solidifi to require changes to the appraisal, including changes needed to comply with Solidifi's mandated appraisal standards (*id*. at ¶¶ 44, 49). Further, the agreements made the appraisal Solidifi's property (*id*. at ¶ 50). Solidifi enforces its extensive standards and guidance regarding the methods of their appraisers and contents of the appraisals by reviewing every appraisal, retaining the right to require changes to appraisals, enforcing a code of conduct, providing relevant computer systems to appraisers, rating and tracking appraisers' work, and mandating remedial steps for appraisers with performance issues. (*id*. at ¶¶ 49-57).

Notwithstanding the above errors and irregularities, Solidifi reviewed and adopted the appraisal and sent it to Rocket that same day (*id*. at ¶¶ 111-112). Rocket then used the appraisal to generate a new loan estimate consistent with the $640,000 valuation (*id*. at ¶ 120). These terms were less favorable than the estimate Rocket had originally provided (*id*.). After viewing the appraisal, Cheroutes contacted Rocket, told five different representatives that she believed the Subject Appraisal was discriminatory, and gave information in support (*id*. at ¶¶ 113-17, 124-127).

She stated that Mykhailyna met her and therefore knew she was Black and that she had a Black Lives Matter yard sign at the time of the inspection (*id*. at ¶ 115). She explained that he had been hostile and did not listen to her statements about improvements to the property (*id*. at ¶ 117).

4

She described errors in the Subject Appraisal and noted that it was 25 percent lower than a recent appraisal (*id*. at ¶¶ 115, 117). Multiple times, she requested that Rocket obtain a new appraisal (*id*. at ¶¶ 115, 121).

Rocket representatives repeatedly assured Cheroutes that they would review and investigate her concerns. The loan officer told Cheroutes that Rocket would review the appraisal and referred her to a Solutions Consultant (*id*. at ¶ 115). That person referred her to Client Relations. (*id*. at ¶ 121). And an employee from Client Relations told Cheroutes her complaint would be referred to the legal department, which investigated discrimination complaints (*id*. at ¶¶ 124-126). Rocket's loan officer for the transaction acknowledged to Cheroutes that the decrease in value from the previous appraisal made no sense (*id*. at ¶ 115). Despite this knowledge and its representations that it would review the matter, Rocket did not investigate the complaint or forward Cheroutes's concerns to Solidifi (*id*. at ¶ 128). Rocket could have ordered a second appraisal from a different appraiser or asked Solidifi to correct the numerous errors related to her complaint, but it only asked for an unrelated error to be corrected (*id*. at ¶¶ 44, 131). *See* 12 C.F.R. § 1026.42(c)(3).

Instead of acting, Rocket relied on the appraisal. On January 25, 2021, Matthew Watson, a Rocket Solution Consultant, told Cheroutes that if she did not agree to proceed with a loan based on the $640,000 appraisal (on less favorable terms), he would cancel the application (D. 1 at ¶¶ 117, 119-120). He also said that because she had raised the issue of discrimination, he could not talk to her or help her (*id*. at ¶ 118). When she again requested a second appraisal, Watson referred her to Client Relations (*id*. at ¶ 121). After the call, and before she could speak with Client Relations, Rocket canceled the application (*id*. at ¶ 123). A letter dated January 26, 2021, from

5

Rocket to Cheroutes, stated that Rocket was "unable to offer . . . financing" due to the "[l]ow appraised value." (*id.*).

On January 28, 2021, after Rocket had canceled the application, a Client Relations representative told Cheroutes that Rocket's underwriting team would be concerned by the gross adjustments in an appraisal only if they exceeded 25 percent, and that the gross adjustments in the appraisal fell below that threshold (*id.* at ¶¶ 124-125). In fact, the gross adjustments for one of the comparable sales in the appraisal did exceed that threshold (*id.* at ¶¶ 125).

Cheroutes did not obtain the refinance loan and thus suffered economic harm (*id.* at ¶ 133). Additionally, Cheroutes suffered emotional distress due to Defendants' apparent belief that her house was worth less because it was owned by a Black person (*id.* at ¶ 135).

The United States brings a claim for violation of the Fair Housing Act, 42 U.S.C. § 3602(f) (D. 1 at 43). Cheroutes brings the same claim and adds a claim for discrimination in contracting under 42 U.S.C. § 1981 (D. 70 at 10). Movants Rocket and Solidifi seek dismissal of all claims against them

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed

6

because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

### III. ANALYSIS

Movants raise several arguments that are difficult to square with the Complaint, Intervenor Complaint, and the statues and regulations that they discuss. The upshot of Movants' arguments is that they cannot be held responsible for the alleged discriminatory actions of Mykhailyna and his company, Maverick, because Movants are constrained by regulations intended to insure appraiser independence.

**A. Rocket Fails to Address the Plaintiffs' Theories of Liability.**

The government and Cheroutes each assert that Rocket could have taken several different actions to avoid reliance on the allegedly discriminatory appraisal. Among these, both allege that Rocket could have (1) requested correction or (2) requested a separate appraisal (D. 1 at ¶ 131; D.

7

17 at ¶¶ 24–25). Rocket's motions only address the first theory, arguing variously that it was prohibited by law[2] from correcting the appraisal (D. 28 at 6, 12–14; D. 86 at 8–13). But "[o]btaining multiple valuations for the consumer's principal dwelling to select the most reliable valuation" is explicitly permitted by regulation. 12 C.F.R. § 1026.42(c)(3)(iv). Nowhere in its motions or replies[3] does Rocket address its alleged ability to order a separate appraisal or explain why its failure to do so even after receiving Cheroutes's complaint about racial discrimination (and, instead, cancelling her loan application) could not be viewed as intentional discrimination and retaliation (*see* D. 60; D. 106). *Connolly v. Lanham*, 685 F. Supp. 3d 312, 330 (D. Md. 2023) (finding lenders actions by lender taken to avoid investigating racial discrimination complaint related to appraisal were sufficient to plausibly plead discrimination).

Despite not addressing plainly alleged theories of liability, Rocket seeks dismissal of the entire claims. Such relief would not be proper. Nor would it be proper for the Court to parcel out and address the Plaintiffs' individual theories at this stage. "As many courts have recognized, parties may not use rule 12(b)(6) to dismiss only parts of a claim." *Fed. Trade Comm'n v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 (D. Utah 2019) (citing *Abraham P. v. Los Angeles Unified Sch. Dist.*, No. CV 17-3105-GW-FFMX, 2017 WL 4839071, at *6 (C.D. Cal. Oct. 5, 2017)).[4] "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a

---

[2] These provisions are discussed in more detail below with regard to Solidifi's arguments.

[3] The United States specifically raises this issue by arguing that "Rocket could have avoided relying on the discriminatory appraisal by ordering another appraisal from a different appraiser" (D. 50 at 17) but Rocket never replies.

[4] In contrast, Rule 56(a) explicitly authorizes resolution of "each claim or defense — or the part of each claim or defense — on which summary judgment is sought."

8

plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *see also Murphy v. City of Tulsa*, No. 15-CV-528-GKF-PJC, 2016 WL 11619779 (N.D. Okla. Feb. 29, 2016) (court cannot dismiss legal theories on 12(b)(6)). Accordingly, the Court denies Rocket's motions.

### B. Plaintiffs Have Sufficiently Alleged Solidifi's Vicarious Liability.

Plaintiffs argue that they have sufficiently alleged facts that support a finding that Solidifi is vicariously liable for the actions of its agent Mykhailyna (D. 56 at 8–9, 11–19; D. 97 at 5–11). The Court agrees.

"A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law." 24 C.F.R. § 100.7. In identifying the situations in which such vicarious liability is appropriate, courts often look to the Restatement of Agency for guidance. *Vance v. Ball State Univ.*, 570 U.S. 421, 428 (2013) (citing examples). The Restatement (Second) of Agency (1958) § 1 explains that "[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." "The Restatement § 1 specifies that the relevant principal/agency relationship demands not only control (or the right to direct or control) but also 'the manifestation of consent by one person to another that the other shall act on his behalf (3)27, and consent by the other so to act.'" *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (applying agency principles from Restatement (Second) of Agency to FHA case).

9

Solidifi argues that Mykhailyna was not its agent because he was an independent contractor (D. 39 at 13-15). But this is not dispositive because "an independent contractor can be an agent. An agent need not be an employee." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) (citing *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1360 (10th Cir. 1987)). Solidifi also argues that "other factors surrounding the relationship also support" the conclusion that Mykhailyna was not it's agent (D. 39 at 15). It notes that Mykhailyna is not its employee and that "he was free to perform appraisals for anyone he chose" (*id*. at 16). Although these allegations are relevant, none are dispositive or address the core issues of consent and control. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d at 1251 ("An agent can serve multiple principals at once, even principals that are competing with one another."). Other than reference to evidence outside the pleadings, which the Court will not consider, Solidifi points to nothing indicating that Mykhailyna was not acting on its behalf by way of mutual consent as alleged. *See* Fed. R. Civ. P. 12(d).

Regarding its control, Solidifi refers to regulations designed to ensure appraiser independence (D. 39 at 16–17). Colorado's regulation bars AMCs from "[i]nfluencing or attempting to influence the development, reporting, result, or review of a real estate appraisal or the engagement of an appraiser through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner." Colo. Rev. Stat. § 12-10-614(1)(c). But this limitation says nothing about the extent of other control by way of the alleged restrictions on how Mykhailyna performed delegated appraisal tasks in the first instance, and the statute is subject to broad exceptions relevant here. AMCs are specifically allowed to "request[] an appraiser to: (I) Consider additional, appropriate property information; (II) Provide further detail, substantiation,

10

or explanation for the appraiser's value conclusion; or (III) Correct errors in the appraisal report." *Id*. These are precisely the sort of corrective actions about the methods and manner of appraisal sought by Cheroutes through her discrimination complaint and over which Solidifi is alleged to exercise significant control. Even though Colorado's legal restrictions preserve appraiser discretion, they do not limit Solidifi's control in a manner or to an extent relevant here.

The applicable federal regulation is similar. It provides that "no covered person shall . . . cause the value assigned to the consumer's principal dwelling to be based on any factor other than the independent judgment of a person that prepares valuations[] through coercion, extortion, inducement, bribery, or intimidation of, compensation or instruction to, or collusion . . .." 12 C.F.R. § 1026.42(c)(1). Again, it is subject to broad exceptions that are relevant to the methods and manner of appraisal allegedly controlled by Solidifi:

> Examples of actions that do not violate paragraph (c)(1) or (c)(2) include:
>
> (i) Asking a person that prepares a valuation to consider additional, appropriate property information, including information about comparable properties, to make or support a valuation;
>
> (ii) Requesting that a person that prepares a valuation provide further detail, substantiation, or explanation for the person's conclusion about the value of the consumer's principal dwelling;
>
> (iii) Asking a person that prepares a valuation to correct errors in the valuation;
>
> (iv) Obtaining multiple valuations for the consumer's principal dwelling to select the most reliable valuation;
>
> (v) Withholding compensation due to breach of contract or substandard performance of services; and
>
> (vi) Taking action permitted or required by applicable Federal or state statute, regulation, or agency guidance.

12 C.F.R. § 1026.42(c)(3). Thus, Solidifi was explicitly permitted by statute to request corrections related to the issues with the appraisal alleged to be discriminatory and over which it is alleged to have control.

The detailed factual allegations in the Complaint indicate that, by mutual consent, Mykhailyna acted on Solidifi behalf in appraising Cheroutes property and that Mykhailyna was subject to Solidifi's control over the methods and manner it carried out the task. Accordingly, the Court finds that Plaintiffs have sufficiently alleged Solidifi's vicarious liability and denies its motions.

## IV. CONCLUSION

Accordingly, it is ORDERED that are Defendant Rocket Mortgage's Motion to Dismiss the Complaint (D. 28), Defendant Solidifi U.S. Inc.'s Motion to Dismiss (D. 39), Defendant Solidifi U.S. Inc.'s Motion to Dismiss the Intervenor's Complaint (D. 85), and Defendant Rocket Mortgage, LLC's Motion to Dismiss the Intervenor's Complaint (D. 86) are DENIED.

DATED September 12, 2025.

BY THE COURT:

Gordon P. Gallagher
United States District Judge