**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-02915-GPG-TPO

UNITED STATES OF AMERICA,

      Plaintiff,

and

FRANCESCA CHEROUTES,

      Intervening Plaintiff,

v.

ROCKET MORTGAGE, LLC;
SOLIDIFI U.S. INC.;
MAKSYM MYKHAILYNA;
and MAVERICK APPRAISAL GROUP INC.,

      Defendants.

---

**ROCKET MORTGAGE, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT**

---

Rocket Mortgage, LLC ("Rocket Mortgage") hereby answers and responds to the Complaint (ECF No. 1) filed by Plaintiff the United States of America ("Plaintiff"). This answer is made without waiving, but rather expressly reserving, all rights Rocket Mortgage has to file dispositive motions or any other responses or challenges addressed to some or all of the claims and allegations set forth in the Complaint. In addition, Rocket Mortgage expressly reserves its rights to amend or supplement any responses or defenses set forth herein as its investigation and discovery in this matter progresses.

Except as expressly admitted below, Rocket Mortgage denies each and every allegation in the Complaint. Rocket Mortgage responds to the individually numbered and other paragraphs of the Complaint as follows:

1

**INTRODUCTION***

1.      The United States of America brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended ("the Fair Housing Act"), 42 U.S.C. §§ 3601–3619, on behalf of Francesca Cheroutes, a Black woman, pursuant to 42 U.S.C. § 3612(o).

**Response:** The allegations in Paragraph 1 are introductory in nature and contain

no allegations of fact directed to Rocket Mortgage, and so require no response by Rocket

Mortgage. To the extent Paragraph 1 may be construed to contain allegations of fact

directed to Rocket Mortgage requiring a response, Rocket Mortgage denies them and

specifically denies that Plaintiff or Intervening Plaintiff Francesca Cheroutes ("Cheroutes")

have any valid claim against Rocket Mortgage under 42 U.S.C. §§ 3601–19.

2.      In January 2021, during a time of falling interest rates and rising home values in the Denver area, Ms. Cheroutes sought to refinance the property she owns at 749-751 Ash Street, Denver, Colorado ("Subject Property"), with Defendant Rocket Mortgage, LLC ("Rocket"). This required an appraisal. A previous appraisal of the Subject Property, which had been completed less than a year before, and also in connection with a mortgage from Rocket, valued Ms. Cheroutes's home at $860,000.

**Response:** Rocket Mortgage admits only that Cheroutes applied for a refinance

with Rocket Mortgage in or about January 2021, that an independent, third-party appraisal

of the Subject Property was required in connection with that application, and that prior

appraisals have also been performed of the Subject Property. The referenced appraisals

speak for themselves and are the best evidence of their contents. Except as expressly

admitted herein, Rocket Mortgage denies the allegations in Paragraph 2.

3.      Rocket contracted with Solidifi U.S. Inc. ("Solidifi"), an appraisal management company ("AMC"), to conduct an appraisal of the Subject Property (the "Subject Appraisal"). Solidifi, which maintains a "panel" of appraisers that it trains and approves to carry out appraisals in accordance with Solidifi's standards, arranged for one of those appraisers, Defendant Maksym Mykhailyna, the Chief Executive Officer of

---

* Rocket Mortgage repeats the headings used by Plaintiff in the Complaint solely for the convenience of the Court, does not admit that the headings are true, and denies all allegations contained in the headings.

Defendant Maverick Appraisal Group Inc. ("Maverick"), to perform the appraisal for Rocket. Mr. Mykhailyna and Maverick agreed to conduct the appraisal for Solidifi and then completed the appraisal and submitted it to Solidifi, which submitted it to Rocket pursuant to its contract.

**Response:** Rocket Mortgage denies the allegations in the first sentence of Paragraph 3. The second and third sentences of Paragraph 3 contain no allegations of fact directed to Rocket Mortgage, and so require no response by Rocket Mortgage. To the extent the second and third sentences of Paragraph 3 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage admits only that Solidifi submitted the Subject Appraisal to Rocket Mortgage. Rocket Mortgage states that it otherwise lacks sufficient knowledge or information to admit or deny the remaining allegations in the second and third sentences of Paragraph 3 concerning parties other than Rocket Mortgage, and so denies them. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 3.

4.    In performing the appraisal, Mr. Mykhailyna and Maverick significantly undervalued Ms. Cheroutes's home because of her race and color. Mr. Mykhailyna met Ms. Cheroutes during the appraisal and knew that the Subject Property was occupied by a Black family when he performed the appraisal. Ms. Cheroutes told Mr. Mykhailyna about recent improvements to the property, including new gutters, new doors, and updates to the kitchen and bathroom. He did not respond and did not include this information in his report.

**Response:** Rocket Mortgage, upon information and belief, denies the allegations in the first sentence of Paragraph 4. The second, third and fourth sentences of Paragraph 4 contain no allegations of fact directed to Rocket Mortgage, and so require no response by Rocket Mortgage. To the extent the second, third and fourth sentences of Paragraph 4 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them except to state that the referenced "report"

speaks for itself and is the best evidence of its contents. Except as expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 4.

5.      Mr. Mykhailyna appraised the property at $640,000, which was $220,000 lower than the earlier appraisal. Mr. Mykhailyna's appraisal was also lower than the sales prices of all six comparable duplexes within a mile of the property, which Mr. Mykhailyna's agreement with Solidifi directed him to consider in the appraisal. Mr. Mykhailyna disregarded all but one of these comparables and instead relied on sales of properties that were farther away and in neighborhoods with greater concentrations of Black persons than the predominantly White neighborhood where Ms. Cheroutes lived. Mr. Mykhailyna's approach differed markedly from how he appraised a property of a White owner in Ms. Cheroutes's neighborhood one month before the Subject Appraisal. The relevant facts and circumstances, as explained in more detail below, demonstrate that Mr. Mykhailyna used faulty comparables and made other inaccurate assumptions because Ms. Cheroutes was Black.

**Response:** Paragraph 5 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 5 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the referenced appraisals speak for themselves and are the best evidence of their contents, and denies, upon information and belief, that Mykhailyna "used faulty comparables and made other inaccurate assumptions because Ms. Cheroutes was Black." The remaining allegations in Paragraph 5 are vague, ambiguous and imprecise. Rocket Mortgage cannot, therefore, admit or deny them, and so denies them. Except as expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 5.

6.      After Ms. Cheroutes received the Subject Appraisal, she contacted Rocket, informed the company that the appraisal was significantly lower than the prior appraisal, and explained why she believed the appraisal was motivated by racial discrimination.

**Response:** Rocket Mortgage admits only that Cheroutes contacted Rocket Mortgage team members about the Subject Appraisal at various times. The remaining allegations in Paragraph 6 are vague, ambiguous and imprecise because, among other

reasons, they fail to identify the means, date, time or participants in the referenced "contact." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 6.

7.      Despite being given this information, Rocket insisted on using the appraisal in the mortgage loan refinancing. Rocket told Ms. Cheroutes that she could either proceed with the refinancing using the discriminatory appraisal, or her refinancing application would be canceled. When Ms. Cheroutes continued to request that the appraisal be changed or redone because it was discriminatory, Rocket canceled her application.

**Response:** Rocket Mortgage denies the allegations in Paragraph 7.

8.      Ms. Cheroutes filed a complaint with the U.S. Department of Housing and Urban Development ("HUD"). HUD investigated the complaint and determined that Defendants had engaged in one or more discriminatory housing practices against Ms. Cheroutes in violation of the Fair Housing Act.

**Response:** Paragraph 8 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 8 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage admits only that the then-Secretary of the U.S. Department of Housing and Urban Development ("HUD") issued a Charge of Discrimination on or about July 15, 2024 in response to a complaint made by Cheroutes. The Charge speaks for itself and is the best evidence of its contents. Except as expressly stated and admitted herein, Rocket Mortgage denies the allegations in Paragraph 8.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

**Response:** Paragraph 9 states conclusions of law to which no response is required. To the extent the allegations in Paragraph 9 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage

denies them.

10.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in the District of Colorado.

**Response:** Paragraph 10 states conclusions of law to which no response is required. To the extent the allegations in Paragraph 10 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage denies them.

## PARTIES AND SUBJECT PROPERTY

11.    Plaintiff is the United States of America.

**Response:** Paragraph 11 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 11 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage admits only that the United States of America purports to bring this action against Rocket Mortgage and three other defendants. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 11.

12.    Defendant Maverick is an appraisal company incorporated in Colorado, with its principal place of business in Denver, Colorado. All actions taken by Defendant Maverick relevant to this Complaint, including through the actions of its agent Maksym Mykhailyna, were taken pursuant to its agreement with, and as an agent of, Defendant Solidifi.

**Response:** Paragraph 12 contains no allegations of fact directed to Rocket Mortgage, and so no response is required by Rocket Mortgage. To the extent Paragraph 12 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and so denies them.

13.    Defendant Maksym Mykhailyna is a licensed appraiser and the owner and Chief Executive Officer of Maverick. All actions taken by Mr. Mykhailyna relevant to this

Complaint were taken in his capacity as the owner of, and as an agent of, Defendant Maverick, and also as an agent of Solidifi.

**Response:** Paragraph 13 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 13 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and so denies them.

14.    Defendant Solidifi is an AMC incorporated in Delaware, with its principal place of business in Buffalo, New York. Defendant Solidifi does business in the District of Colorado.

**Response:** Paragraph 14 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 14 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and so denies them.

15.    Defendant Rocket is a mortgage lender incorporated in Michigan, with its principal place of business in Detroit, Michigan. Defendant Rocket does business in the District of Colorado.

**Response:** Rocket Mortgage admits only that it is a mortgage lender, that it is a Michigan limited liability company with its principal place of business in Detroit, and that it is registered to do business in the State of Colorado. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 15.

16.    The Subject Property is a duplex located at 749-751 Ash Street, Denver, Colorado. It consists of two units. Each unit has two levels, three bedrooms, and two bathrooms. The Subject Property is a "[d]welling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

**Response:** The first, second and third sentences of Paragraph 16 contain no allegations of fact directed to Rocket Mortgage, and so require no response by Rocket

Mortgage. To the extent the first, second and third sentences of Paragraph 16 may be

construed to contain allegations of fact directed to Rocket Mortgage requiring a response,

Rocket Mortgage states that it lacks knowledge or information sufficient to form a belief

as to the truth of such allegations, and so denies them. The final sentence of Paragraph

16 states conclusions of law to which no response is required. To the extent the

allegations in the final sentence of Paragraph 16 may be construed to contain allegations

of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage denies them.

17.    At all relevant times, Ms. Cheroutes owned the Subject Property and resided in one of the two units of the Subject Property. She is an "[a]ggrieved person" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i).

**Response:** Rocket Mortgage lacks sufficient knowledge or information to admit or

deny the allegations in the first sentence of Paragraph 17, and so denies them. The final

sentence of Paragraph 17 states conclusions of law to which no response is required. To

the extent the allegations in the final sentence of Paragraph 17 may be construed to

contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket

Mortgage denies them.

### ALLEGATIONS REGARDING DEFENDANTS' DISCRIMINATION
### AGAINST MS. CHEROUTES

**A.    Home ownership, residential segregation, and property valuation are historically intertwined.**

18.    Equity in residential real estate is the primary source of wealth for many American families. According to the Pew Research Center, "[h]ome equity looms large in household wealth. In 2021, the median net worth of U.S. households overall stood at $166,900, counting all assets. But their median net worth *without* home equity included was only $57,900" (emphasis in original).[1] Thus, the stakes involved in home ownership and the value of one's home are high. These stakes are often particularly important for

---

[1] Rakesh Kochhar and Mohamad Moslimani, *Wealth Surged in the Pandemic, but Debt Endures for Poorer Black and Hispanic Families*, ch. 4, Pew Research Center (2023), available at https://perma.cc/SMV3-5KPF.

Black households, for which the value of a home comprises on average 63% of total wealth, as compared to only 41% for White homeowners.[2]

**Response:** The allegations in Paragraph 18, including its footnotes, are introductory and conclusory in nature, and otherwise contain no allegations of fact directed to Rocket Mortgage. As such, no response to the allegations in Paragraph 18, or its footnotes, is required by Rocket Mortgage. To the extent Paragraph 18, including its footnotes, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states only that the referenced publications speak for themselves and are the best evidence of their contents and otherwise denies all allegations in Paragraph 18, including its footnotes. Except as expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 18.

19.    Denver, like most American cities, has a history of residential segregation by race. This fact was illustrated in a school desegregation lawsuit where the Denver School Board argued that its racially segregated schools were "the result of residential patterns" rather than deliberate segregation on the part of the School Board. *See Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 413 U.S. 189, 212 (1973).

**Response:** The allegations in Paragraph 19 are introductory and conclusory in nature, and otherwise contain no allegations of fact directed to Rocket Mortgage. As such, no response to the allegations in Paragraph 19 is required by Rocket Mortgage. To the extent Paragraph 19 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states only that referenced decision speaks for itself and is the best evidence of its contents and otherwise denies all allegations in Paragraph 19. Except as expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 19.

20.    Property values have historically been influenced by race. In the first two-

---

[2] *Id.*

9

thirds of the 20th century, properties in neighborhoods with greater concentrations of Black residents were systematically valued lower than properties in neighborhoods predominantly comprised of White residents. The federal government played a role in this process by discouraging banks from offering home loans in areas where larger concentrations of Black residents lived, a process commonly known as "redlining."[3] As a consequence, homes owned by Black residents were, on average, valued lower than homes owned by White residents, and when Black residents moved into predominantly White neighborhoods, property values would often decrease.[4]

**Response:** The allegations in Paragraph 20, including its footnotes, are introductory and conclusory in nature, and otherwise contain no allegations of fact directed to Rocket Mortgage. As such, no response to the allegations in Paragraph 20, including its footnotes, is required by Rocket Mortgage. To the extent Paragraph 20, including its footnotes, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states only that the referenced publications speak for themselves and are the best evidence of their contents and otherwise denies all allegations in Paragraph 20, including its footnotes. Except as expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 20.

21.     To obtain a loan to purchase a property or refinance a mortgage, a real-estate appraisal is usually required. In the past, appraisal standards and criteria contained explicit racial factors, which instructed appraisers to consider the racial makeup of the surrounding neighborhood as part of assigning a value to a home.[5] In the 1970s, the U.S. Department of Justice sued to end the practice of using race in real-estate appraisals. *See United States v. Am. Inst. of Real Est. Appraisers*, 442 F. Supp. 1072, 1076 (N.D. Ill. 1977).

**Response:** The allegations in Paragraph 21, including its footnotes, are

---

[3] Federal Reserve History, *Redlining* (June 2, 2023), available at https://perma.cc/EF97- JPCA.

[4] Daniel Aaronson, Daniel Hartley, and Bhashkar Mazumder, *The Effects of the 1930s HOLC "Redlining" Maps*, Working Paper 2017-12, Federal Reserve Bank of Chicago (2020), available at https://perma.cc/ZS8E-H98N; Prottoy A. Akbar, Sijie Li Hickly, Allison Shertzer, and Randall P. Walsh, *Racial Segregation in Housing Markets and the Erosion of Black Wealth*, The Review of Economics and Statistics (2022), available at https://doi.org/10.1162/rest_a_01276.

[5] *See* Frederick Babcock, Appraisal of Real Estate 71 (1924); George L. Schmutz, The Appraisal Process 168 (1951).

introductory and conclusory in nature, and otherwise contain no allegations of fact directed to Rocket Mortgage. As such, no response to the allegations in Paragraph 21, including its footnotes, is required by Rocket Mortgage. To the extent Paragraph 21, including its footnotes, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states only that referenced publication and decision speak for themselves and are the best evidence of their contents and otherwise denies all allegations in Paragraph 21, including its footnotes. Except as expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 21.

22.    Recent studies indicate that race continues to play a role in some appraisals. Appraisals for home purchases are more likely to fall below the contract price when the borrower is Black than when the borrower is White.[6] Similarly, a higher percentage of White residents correlates with higher appraised values in a neighborhood, even when controlling for house quality, neighborhood socioeconomic status, and area amenities.[7]

**Response:** The allegations in Paragraph 22, including its footnotes, are introductory and conclusory in nature, and otherwise contain no allegations of fact directed to Rocket Mortgage. As such, no response to the allegations in Paragraph 22, including its footnotes, is required by Rocket Mortgage. To the extent Paragraph 22, including its footnotes, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states only that the referenced publications speak for themselves and are the best evidence of their contents and otherwise denies all allegations in Paragraph 22, including its footnotes. Except as

---

[6] Freddie Mac, *Racial and Ethnic Valuation Gaps In Home Purchase Appraisals* (2021), available at https://perma.cc/TK9F-PT2D.

[7] Junia Howell and Elizabeth Korver-Glenn, *Appraised: The Persistent Evaluation of White Neighborhoods as More Valuable Than Communities of Color*, at 10–12 (2022), available at https://perma.cc/C6MK-A77M.

expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 22.

**B.    Ms. Cheroutes's purchase of the Subject Property.**

23.    Ms. Cheroutes is Black and has two adult children.

**Response:** Paragraph 23 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 23 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 23, and so denies them.

24.    Ms. Cheroutes purchased the Subject Property in 2011 for $270,000, and she still owns the Subject Property today.

**Response:** Paragraph 24 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 24 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and so denies them.

25.    At the time of purchase, Ms. Cheroutes took out a loan to cover both the purchase price and the cost of major renovations that she subsequently completed.

**Response:** Paragraph 25 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 25 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 25, and so denies them.

26.    At all times relevant to the Subject Appraisal, Ms. Cheroutes has lived in the unit at 751 Ash Street and has rented out the unit at 749 Ash Street.

**Response:** Paragraph 26 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 26 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 26, and so denies them.

27.    Ms. Cheroutes purchased the Subject Property at a favorable time. Between 2011 and 2021, the average home sale price in the Denver metro area[8] increased from about $256,000 to about $612,000.[9]

**Response:** Paragraph 27, including its footnotes, contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 27, including its footnotes, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 27, including its footnotes, and so denies them. Further answering, Rocket Mortgage states that the referenced publications speak for themselves and are the best evidence of their contents.

28.    Ms. Cheroutes's home is located in the Hale neighborhood of Denver, three miles from downtown Denver, one mile from Congress Park, and just a few blocks from popular restaurants and Rose Medical Center.

**Response**: Paragraph 28 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 28 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to

---

[8] The real estate industry defines "Denver metro area" as including the City and County of Denver and ten other nearby counties. *See* REcolorado, *Market Trends*, available at https://perma.cc/XF4L-QQMN.

[9] Katie Eastman, *Priced Out: How the Denver Metro housing market got to where it is today*, 9News (May 15, 2022), available at https://perma.cc/6KW7-JYT3.

admit or deny the allegations in Paragraph 28, and so denies them.

29.     The Subject Property, shown below in a recent photograph, is located mid-block on a shady, tree-lined residential street. Within two blocks of the Subject Property is the second location of Snooze A.M. Eatery, a breakfast/brunch restaurant that now has over 70 locations in ten states. The Subject Property is also located a short two-block walk from the first Trader Joe's grocery store to open in Denver.



**Response:** Paragraph 29 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 29 may be construed to contain allegations of fact directed to Rocket Mortgage, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 29, and so denies them.

30.     As shown in the map below, the Subject Property is located a few blocks east of Colorado Boulevard, on the edge of the Hale neighborhood. On the other side of Colorado Boulevard lies the neighborhood of Congress Park. And just south of the Subject Property is the neighborhood of Hilltop, which is one of the wealthiest neighborhoods in Denver, with some of the highest property values in the city. The population of Hale is predominantly White: its resident population is approximately 77 percent White and 5 percent Black. The Subject Property's census block group is approximately 78 percent White and 4 percent Black. Congress Park is approximately 81 percent White and 3 percent Black.



**Response:** Paragraph 30 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 30 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 30, and so denies them.

**C.      Ms. Cheroutes sought to refinance the Subject Property to take advantage of historically low interest rates.**

31.      In late 2020, Ms. Cheroutes learned that interest rates for residential mortgage loans were at historic lows and had dropped significantly even in the prior year. Seeking to save money by refinancing with those low rates, Ms. Cheroutes contacted Rocket, a company she had used previously for her home mortgage, about refinancing her mortgage loan on the Subject Property.

**Response:** The first sentence of Paragraph 31 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent the first sentence of Paragraph 31 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies the same. In response to the allegations in the second sentence of Paragraph 31, Rocket Mortgage admits only that Cheroutes contacted Rocket Mortgage about refinancing a mortgage loan in or about December 2020. Rocket Mortgage lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 31, and so denies them. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 31.

32.      When Ms. Cheroutes initially contacted Rocket, a representative told her that an application for a new mortgage loan would be worthwhile because the rates were so low and that it was not an issue that she had already refinanced—through Rocket—a year earlier.

**Response:** The allegations in Paragraph 32 are vague, ambiguous, imprecise and otherwise fail to identify the date of or Rocket Mortgage team who participated in the

referenced "initial contact." Rocket Mortgage cannot, therefore, admit or deny the

allegations in Paragraph 32, and so denies them.

33.    The Rocket representative provided a written loan estimate to Ms.
Cheroutes. The loan estimate stated that the loan amount was $563,000, the interest rate
was fixed at 2.75%, and mortgage insurance was not required. The loan estimate
indicated that these terms were based in part on an estimated property value of $860,000,
which was the appraised value of the property for Rocket's refinancing the previous year.
Compared with her existing mortgage loan, the loan estimate provided a lower interest
rate, lower monthly payment amount, shorter loan term, and lower total repayment
amount over the lifetime of the loan.

**Response:** The allegations in Paragraph 33 are vague, ambiguous, imprecise and

otherwise fail to identify the referenced Rocket Mortgage "representative," the date of the

alleged contact, or attach the referenced "loan estimate." Rocket Mortgage cannot,

therefore, admit or deny the allegations in Paragraph 33, and so denies them. Further

answering, Rocket Mortgage states that the unidentified and unattached "loan estimate"

speaks for itself and is the best evidence of its contents.

34.    The Rocket representative informed Ms. Cheroutes that an appraisal of the
property would be required, as the refinancing estimate was dependent on the value of
the property.

**Response:** The allegations in Paragraph 34 are vague, ambiguous, imprecise and

otherwise fail to identify the referenced Rocket Mortgage "representative" or the date of

the alleged contact. Rocket Mortgage cannot, therefore, admit or deny the allegations in

Paragraph 34, and so denies them.

**D.    Background on residential appraisals.**

35.    Appraisals must comply with the Uniform Standards of Professional
Appraisal Practice ("USPAP"). *See* 12 U.S.C. § 3339. An appraisal, according to the
USPAP, is "the act or process of developing an opinion of value," and it is also the name
of an opinion of value.

**Response:** Paragraph 35 states conclusions of law and otherwise contains no

allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket

17

Mortgage. To the extent Paragraph 35 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the referenced statute and USPAP speak for themselves and are the best evidence of their contents, and otherwise denies the allegations in Paragraph 35.

36.    Once a mortgage loan applicant provides certain basic pieces of information to a lender, the lender is required to provide a written loan estimate. Next, the lender will generally obtain a residential appraisal and rely on that appraisal in its decision regarding the loan application. If the appraised value is less than the estimated value in the loan estimate, it is more likely that the lender will not offer a loan or will offer terms that are less favorable to the applicant.

**Response:** Paragraph 36 is introductory and conclusory in nature and otherwise contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 36 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that such allegations are vague, ambiguous, imprecise, hypothetical in nature, and otherwise fail to identify the referenced requirement. Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

37.    The process for preparing residential appraisals for what are known as "conventional" mortgage loans in the United States has been standardized by the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Appraisers evaluating residential properties for conventional loans generally use the forms promulgated by Fannie Mae and Freddie Mac to appraise property.

**Response:** Paragraph 37 is introductory and conclusory in nature and otherwise contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 37 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that such allegations are vague, ambiguous, imprecise, hypothetical in nature, and otherwise fail to identify or attach the referenced "standardized" process or forms. Rocket Mortgage

cannot, therefore, admit or deny them, and so denies them.

38.    A residential appraisal involves conducting an in-person home inspection of the property at issue and gathering many details about the property and its characteristics by consulting documentary materials such as tax records and property databases.

**Response:** Paragraph 38 is introductory and conclusory in nature and otherwise contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 38 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that such allegations are vague, ambiguous, imprecise, hypothetical in nature, and otherwise fail to identify the referenced "details" and "documentary materials." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

39.    Once the appraiser has collected details about the property, the appraiser searches for sales comparables ("comps") to derive an estimated value for the property.[10] Sales comps should have similar characteristics to the property, and their sale dates should also be relatively close in time to the appraisal date. Appraisers will sometimes choose two or more properties to serve as sales comps, one with certain characteristics that are greater and/or better than the property and the other with characteristics that are lesser and/or worse. This technique is called "bracketing," and it allows the appraiser to arrive at a middle-ground value for the property being appraised.

**Response:** Paragraph 39, including its footnote, is introductory and conclusory in nature and otherwise contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 39, including its footnote, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that such allegations are vague, ambiguous, imprecise, and otherwise hypothetical in nature. Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

---

[10] This section describes the "sales-comparison approach" to property valuation. Other methods include the cost-comparison approach and the income approach. All appraisals discussed in this Complaint used the sales-comparison approach.

40.    Once sales comps are chosen, the appraiser then makes monetary adjustments to each comp to account for differences between the comp and the subject property. The Fannie Mae/Freddie Mac uniform appraisal forms list categories where adjustments may be made.[11] The appraiser then chooses an appraised value based on the adjusted values of the sales comps.

**Response:** Paragraph 40, including its footnote, is introductory and conclusory in

nature and otherwise contains no allegations of fact directed to Rocket Mortgage, and so

requires no response by Rocket Mortgage. To the extent Paragraph 40, including its

footnote, may be construed to contain allegations of fact directed to Rocket Mortgage

requiring a response, Rocket Mortgage states that such allegations are vague,

ambiguous, imprecise and hypothetical in nature. Rocket Mortgage cannot, therefore,

admit or deny them, and so denies them. Further answering, Rocket Mortgage states that

the referenced forms speak for themselves and are the best evidence of their contents.

41.    Mortgage lenders and AMCs often have guidelines or criteria regarding the choice of sales comps and default adjustment amounts. Within these general guidelines, the appraiser still must make choices when selecting appropriate sales comps and making appropriate adjustments. Those choices by appraisers can significantly affect their ultimate opinion of a property's value.

**Response:** Paragraph 41 is introductory and conclusory in nature and otherwise

contains no allegations of fact directed to Rocket Mortgage, and so requires no response

by Rocket Mortgage. To the extent Paragraph 41 may be construed to contain allegations

of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that

such allegations are vague, ambiguous, imprecise, hypothetical in nature and otherwise

---

[11] These categories include: whether there were sale or financing concessions; the date of the sale; the location of the property; whether the property is a leasehold or fee simple; the site size; whether the property has a view; the design/style of the property; the quality of the property's construction; the age of the property; the condition of the property; the property's gross building area; the number of rooms, bedrooms, and bathrooms in the property; the property's basement features; and a number of other amenities or physical characteristics such as the type of utilities, whether the property has a patio or porch, etc.

fail to identify the referenced "guidelines" or "criteria." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

**E.    Solidifi's role in the appraisal process.**

42.    As an AMC, Solidifi contracts with lenders to conduct appraisals, which must be completed as part of financing a home loan.

**Response:** Paragraph 42 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 42 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage denies that Solidifi "conducts appraisals" for Rocket Mortgage pursuant to a contract or otherwise. Appraisals are performed by independent, licensed third-party appraisers. Further answering, Rocket Mortgage states that it lacks knowledge or information concerning Solidifi's contracts with other lenders, and so denies the allegations in Paragraph 42 relating to such contracts.

43.    To complete the required appraisal as part of Ms. Cheroutes's refinancing application, Rocket contracted with Solidifi to conduct an appraisal of the Subject Property.

**Response:** The allegations in Paragraph 43 are vague, ambiguous, imprecise, and otherwise fail to identify the referenced "refinancing application." Rocket Mortgage cannot, therefore, admit or deny the allegations in Paragraph 43, and so denies them. Further answering, Rocket Mortgage specifically denies that it "contracted with Solidifi to conduct an appraisal of the Subject Property."

44.    On or about January 14, 2021, Solidifi entered into an agreement with Maverick to carry out the appraisal. The agreement between Solidifi and Maverick specified certain standards Maverick would follow in carrying out the appraisal, gave Solidifi authority to require changes to the appraisal under certain circumstances, required Maverick to notify Solidifi of any complaints it received about its work from the homeowner or borrower, and stated that the appraisal was a "work[] made for hire" that would constitute the property of Solidifi.

**Response:** Paragraph 44 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 44 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

45.    Before this appraisal, Solidifi had an ongoing working relationship with Mr. Mykhailyna and Maverick. Solidifi maintains a panel of appraisers it uses to enable Solidifi to carry out appraisals with lenders. Without a panel of appraisers, AMCs like Solidifi would not exist because they would have no one to complete the appraisals being requested by lenders. Thus, the appraiser panel is the core of how Solidifi performs contracts for lenders.

**Response:** Paragraph 45 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 45 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

46.    Solidifi takes several steps to control the appraisers who serve on its panel. To determine who is eligible to join its panel of appraisers, Solidifi's Credentials Management Team reviews documents and information, including licensing and insurance, and conducts a background check.

**Response:** Paragraph 46 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 46 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

47.    After initial acceptance, Solidifi puts an appraiser in "New Recruit" status until the appraiser successfully completes a series of steps. These steps include completing three appraisals that include multiple levels of monitoring by Solidifi, including feedback and coaching from Solidifi's Regional Manager. The appraiser must have an interview with the Regional Manager, and it must receive approval that it has met Solidifi's

standards for the types of appraisals it is seeking to be assigned. Only then will Solidifi promote an appraiser from "New Recruit" to "Active Status," which allows the appraiser to be assigned general appraisal orders.

**Response:** Paragraph 47 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 47 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

48. When Solidifi assigns an appraiser to a project, Solidifi provides the appraiser with a letter of engagement informing the appraiser of the assignment type and the criteria.

**Response:** Paragraph 48 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 48 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

49. Even once an appraiser is in "Active Status," Solidifi exercises a significant amount of control over how the appraiser completes an appraisal. As described in further detail below, Solidifi provided extensive guidance and guidelines to Mr. Mykhailyna in how to conduct the Subject Appraisal. In addition, in order to accept an appraisal assignment, Mr. Mykhailyna was required to, and did, agree that Solidifi had the right to review and require changes to any appraisal in order to ensure that the appraisal met applicable professional and industry standards and any applicable governmental requirements.

**Response:** Paragraph 49 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 49 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

50. Solidifi's contracts with appraisers also make clear that Solidifi owns the

appraisals that are produced by its appraisers.

**Response:** Paragraph 50 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 50 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

51.     Solidifi requires its appraisers to follow a code of conduct, which requires them to help create a positive work environment, avoid conflicts of interest, and preserve confidentiality.

**Response:** Paragraph 51 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 51 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

52.     Appraisers on Solidifi's panel of appraisers use Solidifi's computer systems for various tasks, including communicating with Solidifi and submitting the appraisal reports to Solidifi.

**Response:** Paragraph 52 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 52 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

53.     AMCs also control their appraisers through quality control and rating systems. Solidifi rates its appraisers and tracks its appraisers' work history.

**Response**: Paragraph 53 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 53

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

54.    If Solidifi identifies issues in an appraiser's performance or work quality, Solidifi will sometimes demote the appraiser to "Watch Status." When an appraiser is on Watch Status, the appraiser must successfully complete three assignments with additional oversight before becoming eligible to return to Active Status. While in Watch Status, an appraiser receives coaching sessions from Solidifi.

**Response:** Paragraph 54 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 54 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

55.    The Solidifi Standards provide guidance for the sales-comparison approach. In particular, they state that the following must be clearly explained and detailed in any appraisal: gross adjustments in excess of +/- 25%, net adjustments in excess of +/- 15%, and line adjustments in excess of +/- 10%[12]; utilization of comps located more than one mile from the subject property; utilization of sales that closed more than six months prior to the effective date of the report; and utilization of comps with a gross living area variance of +/- 20%.

**Response:** Paragraph 55, including its footnote, contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 55, including its footnote, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

56.    These standards also require the appraiser to use, as a comp, at least one

---

[12] A net adjustment is the final percentage difference between the original sales price and the adjusted sales price calculated after adding and subtracting each line-item adjustment. Gross adjustments are the percentage of total adjustments made, both positive and negative, as a percentage of the original sales price. Higher figures in either or both categories can indicate that the selected comp is not actually that comparable to the property being appraised.

relevant listing from the subject property's immediate market.

**Response:** Paragraph 56 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 56 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

57.    After receiving an appraisal, Solidifi reviews specific sections of the report for valuation, looking for both overvaluation and undervaluation. Appraisals are not forwarded to the lender until they satisfy Solidifi's review process.

**Response:** Paragraph 57 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 57 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

58.    The policies described in Paragraphs 46 through 57 were in effect at the time of the Subject Appraisal. The agreement between Solidifi and Maverick was consistent with these policies.

**Response:** Paragraph 58 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 58 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

**F.    The appraiser's visit to the Subject Property.**

59.    On January 20, 2021, Mr. Mykhailyna visited the Subject Property as part of the process of conducting the appraisal. He was accompanied by another appraiser whom Mr. Mykhailyna was considering hiring. Mr. Mykhailyna and the prospective employee are both White.

**Response:** Paragraph 59 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 59 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

60.    When Mr. Mykhailyna arrived at the Subject Property, he initially knocked on the door of the unit where Ms. Cheroutes's tenant lived, 749 Ash Street. He spoke to the tenant, who was a White male, and inspected his unit.

**Response:** Paragraph 60 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 60 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

61.    After exiting the tenant's unit, Mr. Mykhailyna entered Ms. Cheroutes's backyard without giving notice of his arrival or introducing himself. To get to her backyard, he had to walk past the front door of the unit where Ms. Cheroutes lived, 751 Ash Street.

**Response:** Paragraph 61 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 61 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

62.    On the day of the appraisal, the Subject Property had a Black Lives Matter sign visible in its front yard. On their way to Ms. Cheroutes's backyard, Mr. Mykhailyna and the prospective employee passed by the Black Lives Matter sign, and the prospective employee made a comment about it to Mr. Mykhailyna.

**Response:** Paragraph 62 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 62

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

63. When Ms. Cheroutes became aware that two men had entered her backyard, she went outside to introduce herself. Mr. Mykhailyna appeared surprised when she said that she was the owner and did not respond to Ms. Cheroutes's attempts to engage with him. He did not introduce or explain the role of the prospective employee.

**Response:** Paragraph 63 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 63 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

64. Mr. Mykhailyna and the prospective employee then entered the unit. The prospective employee spoke with Ms. Cheroutes's daughter, who was a college student at the time, while Mr. Mykhailyna conducted a brief inspection. Mr. Mykhailyna saw Ms. Cheroutes and her daughter in person and thus knew that they were Black.

**Response:** Paragraph 64 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 64 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

65. During the home inspection, Ms. Cheroutes attempted to inform Mr. Mykhailyna of recent improvements she had made to the property since the last appraisal, including replacing the gutters; replacing both back doors; washing and staining the fence; painting; and updating the kitchen, bath, and lighting. In response to Ms. Cheroutes's statements, Mr. Mykhailyna's facial expressions indicated to Ms. Cheroutes that he was not interested in the information provided, and he did not say anything or take notes. His appraisal report did not include the information she provided.

**Response:** Paragraph 65 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 65

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

66.    The inspection was brief, and Mr. Mykhailyna did not ask Ms. Cheroutes or her daughter any questions about the property.

**Response:** Paragraph 66 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 66 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

67.    Based on Mr. Mykhailyna's actions during the home inspection, Ms. Cheroutes was concerned that his appraisal would not fairly represent the value of her home, and she expressed those concerns to her daughter.

**Response:** Paragraph 67 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 67 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

68.    Mr. Mykhailyna and Maverick completed the Subject Appraisal on January 21, 2021. The appraised value was $640,000.

**Response:** Paragraph 68 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 68 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations in the first sentence, and so denies them. In response to the allegations in the second sentence of Paragraph 68, Rocket Mortgages states that the

Subject Appraisal speaks for itself and is the best evidence of its contents. Except as

expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 68.

**G.    The Subject Appraisal was significantly lower than both earlier and later appraisals of the Subject Property.**

69.    Between 2013 and 2022, Ms. Cheroutes obtained six appraisals and one residential evaluation of the Subject Property, primarily in conjunction with refinancing her mortgage to make renovations to the Subject Property or to take advantage of decreasing interest rates (with Rocket as the lender in three of these instances). As shown in the table below, these valuations reflected the consistent rise in prices in the Denver real-estate market, and in her popular neighborhood, with one exception: the Subject Appraisal.

| Date of Appraisal/Residential Evaluation | Appraised Value |
|---|---|
| 7/30/2013 | $552,000 |
| 2/5/2015 | $575,000 |
| 10/7/2016 | $600,000 |
| 12/19/2018 | $755,000 |
| 5/22/2020 | $860,000 |
| *1/20/2021 (Subject Appraisal)* | *$640,000* |
| 3/13/2022 | $885,000[13] |

**Response:** In response to the allegations in Paragraph 69, including its footnote,

Rocket Mortgage admits only that, at the time of the Subject Appraisal, Cheroutes had

obtained multiple residential mortgage loans from Rocket Mortgage. The remaining

allegations in Paragraph 69, including its footnote, contain no allegations of fact directed

to Rocket Mortgage, and so require no response by Rocket Mortgage. To the extent the

remaining allegations in Paragraph 69, including its footnote, may be construed to contain

allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage

states that it lacks sufficient knowledge or information to admit or deny them, and so

---

[13] The March 2022 evaluation was labeled a "residential evaluation" rather than an appraisal and did not include an inspection of the interior of the property.

denies them. Further answering, Rocket Mortgage states that the referenced "appraisals" speak for themselves and are the best evidence of their contents.

70. This steady rise in value (except for the Subject Appraisal) also reflects the care Ms. Cheroutes took of the Subject Property. Upon purchasing the duplex in 2011, she invested roughly $200,000 in renovations. Since then, she had spent thousands of dollars per year, and expended significant time and effort, on maintenance and repairs.

**Response:** Paragraph 70 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 70 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

71. Between the May 2020 appraisal and the Subject Appraisal in January 2021, Ms. Cheroutes made various improvements to the Subject Property, as described above. She replaced the back doors and the gutters, installed new granite countertops in the kitchen, and painted and updated the bathrooms, including replacing the vanity and lighting.

**Response:** Paragraph 71 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 71 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny them, and so denies them.

72. The Subject Appraisal was more than 25 percent lower than the $860,000 appraisal in May 2020, only eight months before the Subject Appraisal.

**Response:** Paragraph 72 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 72 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states only that the referenced appraisals speak for themselves and are the best evidence of their contents. Except as expressly stated

herein, Rocket Mortgage denies the allegations in Paragraph 72.

73.     No change in the Subject Property or the Denver real-estate market justified the decrease in value present in the Subject Appraisal. First, the home's condition did not deteriorate between 2020 and 2021, nor was any major defect discovered. On the contrary, Ms. Cheroutes had invested in improvements between the 2020 appraisal and the Subject Appraisal. Second, the market for residential properties in Denver did not deteriorate due to market conditions or economic factors. Rather, media articles in the months and even weeks prior to the Subject Appraisal touted Denver's record-setting housing market, including a CNBC article from October 5, 2020, titled "Denver suddenly has one of the most competitive housing markets in America," and another article published in 5280 Magazine *just a week before the Subject Appraisal was conducted* with the headline, "Denver's 2020 Real Estate Market Saw an Unprecedented Number of Records Broken."[14]

**Response:** Rocket Mortgage denies the allegations in the first sentence of Paragraph 73. The remaining allegations in Paragraph 73, including its footnote, contain no allegations of fact directed to Rocket Mortgage, and so require no response by Rocket Mortgage. To the extent the remaining allegations of Paragraph 73, including its footnote, may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the referenced articles speak for themselves and are the best evidence their contents and that it otherwise lacks sufficient knowledge or information to admit or deny the remaining allegations, and so denies them.

74.     The Subject Appraisal was also significantly lower than the December 2018 appraisal, which was $755,000. In contrast, between December 2018 and December 2020, the median sale price of townhouses and condominium properties in Denver County had increased by almost 9 percent. Thus, in comparison to the 2018 appraisal, the Subject Appraisal valued Ms. Cheroutes's home 22 percent lower from what would have been expected if Ms. Cheroutes's property had been consistent with median sales prices in Denver. There had been no significant change to the Subject Property or its surrounding neighborhood that would account for this significantly lower valuation.

---

[14] CBS News Colorado, *Denver Ranked #4 Hottest Real Estate Market During COVID Pandemic* (Nov. 18, 2020), available at https://perma.cc/W7L3-CV7F;Diana Olick, *Denver suddenly has one of the most competitive housing markets in America*, CNBC (Oct. 5, 2020), available at https://perma.cc/DF9N-XHYA;Cassidy Ritter, *Denver's 2020 Real Estate Market Saw an Unprecedented Number of Records Broken*, 5280 Magazine (Jan. 13, 2021), available at https://perma.cc/7RXJ- M7QL.

**Response:** Paragraph 74 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 74

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that the referenced appraisals speak for themselves

and are the best evidence of their contents, and that it otherwise lacks sufficient

knowledge or information to admit or deny them, and so denies them. Except as expressly

stated herein, Rocket Mortgage denies the allegations in Paragraph 74.

**H.    Mr. Mykhailyna's choices and errors in appraising the property showed that
his view of the Subject Property was affected by race.**

76.    Mr. Mykhailyna's decision to value the Subject Property at $640,000 was
based on a series of intentional choices and suspect errors that Mr. Mykhailyna made as
part of the appraisal process. Those choices and errors signaled that his view of the
Subject Property was affected by the race of its owner.

**Response:** Rocket Mortgage denies, upon information and belief, the allegations

in Paragraph 75.

**1.    Mr. Mykhailyna defined the Subject Property's neighborhood based on Ms.
Cheroutes's race, grouping the Subject Property with faraway
neighborhoods with much greater Black populations.**

76.    Mr. Mykhailyna approached the valuation of the Subject Property by
associating it with properties in neighborhoods with higher percentages of Black
residents. The uniform appraisal form that he used contained a fill-in-the-blank statement
intended to give the reader a sense of the current market conditions in the property's
"subject neighborhood." Mr. Mykhailyna completed the statement with the following
figures:



**Response:** Paragraph 76 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 76

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the

best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

77.    This price range did not accurately reflect home prices in Ms. Cheroutes's popular Hale neighborhood or similar, nearby neighborhoods. Rather, this range was based largely on properties from distant neighborhoods with far higher percentages of Black residents than Hale.

**Response:** Paragraph 77 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 77 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that the remaining allegations are otherwise vague, ambiguous, imprecise, and otherwise fail to define or identify the "similar, nearby neighborhoods" or "distant neighborhoods." Rocket Mortgage cannot, therefore, admit or deny the allegations, and so denies them.

78.    When HUD asked Mr. Mykhailyna to provide the properties he used to define the subject neighborhood, he provided the properties marked on the map below with black squares, with the Subject Property marked with a red square. The shading on the map shows the percentage of Black residents.



**Response:** Paragraph 78 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 78

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that it lacks sufficient knowledge or information to

admit or deny the allegations, and so denies them.

79.     Only one of the properties Mr. Mykhailyna referred to was in the Subject
Property's neighborhood of Hale, and six were in neighborhoods with four to five times as
many Black residents as Ms. Cheroutes's actual neighborhood. Those six properties were
also located many miles from the Subject Property.

**Response:** Paragraph 79 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 79

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that the allegations are vague, ambiguous and

imprecise and that it lacks sufficient knowledge or information to admit or deny the

allegations, and so denies them.

80.     Homes in Hale and adjacent neighborhoods generally had higher prices
than the distant homes in neighborhoods with higher Black populations that Mr.
Mykhailyna used to define the Subject Property's neighborhood. By using those distant
properties to set the range for Ms. Cheroutes's "subject neighborhood," Mr. Mykhailyna
caused the $640,000 appraisal to appear well within the range of comparable properties.

**Response:** Paragraph 80 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 80

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that the allegations are vague, ambiguous, imprecise

and otherwise fail to define the terms "adjacent neighborhoods," "generally…higher

prices," "higher Black populations," and "distant properties." Rocket Mortgage cannot,

therefore, admit or deny the allegations, and so denies them.

**2. Mr. Mykhailyna chose sales comps based on race, selecting less valuable
properties from distant neighborhoods with larger Black populations**

Case No. 1:24-cv-02915-GPG-TPO    Document 131    filed 10/10/25    USDC Colorado
pg 37 of 69

**instead of similar properties from nearby neighborhoods.**

81.    Solidifi's agreement with Maverick instructed it to choose sales comps within one mile of the subject property (i.e., a circular one-mile radius with the focal point at the subject property). When Mr. Mykhailyna searched for sales within one mile, there were six duplex results, shown in the following table. These results had higher average sales prices than the properties he eventually chose as sales comps.

| Duplex Sales Within One Mile of Subject Property | |
|---|---|
| Address | Price |
| 1001-1003 Adams Street | $1,221,500 |
| 1300 Madison Street | $700,000 |
| 1451 Garfield Street | $665,000 |
| 1465 North Monroe Street | $696,250 |
| 1117 Garfield Street | $660,000 |
| 1476 Dahlia Street | $698,000 (used as sales comp) |

**Response:** Paragraph 81 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 81 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

82.    Without any legitimate, non-discriminatory justification, Mr. Mykhailyna decided against selecting his sales comps from that pool of six. Instead, he expanded the search radius to 2.5 miles, generating a list of twenty-seven duplexes that had sold within the prior year. The following map shows these twenty-seven results, distinguishing between the four properties he chose as comps and the twenty-three properties he did not choose:



**Response:** Paragraph 82 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 82 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

83. Only five of the twenty-seven duplexes were to the east of the Subject Property and Colorado Boulevard (the north-south street marked in yellow, running just to the west of the Subject Property). Nevertheless, Mr. Mykhailyna chose four of these five properties to use as comps and did not use any of the twenty-two duplexes to the west of the Subject Property, even though several of them are closer to the Subject Property than the comps he did use.

**Response:** Paragraph 83 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 83 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

84. Mr. Mykhailyna's later explanation of his east-only approach was suspect. He stated that he did so because the major street to the west, Colorado Boulevard, was a "hard" neighborhood border, thus suggesting that comps could not be sourced from that area. But by restricting the search in this manner, almost all of the comps he ultimately chose also crossed neighborhood borders and crossed major streets. Most of the comps that Mr. Mykhailyna chose were not even in adjoining neighborhoods, as opposed to the closer and adjoining—but mostly White—Congress Park neighborhood to the west, from where he chose not to draw comps.

**Response:** Paragraph 84 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 84 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

85. Mr. Mykhailyna's refusal to look west of Colorado Boulevard for comps was

also inconsistent with his approach in an appraisal he had completed just prior for the White owners of a fourplex property located 0.7 miles to the east, in the same neighborhood as the Subject Property. In that appraisal, Mr. Mykhailyna chose four comps to the west of the property, including two on the other side of Colorado Boulevard, in Congress Park. He made these choices even though the property being appraised was farther from Congress Park than the Subject Property. Furthermore, when appraising that property owned by a White family, he defined the property's neighborhood to include much of Congress Park.

**Response:** Paragraph 85 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 85 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 85 are vague, ambiguous, imprecise and fail to identify the referenced "property owned by a White family." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

86.    Each of the four sales comps Mr. Mykhailyna selected for the Subject Appraisal are in census block groups and in neighborhoods with higher concentrations of Black residents than that of the Subject Property.

**Response:** Paragraph 86 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 86 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal and unidentified census data speak for themselves and are the best evidence of their contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

87.    Multiple properties to the west were more similar to the Subject Property in terms of location, size, and/or condition than the properties Mr. Mykhailyna chose as comps. Those properties to the west were in areas with lower concentrations of Black residents than the areas from which Mr. Mykhailyna chose comps.

**Response:** Paragraph 87 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 87 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 87 are vague, ambiguous, imprecise and otherwise fail to identify the referenced "multiple properties." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

88.     The comps chosen by Mr. Mykhailyna deviated from the Subject Property in other obvious ways. Two of them were within a few feet of East Colfax Avenue, a street with a well-known reputation for activity considered detrimental to housing value, often drawing law enforcement and thus loud sirens and bright lights late at night. This reputation and activity had a significant detrimental effect on the value of homes located near this part of Colfax Avenue. This reputation was common knowledge to anyone familiar with the area and certainly to an appraiser in Denver.

**Response:** Paragraph 88 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 88 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 88 are vague, ambiguous, imprecise, speculative, and otherwise fail to define the purported "well-known reputation for activity considered detrimental to housing value" and "significant detrimental effect on the value of homes." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

89.     The selected comps were not even half a block from this part of East Colfax Avenue. One of the East Colfax-adjacent comps was across the street from an abandoned building and adjacent to a car shop specializing in oil changes. Another comp was across the street from a discount used car dealership. These characteristics would be expected to depress the values of those comps when compared to the quiet, tree-lined residential street where the Subject Property was located. But Mr. Mykhailyna chose to make only small upwards adjustments ($10,000 and $14,000, or two percent of the sales prices) to account for these substantial differences in location and attractiveness.

**Response:** Paragraph 89 contains no allegations of fact directed to Rocket Mortgage, and therefore requires no response by Rocket Mortgage. To the extent Paragraph 89 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 89 are vague, ambiguous, imprecise, speculative in nature and otherwise fail to identify the basis for the referenced "expectation" of "characteristics" likely to "depress values." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

90.    In contrast, when Mr. Mykhailyna conducted an appraisal for the White owners of a fourplex property less than a mile from the Subject Property, Mr. Mykhailyna made upwards adjustments of $74,000 and $87,000 (10 percent of the sales price for these comps) for comps he chose that were in locations with lower property values. Mr. Mykhailyna completed this other appraisal just one month before the Subject Appraisal.

**Response:** Paragraph 90 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 90 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the referenced (but unidentified and unattached) appraisal speaks for itself and is the best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

91.    A third comp he chose was located in a distant neighborhood from Hale, Washington-Virginia Vale. That property had an assessed land value by the Denver Assessor's Office in 2021 of $24.60 per square foot, far lower than the Subject Property's land, which was valued at $64.96 per square foot. According to Denver's Assessor's Office in that same year, Ms. Cheroutes's land was worth $242,400 *more* than the "comp" in Washington-Virginia Vale. But in the Subject Appraisal, Mr. Mykhailyna inexplicably adjusted that comp *downwards* by $16,000 because it had a slightly larger lot size than the Subject Property.

**Response:** Paragraph 91 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 91 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

92.    As a fifth comp, Mr. Mykhailyna chose a listing that had not yet sold. This listing was even farther northeast than any of the four sales comps and in a neighborhood with an even higher percentage of Black residents.

**Response:** Paragraph 92 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 92 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

93.    Mr. Mykhailyna's selection of comps was also inconsistent with prior appraisals of the same property carried out by different appraisers subject to the same professional standards and rules. Despite Mr. Mykhailyna's stated rationale that neighborhoods to the west were not comparable, prior appraisals of the Subject Property relied heavily on sales comps west of the Subject Property, including west of Colorado Boulevard. For example, in the May 2020 appraisal, all sales comps were west of the Subject Property. In the 2018 appraisal, all but one of the sales comps were west of the Subject Property, with three sales comps located in Congress Park.

**Response:** Paragraph 93 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 93 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal and other referenced (but unidentified and unattached) appraisals speak for themselves and are the best evidence of their contents and that it otherwise lacks sufficient knowledge or information to admit

or deny the allegations, and so denies them.

94.    In sum, Mr. Mykhailyna's selection of sales comps further showed that race affected his view of the Subject Property's value. Through his selection of sales comps, Mr. Mykhailyna associated the Subject Property with properties in more distant neighborhoods rather than ones geographically close to Hale, with properties with lesser marketability because of their proximity to East Colfax Avenue, and with areas with higher concentrations of Black residents.

**Response:** Paragraph 94 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 94 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents and that it otherwise denies the allegations upon information and belief.

### 3. Mr. Mykhailyna also lowered the Subject Property's appraised value by making numerous unsupported adjustments and errors that deviated from his own past practices.

95.    In generating the Subject Appraisal, Mr. Mykhailyna made numerous adjustments that deviated from appraisal standards and other appraisals of the Subject Property and that unjustifiably reduced the Subject Property's value.

**Response:** Paragraph 95 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 95 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 95 are vague, ambiguous, imprecise and fail to identify the referenced "adjustments," "appraisal standards," and "other appraisals." Rocket Mortgage cannot, therefore, admit or deny the remaining allegations, and so denies them.

96.    The map displayed after Paragraph 82 ("Mr. Mykhailyna's Search Results") displays the pre-adjustment sales prices of the sales comps selected by Mr. Mykhailyna.

Mr. Mykhailyna adjusted the two highest-value comps downwards because they had
larger lot sizes than the Subject Property. But he used an inexplicably large multiplier of
$40 per square foot to apply the adjustment, which resulted in a 13 percent downwards
adjustment from the sale price of two of the comps. In dollar terms, this adjustment
amounted to a decrease in value of $96,800 and $93,600 for these two comps, which
significantly depressed their value as comparable properties.

**Response:** Paragraph 96 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 96

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that the Subject Appraisal and referenced map speak

for themselves and are the best evidence of their contents. The remaining allegations in

Paragraph 96 are vague, ambiguous, imprecise, and fail to identify the source or support

for the assertion regarding the purported use of an "inexplicably large multiplier." Rocket

Mortgage cannot, therefore, admit or deny the remaining allegations, and so denies them.

97.     These large lot size adjustments were not only unjustified but also
inconsistent with Mr. Mykhailyna's prior practices. In the sixteen appraisals of two- to four-
unit properties that Mr. Mykhailyna had completed in Denver between 2020 and 2022, he
had never used anywhere near such a large multiplier. In fact, in twelve of those
appraisals, his lot size adjustments applied a multiplier no greater than $5 per square
foot.

**Response:** Paragraph 97 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 97

may be construed to contain allegations of fact directed to Rocket Mortgage requiring a

response, Rocket Mortgage states that the Subject Appraisal and referenced (but

unidentified and an unattached) "sixteen appraisals" speak for themselves and are the

best evidence of their contents and that it otherwise lacks sufficient knowledge or

information to admit or deny the allegations, and so denies them.

98.     These large lot-size adjustments were also inconsistent with prior
appraisals by others of the Subject Property. The 2020 appraisal applied no lot-size
adjustments. The 2018 appraisal applied a $1 per square foot adjustment. And the 2015

45

appraisal also applied no lot-size adjustments, despite two of the comparable properties having 50 percent larger lots than the Subject Property.

**Response:** Paragraph 98 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 98 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal and referenced (but unidentified and an unattached) "prior appraisals" speak for themselves and are the best evidence of their contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

99.    Mr. Mykhailyna's lot-size adjustments also exceeded Solidifi's standards, which require an explanation for specific adjustments of more than 10 percent. But Mr. Mykhailyna did not supply any reasoned justification for these adjustments. All he wrote in the addendum of the Subject Appraisal was that he had conducted a "matched pair analysis of comparable lot sizes in the subject's market area"; he did not elaborate further.

**Response:** Paragraph 99 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 99 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal and referenced (but unidentified and an unattached) "Solidifi[] standards" speak for themselves and are the best evidence of their contents and that it otherwise lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

100.    If Mr. Mykhailyna had instead used a multiplier of $5 per square foot, the decrease in dollar value based on lot size for the comps discussed in Paragraph 95 would have been $12,100 and $11,700—a less than 2 percent downwards adjustment from the comps' sales prices.

**Response:** Paragraph 100 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 100 may be construed to contain allegations of fact directed to Rocket Mortgage requiring

a response, Rocket Mortgage states that the allegations are speculative and hypothetical in nature. Rocket Mortgage cannot, therefore, admit or deny them and so denies them.

101.    Mr. Mykhailyna also did not accurately report a major component of property valuations: the number of bedrooms. In his appraisal report, he excluded the third bedroom in the basement of each unit of the Subject Property. In contrast, for three of the sales comps he selected, he included basement bedrooms. This difference should have resulted in upwards adjustments had Ms. Cheroutes's basement bedrooms been counted.

**Response:** Paragraph 101 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 101 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. Except as expressly stated herein, Rocket Mortgage denies the allegations in Paragraph 101.

102.    Mr. Mykhailyna's unjustified exclusion of the basement bedrooms significantly lowered the value he assigned to the Subject Property. In the appraisal report, he wrote that the value per bedroom of the comps was $160,000. By that metric, if he had included the two basement bedrooms, the value of the Subject Property would have been $320,000 higher.

**Response:** Paragraph 102 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 102 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 102 are vague, ambiguous, imprecise, and speculative and hypothetical in nature. Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

103.    Another comp that Mr. Mykhailyna chose (one of those located near East Colfax Avenue) required such large upwards adjustments that they exceeded Solidifi's standards in multiple ways, as explained below. This level of adjustment suggests that the property was not actually comparable because the Subject Property was superior in

so many respects.

**Response:** Paragraph 103 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 103 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 103 are vague, ambiguous, imprecise, speculative and hypothetical in nature, and otherwise fail to identify the referenced "[]other comp" or Solidify "standards." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

104.    In the Subject Appraisal, Mr. Mykhailyna also incorrectly listed the Subject Property's neighborhood elementary school as Palmer Elementary School, which is northeast of the Subject Property. The Subject Property's actual neighborhood elementary school is Steck Elementary School, which is south of the Subject Property and much closer than Palmer. Palmer has a much higher concentration of Black students (19 percent) than Steck (only 4 percent). On the other hand, when appraising a nearby property owned by White homeowners, he correctly identified the closest neighborhood school.

**Response:** Paragraph 104 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 104 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 104 are vague, ambiguous, imprecise, and otherwise fail to identify the referenced (but unidentified and unattached) appraisal of "a nearby property owned by White homeowners." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

105.    Mr. Mykhailyna made a number of other errors, such as using gross living area as opposed to gross building area; under-counting the Subject Property's gross living area; failing to mention improvements that had been made to the property; incorrectly stating that the property lacked a fence, attic, and energy-efficient appliances;

and incorrectly rating the condition of one of the comps. These errors demonstrate a lack of attention to detail that mirrored Mr. Mykhailyna's cursory inspection of the Subject Property and his dismissive attitude towards Ms. Cheroutes.

**Response:** Paragraph 105 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 105 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. Except as specifically stated herein, Rocket Mortgage denies the allegations in Paragraph 105.

106.    Mr. Mykhailyna's improper adjustments and errors were inconsistent with the USPAP, which requires appraisers to "be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal" and "not commit a substantial error of omission or commission that significantly affects an appraisal." USPAP Standards Rule 1-1 (2020-2021).

**Response:** Paragraph 106 contains no allegations of fact directed to Rocket Mortgage, and therefore requires no response by Rocket Mortgage. To the extent Paragraph 106 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 106 are vague, ambiguous, imprecise, and otherwise fail to identify the referenced "improper adjustments and errors" purportedly "inconsistent with USPAP." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

**I.    Solidifi reviewed the Subject Appraisal.**

107.    On January 21, 2021, Mr. Mykhailyna and Maverick submitted the Subject Appraisal to Solidifi.

**Response:** Paragraph 107 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph

107 may be construed to contain allegations of fact directed to Rocket Mortgage requiring

a response, Rocket Mortgage states that it lacks sufficient knowledge or information to

admit or deny the allegations, and so denies them.

108.    In multiple ways, the Subject Appraisal did not comply with Solidifi's standards and requirements for appraisers. For example, whenever an appraiser's net adjustments to a comp exceeded 15 percent, or gross adjustments exceeded 25 percent, Solidifi required a clear and detailed explanation. The adjustments Mr. Mykhailyna made for one of the comps exceeded both of these standards, with net and gross adjustments totaling 28.4 percent. However, he did not provide a clear and detailed explanation for these adjustments.

**Response:** Paragraph 108 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph

108 may be construed to contain allegations of fact directed to Rocket Mortgage requiring

a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the

best evidence of its contents. The remaining allegations in Paragraph 108 are vague,

ambiguous, imprecise, and otherwise fail to identify the referenced "standards and

requirements." Rocket Mortgage cannot, therefore, admit or deny them, and so denies

them.

109.    For income producing properties such as the Subject Property, Solidifi also required a clear and detailed explanation for the use of any comps with a gross building area that deviated more than 20 percent from the property being appraised. Although three of the comps had gross building areas that deviated more than 20 percent, Mr. Mykhailyna provided no explanation.

**Response:** Paragraph 109 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph

109 may be construed to contain allegations of fact directed to Rocket Mortgage requiring

a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the

best evidence of its contents. The remaining allegations in Paragraph 109 are vague,

ambiguous, imprecise, and otherwise fail to identify the referenced "requirements."

Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

110.    More generally, Solidifi requires appraisals to comply with the USPAP. As explained above, the Subject Appraisal did not.

**Response:** Paragraph 110 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 110 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that the Subject Appraisal speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 110 are vague, ambiguous, imprecise, and otherwise fail to identify the referenced "requirements." Rocket Mortgage cannot, therefore, admit or deny them, and so denies them.

111.    After Mr. Mykhailyna submitted the Subject Appraisal to Solidifi, Solidifi conducted a review. Although the Subject Appraisal did not comply with Solidifi's standards and requirements for its appraisers, Solidifi did not request any changes or take any corrective action based on its review.

**Response:** Paragraph 111 contains no allegations of fact directed to Rocket Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph 111 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage states that it lacks sufficient knowledge or information to admit or deny the allegations, and so denies them.

112.    Later on January 21, 2021, Solidifi submitted the Subject Appraisal to Rocket.

**Response:** Rocket Mortgage admits the allegation in Paragraph 112.

**J.    After Ms. Cheroutes reported to Rocket that the Subject Appraisal was discriminatory, Rocket adhered to the Subject Appraisal and canceled her refinancing application.**

113.    After Solidifi transmitted the Subject Appraisal to Rocket, Ms. Cheroutes was able to view the appraisal. She was surprised that the valuation was so low.

**Response:** Rocket Mortgage lacks sufficient knowledge or information to admit or

deny the allegations, and so denies them.

114.    Ms. Cheroutes repeatedly attempted to contact Rocket with her concerns about the low value of the appraisal, and her belief that Mr. Mykhailyna had undervalued the Subject Property because of her race. Prior to the appraisal, her primary loan officer at Rocket was Brandon Swales, and he had been very enthusiastic about Ms. Cheroutes's application, telling Ms. Cheroutes that a multi-unit home in Denver was a good buy in the current market.

**Response:** The allegations in the first sentence of Paragraph 114 are vague, ambiguous, imprecise and otherwise fail to identify or provide any details about Cheroutes' alleged "repeated attempts" to contact Rocket Mortgage. Rocket Mortgage cannot, therefore, admit or deny the allegations, and so denies them. In response to the allegations in the second sentence of Paragraph 114, Rocket Mortgage admits only that Swales was a Rocket Mortgage team member who assisted Cheroutes with her loan application. The remaining allegations in the second sentence of Paragraph 114 are vague, ambiguous, imprecise and otherwise fail to identify the date or means of the alleged communication. Rocket Mortgage cannot, therefore, admit or deny the remaining allegations in the second sentence of Paragraph 114, and so denies them. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 114.

115.    After the appraisal, Ms. Cheroutes contacted Mr. Swales and explained that she believed the Subject Appraisal was discriminatory and mentioned that she wanted another appraisal. Ms. Cheroutes explained that during the site inspection she had a Black Lives Matter sign in the yard and that she regretted being in the house because Mr. Mykhailyna was able to see that it was owned by a Black person. Mr. Swales agreed that a 25 percent decrease in value from a prior appraisal completed less than a year ago did not make sense, and he explained that Rocket would review the appraisal. Mr. Swales referred Ms. Cheroutes to Matthew Watson, a Solution Consultant for Rocket.

**Response:** Rocket Mortgage admits only that Cheroutes contacted Swales about the Subject Appraisal, and that Watson was a Rocket Mortgage team member with whom Cheroutes also had communications about the Subject Appraisal. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 115.

116.    Ms. Cheroutes also spoke with Rocket representative Nikki Cogburn via an online chat, stating that there were issues of discrimination in the loan process. Ms. Cogburn also referred her to Mr. Watson.

**Response:** Rocket Mortgage admits only that Cogburn and Watson were Rocket

Mortgage team members with whom Cheroutes had communications relating to her loan

application. Except as expressly admitted herein, Rocket Mortgage denies the allegations

in Paragraph 116.

117.    Ms. Cheroutes spoke to Mr. Watson on January 25, 2021. She told him about errors in the appraisal and informed him that she believed the low appraisal was due to racial discrimination. She explained that Mr. Mykhailyna had been hostile and unfriendly to her and did not listen to the facts about the house that Ms. Cheroutes tried to relay to him.

**Response:** Rocket Mortgage admits only that Cheroutes spoke with Watson by

telephone on or about January 25, 2021. Except as expressly admitted herein, Rocket

Mortgage denies the allegations in Paragraph 117.

118.    Mr. Watson did not take any action to investigate her report of discrimination or dispute it. Rather, he told Ms. Cheroutes that because she had raised the issue of discrimination, he could not talk to her or help her.

**Response:** Rocket Mortgage denies the allegations in Paragraph 118.

119.    Mr. Watson also told Ms. Cheroutes that if she did not agree to proceed with a loan based on the $640,000 appraisal, he would cancel the loan.

**Response:** Rocket Mortgage denies the allegations in Paragraph 119.

120.    Proceeding with the loan based on the discriminatory appraisal would have been adverse to Ms. Cheroutes. The terms in Rocket's previous written loan estimate, before the Subject Appraisal, had been based on the estimated value of $860,000. Any loan based on the $640,000 appraisal would necessarily have included less favorable terms for Ms. Cheroutes. Indeed, following the appraisal, Rocket generated a revised written loan estimate with less favorable terms.

**Response:** Rocket Mortgage states that it lacks sufficient knowledge or

information to admit or deny the allegations in the first and third sentences of Paragraph

120, and so denies them. In response to the second and fourth sentences, Rocket

Mortgage admits only that it generated written loan estimates in connection with the

subject loan application by Cheroutes. The loan estimates speak for themselves and are

the best evidence of their contents. Except as expressly admitted herein, Rocket

Mortgage denies the allegations in Paragraph 120.

121.    Ms. Cheroutes told Mr. Watson that if Rocket canceled her refinance
application because she was reporting discrimination, Rocket would be involving itself in
the discrimination by ignoring her complaint. She stated that she wanted another
appraisal conducted of the Subject Property. Mr. Watson referred Ms. Cheroutes to
another department at Rocket, Client Relations.

**Response:** Rocket Mortgage admits only that Cheroutes had communications

with Watson concerning the subject loan application and the Subject Appraisal. Except

as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 121.

122.    Rocket canceled the refinance application before Ms. Cheroutes could even
speak to Client Relations. Indeed, on January 25, 2021, the same day he spoke to Ms.
Cheroutes, Mr. Watson wrote an internal note in Rocket's system that he "[n]otified client
this loan has been cancelled."

**Response:** Rocket Mortgage denies the allegations in Paragraph 122.

123.    On January 26, 2021, Rocket generated a letter from Mr. Swales to Ms.
Cheroutes stating, "we are unable to offer you financing at this time" due to the "Low
appraised value" of the property. Emails between Rocket employees in the subsequent
days stated that the appraisal "caused the loan to no [sic] make sense" and that the loan
was "killed" due to "a low appraised value."

**Response:** In response to the allegations in the first sentence of Paragraph 123,

Rocket Mortgage admits only that it prepared a letter to Cheroutes concerning the subject

loan application on or about January 26, 2021. The subject letter speaks for itself and is

the best of evidence of its contents. The allegations in the second sentence of Paragraph

123 are vague, ambiguous, imprecise, and otherwise fail to identify or attach the

referenced emails. Rocket Mortgage cannot, therefore, admit or deny the allegations in

the second sentence of Paragraph 123, and so denies them.

124.    Ms. Cheroutes spoke with Abril CanoBaca from Rocket's Client Relations department on January 28, 2021. Ms. Cheroutes informed Ms. CanoBaca that she believed that the Subject Appraisal was discriminatory. Ms. CanoBaca said that there was nothing she could do regarding the discrimination beyond making yet another referral, this time to Rocket's legal team.

**Response:** In response to the allegations in the first and second sentences of Paragraph 124, Rocket Mortgage admits only that CanoBaca was a Rocket Mortgage team member with whom Cheroutes had various communications concerning the Subject Appraisal. Rocket Mortgage denies the allegations in the third sentence of Paragraph 124 and states that CanoBaca provided Cheroutes with a detailed explanation of the reconsideration of value (ROV) process and attempted to assist Cheroutes with the process. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 124.

125.    Ms. CanoBaca also stated that Ms. Cheroutes could provide her own sales comps for the appraisal, with any suggested sales comps to be evaluated by Mr. Mykhailyna. But Ms. CanoBaca also told Ms. Cheroutes that Rocket's underwriting team only cared if the gross adjustments in an appraisal exceeded 25 percent and that the gross adjustments in the Subject Appraisal fell below that threshold. This latter representation was inaccurate because the gross adjustments for one of the comps in the Subject Appraisal did exceed that threshold.

**Response:** Rocket Mortgage admits only that Cheroutes had various communications with CanoBaca concerning the Subject Appraisal, that CanoBaca explained the process for Cheroutes to provide alternative comparables for consideration by Mykhailyna, and that Cheroutes did not provide any alternative comparables at any time. Except as expressly admitted herein, Rocket Mortgage denies the allegations in Paragraph 125 and specifically denies any misrepresentation to Cheroutes by CanoBaca.

126.    Ms. CanoBaca also represented to Ms. Cheroutes that Rocket sends discrimination complaints to the legal team and that Rocket did investigate complaints of discrimination.

**Response:** Rocket Mortgage admits only that Cheroutes had various

communications with CanoBaca concerning the Subject Appraisal, and that Rocket

Mortgage investigates complaints of discrimination. Except as expressly admitted herein,

Rocket Mortgage denies the allegations in Paragraph 126.

127.    Ms. Cheroutes's final conversation with Rocket was on February 1, 2021, with Randall Griebel, who was also from the Client Relations department. Mr. Griebel did not address Ms. Cheroutes's concerns about discrimination but repeated that the only way to challenge the appraisal was for Ms. Cheroutes to submit her own sales comps, thus placing the burden on her to remedy her own allegation of discrimination. He also stated that Ms. Cheroutes's discrimination complaint had been sent to Rocket's legal team but informed her that the legal team might not contact her regarding the complaint. Mr. Griebel said that he did not have any knowledge about the actions of the legal team.

**Response:** Rocket Mortgage admits only that Griebel was a Rocket Mortgage

team member with whom Cheroutes had communications about the Subject Appraisal.

Except as expressly admitted herein, Rocket Mortgage denies the allegations in

Paragraph 127.

128.    Rocket's legal team did not contact Ms. Cheroutes, Solidifi, or Mr. Mykhailyna regarding the discrimination allegation.

**Response:** Rocket Mortgage denies the allegations in Paragraph 128.

129.    Rocket was aware of Ms. Cheroutes's race. Ms. Cheroutes mentioned her race in conversations with Mr. Swales and Ms. CanoBaca, and she made it clear to Mr. Swales, Mr. Watson, and Ms. CanoBaca that she believed she had been subjected to discrimination on the basis of her race.

**Response:** The allegations in the first sentence of Paragraph 129 are vague,

ambiguous, imprecise and otherwise fail to identify the alleged source or substance of

Rocket Mortgage's purported "awareness." Rocket Mortgage cannot, therefore, admit or

deny the allegations in the first sentence of Paragraph 129. In response to allegations in

the second sentence of Paragraph 129, Rocket Mortgage admits only that Cheroutes had

communications with Swales, Watson and CanoBaca. Rocket Mortgage denies the

remaining allegations in Paragraph 129. Except as expressly admitted herein, Rocket

Mortgage denies the allegations in Paragraph 129.

130.    Rocket knew, based on the appraisal report and the information provided by Ms. Cheroutes, of facts showing that the Subject Appraisal had undervalued the Subject Property based on her race. Despite knowing these facts, Rocket relied on the discriminatory appraisal in its decision to deny Ms. Cheroutes's loan application.

**Response:** Rocket Mortgage denies the allegations in Paragraph 130.

131.    To avoid relying on the discriminatory appraisal, Rocket could have ordered an appraisal of the Subject Property from a different appraiser. *See* 12 C.F.R. § 1026.42(c)(3)(iv). Rocket could also have attempted to remedy the discrimination through a variety of other means, including by requesting that Mr. Mykhailyna consider more appropriate comps and fix other errors in the Subject Appraisal. *See* 15 U.S.C. § 1639e(c); 12 C.F.R. §§ 1026.42(c)(3)(i), (iii), (vi). In fact, Rocket did request that Mr. Mykhailyna correct an error in the Subject Appraisal unrelated to Ms. Cheroutes's complaint, and Mr. Mykhailyna corrected that error.

**Response:** Rocket Mortgage denies the allegations in Paragraph 131.

**K.    Harm Ms. Cheroutes suffered from Defendants' discrimination.**

132.    Ms. Cheroutes experienced financial and emotional harm due to Defendants' discrimination.

**Response:** Rocket Mortgage denies the allegations in Paragraph 132.

133.    Because Rocket canceled her refinance application, she was unable to obtain a refinance mortgage loan that would have had a lower interest rate, a shorter term, and lower monthly payments.

**Response:** Rocket Mortgage denies the allegations in Paragraph 133.

134.    Ms. Cheroutes did not try to refinance her mortgage through a different company because she was afraid that she would continue to be discriminated against during the appraisal process. Instead, she applied for a variable-rate home equity line of credit ("HELOC"), which was less favorable financially than the refinance with Rocket, but which only required a drive-by appraisal.

**Response:** Rocket Mortgage lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 134, and so denies them.

135.    Ms. Cheroutes experienced emotional distress and humiliation due to Defendants' apparent belief that her house was worth less because it was owned by a Black person. She also feared that her son, who was in the process of seeking to buy a home, would likewise experience racial discrimination. She also suffered emotional

distress and humiliation as a result of the decision by Rocket to retaliate against her by responding to her complaint of discrimination by cancelling the loan.

**Response:** Rocket Mortgage denies the allegations in Paragraph 135.

## HUD ADMINISTRATIVE PROCESS

136.    On April 27, 2021, Ms. Cheroutes timely filed a complaint with the Colorado Civil Rights Division ("CCRD") alleging that Rocket, Maverick, and Mr. Mykhailyna engaged in one or more discriminatory housing practices.

**Response:** The allegations in Paragraph 136 state conclusions of law to which no response is required. To the extent Paragraph 136 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage denies them.

137.    On June 8, 2021, the complaint was transferred to HUD with the consent of CCRD.

**Response:** Rocket Mortgage admits the allegations in Paragraph 137.

138.    The complaint was amended on June 16, 2021, and again on October 12, 2021, to add Solidifi as a respondent.

**Response:** Rocket Mortgage admits the allegations in Paragraph 138.

139.    Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of the HUD complaint and prepared a final investigative report. Based on the information gathered during the investigation, the Secretary determined, pursuant to 42 U.S.C. § 3610(g)(1), that reasonable cause existed to believe that Defendants had violated the Fair Housing Act.

**Response:** The allegations in Paragraph 139 state conclusions of law to which no response is required. To the extent Paragraph 139 may be construed to contain allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage denies them. Further answering, Rocket Mortgage specifically denies that any "determin[ation] . . . that reasonable cause existed to believe that Defendants had violated

the Fair Housing Act" was based on information gathered during an adequate investigation.

140.    On July 15, 2024, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A).

**Response:** Rocket Mortgage admits the allegations in Paragraph 140.

141.    On July 22, 2024, Ms. Cheroutes elected to have the claims asserted in HUD's Charge of Discrimination resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

**Response:** Rocket Mortgage admits the allegations in Paragraph 141.

142.    On July 23, 2024, a HUD Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceedings. Following the Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

**Response:** Rocket Mortgage admits the allegations in Paragraph 142.

143.    The United States and Defendants executed tolling agreements extending the expiration of any statute of limitations in this action from August 21, 2024, to October 21, 2024.

**Response:** The allegations in Paragraph 143 contain conclusions of law to which

no response is required. To the extent Paragraph 143 may be construed to contain

allegations of fact directed to Rocket Mortgage requiring a response, Rocket Mortgage

denies them.

## CAUSE OF ACTION: VIOLATION OF THE FAIR HOUSING ACT

144.    The United States re-alleges and incorporates by reference the allegations set forth above.

**Response:** Rocket Mortgage denies any violation of the FHA and incorporates by

reference, as if fully set forth herein, its responses to all other allegations in the Complaint.

145.    By the conduct described above, Defendants engaged in one or more "[d]iscriminatory housing practice[s]" as defined by 42 U.S.C. § 3602(f).

**Response:** Rocket Mortgage denies the allegations in Paragraph 145.

146.    Specifically, Defendants discriminated in making available a residential real estate-related transaction, or in the terms or conditions of such a transaction, because of race or color, in violation of 42 U.S.C. § 3605.

**Response:** Rocket Mortgage denies the allegations in Paragraph 146.

147.    The discriminatory housing practices of Defendant Mykhailyna were taken while he was acting as agent of Defendant Maverick, were within the scope of that agency, and were taken with Maverick's actual or apparent authority.

**Response:** Rocket Mortgage lacks sufficient knowledge or information to admit or

deny the allegations concerning parties other than Rocket Mortgage, and so denies them.

148.    The discriminatory housing practices of Defendants Mykhailyna and Maverick were taken while they were acting as agents of Solidifi, were within the scope of that agency, and were taken with Solidifi's actual or apparent authority.

**Response:** Paragraph 148 contains no allegations of fact directed to Rocket

Mortgage, and so requires no response by Rocket Mortgage. To the extent Paragraph

148 may be construed to contain allegations of fact directed to Rocket Mortgage requiring

a response, Rocket Mortgage denies them.

149.    The appraisal of Ms. Cheroutes's property by Defendants Mykhailyna, Maverick, and Solidifi was completed for and at the request of Defendant Rocket. Defendant Rocket was reliably informed that the appraisal undervalued Ms. Cheroutes's property because of race or color. Defendant Rocket had the authority to correct the discriminatory appraisal, or cause it to be corrected, but failed to do so.

**Response:** Rocket Mortgage denies the allegations in Paragraph 149.

150.    Further, Defendant Rocket coerced, intimidated, threatened, or interfered with Ms. Cheroutes in the exercise or enjoyment of, or on account of her having exercised or enjoyed, rights granted or protected by 42 U.S.C. § 3605, in violation of 42 U.S.C. § 3617.

**Response:** Rocket Mortgage denies the allegations in Paragraph 150.

151.    Ms. Cheroutes is an "[a]ggrieved person," as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of Defendants' discriminatory conduct.

**Response:** Rocket Mortgage denies the allegations in Paragraph 151.

152.    Defendants' discriminatory conduct was intentional, willful, and taken in

reckless disregard of the rights of Ms. Cheroutes.

**Response:** Rocket Mortgage denies the allegations in Paragraph 152.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays for relief as follows:

a. Declare that Defendants Rocket Mortgage, LLC; Solidifi U.S. Inc.; Maksym Mykhailyna; and Maverick Appraisal Group Inc. violated the Fair Housing Act, 42 U.S.C. §§ 3601–3619;

b. Enjoin Defendants, including their agents, employees, and successors, and all other persons in active concert or participation with Defendants, from:

   i. Engaging in discrimination on the basis of race or color in making available real estate-related transactions, or in the terms or conditions of such transactions;

   ii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Ms. Cheroutes to the position she would have been in but for the discriminatory conduct; and

   iii. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

c. Enjoin Defendant Rocket, including its agents, employees, and successors, and all other persons in active concert or participation with Defendant Rocket, from coercing, intimidating, threatening, or interfering with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by 42 U.S.C. § 3605;

d. Award monetary damages to Ms. Cheroutes pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

e. Award any other legal and equitable relief that the Court finds to be just and proper.

**Response:** With respect to the unnumbered Paragraph of the Complaint following

Paragraph 152 and beginning "WHEREFORE," Rocket Mortgage denies that Plaintiff is

entitled to any of the prayed-for or any other form relief in this matter.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

**Response:** With respect to the unnumbered Paragraph of the Complaint entitled

Jury Demand, Rocket Mortgage states that no response is required because it makes no

allegations of fact directed to Rocket Mortgage and otherwise asserts a conclusion of law

to which no response is required.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by the principle of laches, estoppel, unclean hands, and/or other similar equitable principles.

### THIRD DEFENSE

The United States Constitution bars or limits the relief requested by Plaintiff, if and to the extent the relief would unfairly subject Rocket Mortgage to punishment and/or to an unfairly extreme remedy without advance notice or opportunity to protect itself, or the relief would amount to a taking, or the relief would be out of proportion to the alleged conduct, or the remedy is unrestricted by sensible standards, or the relief would have an unfair economic impact on Rocket Mortgage, or the relief would violate the Due Process Clause.

### FOURTH DEFENSE

Rocket Mortgage is not liable to Plaintiff to the extent that any violation of law arose from circumstances beyond Rocket Mortgage's control.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because no agency relationship exists between or among Rocket Mortgage and any other party such that Rocket Mortgage is or may be legally responsible for the acts or omissions of such third parties.

### SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Rocket Mortgage did not

personally participate in, direct or control the alleged discriminatory appraisal.

## SEVENTH DEFENSE

Rocket Mortgage is not liable for independent acts of third parties over whom Rocket Mortgage could exercise no control, and the Plaintiff's and Intervening Plaintiff's damages, if any, are attributable to acts of third parties.

## EIGHTH DEFENSE

The challenged practices of Rocket Mortgage were not the proximate cause of any injury to Plaintiff or the Intervening Plaintiff for reasons including that intervening acts of other parties directly and proximately caused any alleged injury.

## NINTH DEFENSE

Plaintiff's claims are barred because Rocket Mortgage's actions were supported by race-neutral, objective, substantial, and legitimate business rationales in furtherance of Rocket Mortgage's business objectives, and these interests could not be served by alternative means.

## TENTH DEFENSE

The purported actions and/or purported omissions by Rocket Mortgage were consistent with, permitted by, or dictated by, and in certain respects required by, applicable federal laws, and to that extent, cannot be the subject of a recovery in this action.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because of impossibility of performance due to, among other reasons, appraisal independence requirements as set forth in 12 C.F.R. § 1026.42(c)(1).

**TWELFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because of impossibility of performance due to, among other reasons, Rocket Mortgage's lack of authority to correct, change, or cause to be corrected or changed the value of the appraisal.

**THIRTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the Fair Housing Act does not require Rocket Mortgage directly or indirectly to cause the value assigned to the consumer's principal dwelling to be based on any factor other than the independent judgment of the appraiser in violation of 12 C.F.R. § 1026.42(c).

**FOURTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the Fair Housing Act does not require Rocket Mortgage to seek to exclude an appraiser from consideration for future engagement because the appraiser reports a value for the consumer's principal dwelling that does not meet or exceed a predetermined threshold in violation of 12 C.F.R. § 1026.42(c)(1)(D).

**FIFTEENTH DEFENSE**

Some of Plaintiff's claims are barred or limited by the several defenses available under the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*., and the implementing regulations, and Rocket Mortgage hereby incorporates by reference, as if fully set forth herein, all such defenses to the fullest extent applicable.

**SIXTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to plead any facts whatsoever suggesting any discriminatory intent on Rocket Mortgage's part.

**SEVENTEENTH DEFENSE**

Plaintiff's retaliation claim is barred, in whole or in part, because Plaintiff fails to plead any act of retaliation by Rocket Mortgage.

**EIGHTEENTH DEFENSE**

Plaintiff's retaliation claim is barred, in whole or in part, because Plaintiff fails to plead any causal link between the Intervening Plaintiff's alleged protected activity and the alleged adverse action.

**NINETEENTH DEFENSE**

Plaintiff and the Intervening Plaintiff have not incurred any actual injury in fact, including physical injury, pecuniary injury, dignitary injury, emotional distress, out-of-pocket harm, or other injuries justifying a claim for actual damages as a result of the alleged conduct of Rocket Mortgage.

**TWENTIETH DEFENSE**

Plaintiff's claims are barred or limited by all defenses, exceptions, and exclusions, statutory or otherwise, available under federal law and applicable regulations and applicable case law, and Rocket Mortgage reserves and asserts all such defenses, exceptions, and exclusions as if fully set forth herein.

**TWENTY-FIRST DEFENSE**

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff or Intervening Plaintiff would be unjustly enriched if allowed to recover on their claims against Rocket Mortgage.

**TWENTY-SECOND DEFENSE**

Any recovery by Plaintiff and Intervening Plaintiff is barred by the failure to mitigate

damages, or that any recovery must be reduced by those damages Plaintiff and Intervening Plaintiff failed to so mitigate.

### TWENTY-THIRD DEFENSE

Plaintiff's claims are barred to the extent that the Intervening Plaintiff has already recouped costs associated with her alleged damages.

### TWENTY-FOURTH DEFENSE

Any recovery by Plaintiff and the Intervening Plaintiff is barred because Rocket Mortgage acted with good faith, exercised reasonable business judgment, and had an objectively reasonable belief that it did not violate the law.

### TWENTY-FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, due to the absence of evidence that the appraisal was, in fact, a discriminatory appraisal.

### TWENTY-SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, due to the failure of the Intervening Plaintiff to submit a Reconsideration of Value request for the January 2021 appraisal completed for the property located at 749-751 Ash Street, Denver, Colorado.

### TWENTY-SEVENTH DEFENSE

Plaintiff's claims are barred or limited, in whole or in part, to the extent that any purported damages allegedly suffered by Plaintiff or Intervening Plaintiff were the direct and proximate result of the conduct of Intervening Plaintiff.

### TWENTY-EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Intervening Plaintiff suffered no damages, or her alleged damages, if any, are speculative and uncertain.

### TWENTY-NINTH DEFENSE

Plaintiff's prayer for equitable relief under any of its alleged causes of action is barred because Plaintiff has an adequate remedy at law.

### THIRTIETH DEFENSE

Plaintiff is not entitled to declaratory relief against Rocket Mortgage, because such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding.

### THIRTY-FIRST DEFENSE

Plaintiff's claims are barred or limited, in whole or in part, to the extent that Intervening Plaintiff's alleged injuries were not caused by Rocket Mortgage, but by independent intervening causes which had no relation in fact to any conduct of Rocket Mortgage.

### THIRTY-SECOND DEFENSE

Rocket Mortgage asserts as a defense each and every ground set forth in its previously filed motions to dismiss and reply in support of its motions to dismiss, which are incorporated by reference.

### RESERVATION OF RIGHTS

Rocket Mortgage hereby gives notice that it will rely upon such other and further defenses as may become apparent during the course of this action. Rocket Mortgage expressly reserves its right to amend this Answer, including, but not limited to, by asserting additional defenses or making counterclaims for affirmative relief, as discovery in this action shall warrant, or in the event of any future change in the nature or scope of this lawsuit, or as it learns facts in discovery or its investigation of Plaintiff's claims.

## PRAYER FOR RELIEF

WHEREFORE, having answered the Complaint, Rocket Mortgage prays for the following relief:

1.     That Plaintiff takes nothing by way of the Complaint;

2.     That the Court dismiss the Complaint with prejudice and/or enter judgment in favor of Rocket Mortgage;

3.     That the Court award Rocket Mortgage the costs and expenses, including reasonable attorney's fees, that it incurs in connection with this action; and

4.     That the Court enter such other relief that it deems just, proper, and appropriate.

## DEMAND FOR TRIAL BY JURY

Rocket Mortgage demands and hereby respectfully requests a trial by jury on all claims that can be so tried.

Respectfully submitted this 10th day of October, 2025,

Jeffrey B. Morganroth
Morganroth & Morganroth
344 N. Old Woodward Ave., Ste. 200
Birmingham, Mich. 48009
(248) 864-4000
jmorganroth@morganrothlaw.com

Jacob Hollars
Spencer Fane LLP
1700 Lincoln St., Ste. 2000
Denver, Colo. 80203
(303) 839-3707
JHollars@spencerfane.com

/s/ Keith Levenberg
Keith Levenberg
Angelica Rankins
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
Tel.: (202) 346-4000
klevenberg@goodwinlaw.com
arankins@goodwinlaw.com

Brooks R. Brown
GOODWIN PROCTER LLP
100 Northern Ave
Boston, MA 02210
Tel.: (617) 570-1000
Bbrown@goodwinlaw.com

*Counsel for Defendant Rocket Mortgage, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Keith Levenberg*
Keith Levenberg